UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 |
| Rancher's Legacy Meat Co., | Case 19-32928 |
| Debtors. | |

**JAMES RATCLIFF'S RENEWED OBJECTION TO DEBTOR'S MOTION FOR USE OF CASH COLLATERAL**

James Ratcliff, through his counsel, continues to oppose the Debtor's use of Cash Collateral and requests that the Court deny the Debtor's motion.

## PROCEDURAL POSTURE

The underlying facts of this dispute were laid out in the original filing by Mr. Ratcliff in his initial opposition to the use of cash collateral, filed on September 24 [Docket 13]. A hearing was held on September 26 and testimony was provided by Arlyn Lomen, the President of the Debtor in support of the various first-day motions. Mr. Lomen testified at that time as follows:

1. The Debtor has done its best to reduce costs over time and believes that it cannot reduce its costs further.

2. The company has never made a profit in nine years of operation and has negative shareholder's equity on the books in excess of $20,000,000.00.

3. The company has several large loans on its books and has been unable to pay any of them back, including the $17,218,636.68 debt owed to Mr. Ratcliff.

4. The requirements for "trim," or "trimmings," the product that Rancher's Legacy uses to produce hamburger on a consistent basis are that:

1

        a. The cattle that make up the product must be 30 months old or younger.

        b. The cattle must be steers or heifers.

        c. The meat must come from Black Angus cattle.

5. The Debtor entered into a new three-year contract on September 1 of this year to supply 4.5 million pounds of hamburger patties annually to a confidential restaurant-chain buyer.

6. The new contract was obtained through a competitive bidding process. In order to obtain the business, Mr. Lomen bid a price for the sale of hamburger to the new customer that was .25 per pound less than the price for hamburger he received from his other customers.

7. The company could still be profitable even with this lower price being paid for the hamburger based on longer production runs and more efficient use of employees.

Based on the testimony of Mr. Lomen and the extreme limits placed on the expenditures during the first month of the case, the Court was satisfied that the Debtor had met its burden of showing that the cash collateral for the initial period from September 20, 2019 to October 23, 2019 would not be diminished, and issued an Order allowing the debtor to use cash collateral during that interim period, subject to certain items of adequate protection such as replacement liens, weekly financial reports, and the right of Mr. Ratcliff to audit the books and records of the company.

After the hearing was held on September 26, the Debtor supplied Mr. Ratcliff with the first report of weekly post-petition sales and expenses. That report indicated that the projections used in connection with the motion for interim use of cash collateral had to be amended by adding an additional $228,727 in sales from the week ending September 21 to the sales for the

2

week ending September 29, 2019.  This was a critical error on the part of the Debtor as it allowed the initial cash collateral figure that the Debtor had to protect to be lowered and allowed the Debtor to instantly claim that an additional $228,727 worth of sales came in post-petition, thus inflating the amount of post-petition cash collateral.  John Heidebrecht, a financial analyst hired by Mr. Ratcliff, has submitted a spreadsheet showing the correct amount of beginning cash collateral and the corresponding corrected use of cash collateral during the past month.  See Declaration of John Heidebrecht, dated October 22, 2019, Exhibit A. The analysis by Mr. Heidebrecht shows that the cash collateral, even using the Debtor's numbers for income and expenses, cannot protect the secured creditor's interest in his collateral and therefore the motion for continued use of cash collateral must be denied.

     Mr. Heidebrecht has gone further with regard to a longer-term look at the Debtor's use of cash collateral.  Unlike the Debtor, who seeks to have the Court declare that the cash collateral will be protected based on a mere six weeks of financials, Mr. Heidebrecht has taken the actual financials from the Debtor for the previous year, added the additional income and expenses associated with the new 4.5 million pound hamburger patty contract and has analyzed that the long-term prospects of the Debtor are equally dismal or even more dismal than the short term.  See Heidebrect Declaration, Exhibit B.  Chief among the problems with the Debtor's continued operation in Chapter 11 are:

1. The margin being paid by the customer buying 4.5 million pounds of hamburger is much lower than the margin that the Debtor receives from their other customers.

2. The Professional Fees that the Debtor will have to pay will drain the company's resources.

3

3. The US Trustee's fees that the Debtor will have to pay in the next year will be 1% of its expenditures (See Exhibit K to Declaration of Kenneth C. Edstrom), which Mr. Heidebrecht estimates to be $361,236. This expense is understated in the Debtor's financial projections and is an enormous burden on a company that has never made any money and has extremely thin margins under the best of conditions.

4. This Motion is about the protection of the cash interests of Mr. Ratcliff, and the evidence shows that his interest is not being protected. However, there is a larger issue looming about the protection of Mr. Ratcliff's interest in the equipment of the company. There is no provision in the Debtor's proposed use of cash collateral for any type of adequate protection of Mr. Ratcliff's secured interest. Rancher's Legacy is running its equipment in two shifts every business day, according to the testimony of Mr. Lomen. On a tax basis, the depreciation of that equipment was over $800,000 in 2017 (see Exhibit A to Declaration of Kenneth C. Edstrom, the 2017 tax return of the Debtor). Although there has been no determination of the actual depreciation of the physical assets, Mr. Ratcliff has estimated that the depreciation is occurring in a rate that is roughly equal to the per diem interest on Mr. Ratcliff's two loans to the Debtor. This additional cost of $868,559 (approximately $1,900 per day) that Mr. Ratcliff is entitled to is another expense that the Debtor cannot afford.

5. All told, Mr. Heidebrecht's analysis estimates that if the Debtor continued for the next year with its current expense and income structure, even including the revenue from the new customer that it would lose $1,336,379. Over the next 13

4

weeks, based on averaging income and expenses for that time period, the Debtor will lose $334,095 in cash collateral.

Based on the evidence that will be presented at the hearing and the accompanying Memorandum of Law, Mr. Ratcliff urges that the Court deny the Debtor any further use of cash collateral.

Dated: October 22, 2019                        SAPIENTIA LAW GROUP PLLC


                                                      /e/ *Kenneth C. Edstrom*
                                                      Kenneth C. Edstrom (#148696)
                                                      120 South 6th Street, Suite 100
                                                      Minneapolis, MN  55402
                                                      Telephone: (612) 756-7108
                                                      Fax: (612) 756-7101
                                                      kene@sapientialaw.com

                                                      *Attorneys for Creditor James Ratcliff*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 |
| Rancher's Legacy Meat Co., | Case 19-32928 |
| Debtors. | |

**JAMES RATCLIFF'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR USE OF CASH COLLATERAL**

The facts in support of Mr. Ratcliff's Opposition are in pleadings on file with the Court including the Declaration of Kenneth C. Edstrom and the Declaration of John Heidebrecht, along with the Exhibits attached to those declarations, the previous testimony of Mr. Lomen and all documents previously filed with the Court or admitted into evidence.

**ARGUMENT**

The Debtor Cannot Protect the Cash Collateral of the Debtor either in the Short Term or the Long Term

Pursuant to 11 U.S.C. § 363(c)(2), a debtor in possession may not use cash unless, each entity with an interest in cash collateral consents, or the court, after notice and a hearing, authorizes such use.

Cash collateral is defined in Section 363(a) as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property, whether existing before or after the commencement of a case under this title."

6

11 U.S.C. § 363(e) states:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

Section 361 of the Bankruptcy Code lists ways a debtor can provide adequate protection:

When adequate protection is required under section ... 363 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

A secured creditor with an interest in cash collateral is entitled to adequate protection to the extent of the anticipated or actual decrease in the value of the collateral during the course of the bankruptcy case. *See In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987). "The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy." *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987).

The Debtor hopes to show that their use of cash collateral will not diminish Mr. Ratcliff's interest in the cash collateral of the Debtor. The analysis used by the Debtor is based on six weeks of operations, and presumes a profit margin for the Debtor's new supply contract of .30

per pound when the contract provides a gross margin of .25 per pound. The Debtor previously estimated its future revenue and expenses by showing all of its income and expenses per pound of production. The Debtor's expert refuses to use this method and is essentially projecting positive cash flow based on assumed profit. The losses projected by Mr. Heidebrech fit with Mr. Lomen's testimony at the September 26 hearing that the new hamburger patty contract is bringing in $.25 less per pound than his normal prices, and that, even selling his product at regular prices, that the company has never made a profit.

In addition to the long-term projections that show that the company is doomed to fail, John Heidebrecht's calculations show that the Debtor will lose $334,095 over the first 13 weeks of the case. This is more than the Debtor's calculations show, however, when the Debtor's own spreadsheet is properly revised to show all of the pre-petition income, those calculations show that the Debtor will lose at least $39,769 in the first 13 weeks of operation.

The Debtor has understated its obligation to pay US Trustee fees. The Debtor estimates that for the first quarter of the Debtor's operations, they will have to pay $90,000 to the US Trustee. However, the US Trustee's fees for any Chapter 11 case filed after September 1, 2019 are 1 per cent of expenditures. Expenditures in the first 13 weeks are (deducting the estimated US Trustee fee) are estimated to be $9,030,907.50. This means that the US Trustee expense will actually be $90,000 for the first quarter, an increase of $40,000 over the Debtor's estimate. The enormous administrative expenses budgeted by the Debtor are another short term and long-term recipe for disaster for this never-profitable debtor.

The issue of Mr. Ratcliff's status as a secured creditor is largely moot because of the inability of the Debtor to operate profitably either in the short term or the long. Even without paying a dime of adequate protection to Mr. Ratcliff or any other secured creditor, the company

8

cannot operate profitably. If the Court needs to decide the issue of the value of Mr. Ratcliff's security interest, Mr. Ratcliff relies upon the facts and law set forth in his first submission in opposition to the use of cash collateral [Docket 13].

## CONCLUSION

The Debtor has failed to prove that it can protect its cash collateral. Historic review of the Debtor's operations is the best method of determining the future prospects of the Company and the Court should rely on actual prices to be paid for the Debtor's products and the guaranteed margins from the new supply contract in its analysis of the issues before it. Because the facts clearly show that the Debtor will not be able to protect the cash collateral in this case the Court should deny the Debtor's motion seeking further use of cash collateral.

Dated: October 22, 2019               SAPIENTIA LAW GROUP PLLC

/e/ *Kenneth C. Edstrom*
Kenneth C. Edstrom (#148696)
120 South 6th Street, Suite 100
Minneapolis, MN  55402
Telephone: (612) 756-7108
Fax: (612) 756-7101
kene@sapientialaw.com
Attorneys for James Ratcliff

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 11 |
| Rancher's Legacy Meat Co., | Case 19-32928 |
| Debtors. | |

CERTIFICATE OF SERVICE

Kenneth C. Edstrom, declares, under penalty of perjury, that he has served the following documents on all those individuals and entities entitled to service of an opposition filing through use of the Court's ECF system on October 22, 2019.

1. Renewed Opposition of James Ratcliff to Motion Allowing Use of Cash Collateral
2. Memorandum in Support
3. Declaration of John Heidebrecht
4. Certificate of Service

Dated: October 22, 2019　　　　　　　　　　　　　*/e/ Kenneth C. Edstrom*