# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |

## NOTICE OF HEARING AND MOTION FOR ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

TO: Entities Specified in Local Rule 9013-3.

1.      Rancher's Legacy Meat Co. ("Debtor"), by and through its undersigned counsel, moves the Court for the relief requested below and give notice of hearing.

2.      The Court will hold a Hearing on the Motion at **9:00 a.m., on January 16, 2020,** in Courtroom No. 7W, at United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3.      Because this is an expedited motion any response must be filed no later than the time set for the hearing**.**

4.      This Court has jurisdiction over this motion under 28. U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. This proceeding is a core proceeding. The petition commencing this case was filed on September 20, 2019 (the "Petition Date"). This case is now pending before this Court.

5.      On October 24, 2019, the Court entered its Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "Final Cash Collateral Order") [ECF # 81].

6.      The Final Cash Collateral Order authorized the Debtor, among other things, to use cash collateral in accordance with the terms of a budget through January 24, 2020.

7.      This motion arises under 11 U.S.C. § 363 and Bankruptcy Rule 4001(b). This

motion is filed under Bankruptcy Rules 9014 and Local Rules 4001-2 and 9013. Debtor also

seeks relief on an expedited basis pursuant to Local Rule 9006-1(e). By this motion Debtor seeks

an order authorizing the continued use of cash collateral through July 24, 2020 on the same terms

as provided in the Final Cash Collateral Order. The grounds for this Motion are set forth below.

8.      Notice of this Motion was provided to the entities to be served pursuant to Local

Rule 9013-3. Because this was an expedited motion, service of this motion was made by

Overnight Delivery.

9.      The Debtor's continued use of cash collateral is essential to its continued business

operations and irreparable harm would result if it is deprived of the ability to use such cash

collateral on an interim basis. Without continued access to cash collateral, the Debtor would be

at serious risk of shutdown due to strained liquidity. The Debtor needs the use of cash collateral

to, among other things, pay its more than 30 employees, purchase inventory, and fulfill

outstanding production obligations.

10.     Pursuant to Local Rule 9013-2(a), this Motion is accompanied by a memorandum

of law, proposed order, and proof of service. Additionally, this Motion is supported by the

Unsworn Declaration of Rod Peterson (the "Peterson Decl."), submitted contemporaneously

herewith.

## FACTUAL BACKGROUND

11.     The business of the Debtor and the identity of creditors holding purported security

interests in cash collateral were previously identified in connection with Debtor's Motion for

Interim and Final Orders Authorizing Use of Cash Collateral and Granting Adequate Protection.

[ECF # 5]. Additional details relevant to Debtor's use of cash collateral were provided in

Debtor's Reply in Support of First Day Motions [ECF #19] , Debtor's Response to James

2

Ratcliff's Expedited Motion for an Order Denying the Further Use of Cash Collateral [ECF #56]

and the Unsworn Declaration of Rod Peterson in Support of the Debtor's Cash Collateral Motion

[ECF #74]. For the sake of brevity in this Motion, Debtor adopts and incorporates by reference

the factual background set forth in the aforementioned prior submissions of the Debtor in support

of its use of cash collateral as if the same were set forth herein.

## DEVELOPMENTS SINCE ENTRY OF THE FINAL CASH COLLATERAL ORDER

12.     On October 15, 2019 the Debtor and the Committee jointly filed an adversary

complaint against Ratcliff and Great Western Bank seeking, among other things, to avoid the

security interest asserted by Ratcliff. *See*, 19-ap-3095 at ECF #1.

13.     On November 15, 2019 the Debtor filed an adversary complaint against Upper

Lakes Foods seeking, among other things, to avoid the security interest asserted by Upper Lakes

Foods. *See*, 19-ap-3102 at ECF #1.

14.     Since October 24, 2019, the Debtor has operated with the use of cash collateral

subject to the terms and restrictions imposed by the Final Cash Collateral Order.

15.     During that time, the Debtor has provided weekly cash flow reports to the Official

Committee of Unsecured Creditors (the "Committee"), James L. Ratcliff ("Ratcliff") and the

United States Trustee.

16.     During the period between October 24, 2019 and January 3, 2020[1], Debtor has

operated above forecasted projections and has maintained a positive cash flow.

17.     On the Petition Date, the Debtor's collateral had the following estimated value:

| | |
|---|---|
| Cash | $ 158,488 |
| Accounts | $ 1,273,108 |
| Total | **$ 1,431,596** |

---

[1] The end date of the last period for which Debtor's weekly cash flow reports are available as of the drafting of this Motion.

3

*See*, Peterson Decl., Ex. A

18.    As of January 3, 2020, the Debtor's collateral had the following values:

| | |
|---|---|
| Cash | $ 573,003 |
| Accounts | $ 1,408,367 |
| Total | **$ 1,981,370** |

Increase/(Decrease) from Petition Date        $549,775

*See*, Peterson Decl., Ex. B

19.    As of July 24, 2020, Debtor estimates that the Collateral's value will be:

| | |
|---|---|
| Cash | $ 0 |
| Accounts (Less Post-Petition Debt) | $ 1,888,595 |
| Total | **$ 1,888,595** |

Increase/(Decrease) from Petition Date        $456,999

*See*, Peterson Decl. Ex. A

20.    Pursuant to the requirements of 11 U.S.C. § 363(e) , the Debtor proposes as adequate protection for Ratcliff and ULF as follows: (i) to grant replacement liens in the lenders' respective collateral having the same dignity, priority and extent as existed on the Petition Date; and to (ii) report and account for the use of any cash proceeds by the Debtor.

21.    The Debtor projects that it can operate profitably in the ordinary course with use of cash collateral as set forth in the budget submitted with this Motion. *See*, Peterson Decl. Ex A.

22.    Prior to the hearing on this Motion for an order authorizing continued use of cash collateral, and in settlement of any and all of the matters raised in this Motion, Debtor may enter into a stipulation with its lenders concerning use of cash collateral, adequate protection and other related matters. In the event Debtor enters into any such stipulation, Debtor will seek approval of the stipulation without further notice of hearing pursuant to Bankruptcy Rule 4001(d)(4), and

**DEBTOR HEREBY GIVES NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION.**

4

1312261 v1

## EXPEDITED RELIEF

23.     In order to operate in the ordinary course, preserve the going concern value of its operations and avoid immediate and irreparable harm the Debtor must have authority to continue to use cash collateral from and after January 24, 2020 through July 24, 2020.

24.     Absent continued use of cash collateral following January 24, 2020, the Debtor would likely be forced to cease operations. There is good cause to consider the relief on an expedited basis.

25.     The increase in the estate value and the adequate protection offered in the Motion adequately protect the secured lenders interests in the Debtor's collateral.

26.     The Debtor may offer additional evidence in support of this Motion, including the testimony of Arlyn J. Lomen, Debtor's President, and Rod Peterson, financial advisor to the Debtor, if such is necessary in connection with this Motion.

**WHEREFORE**, the Debtor moves the Court for an order:

A.  Authorizing continued use of cash collateral from the January 25, 2020 through July 24, 2020, in accordance with the proposed budget;

B.  Authorizing the Debtor to grant adequate protection as set forth in the Motion; and

C.  Such other relief as is just and equitable.

5

Dated: January 10, 2020                    **FOLEY & MANSFIELD, PLLP**

BY: /s/ Cameron A. Lallier
   Thomas J. Lallier (#163041)
   tlallier@foleymansfield.com
   Cameron A. Lallier (#393213)
   clallier@foleymansfield.com
   250 Marquette Avenue, Suite 1200
   Minneapolis, MN  55401
   Telephone:  (612) 338-8788

   **ATTORNEYS FOR DEBTOR**

1312261 v1

## **VERIFICATION**

I, Arlyn J. Lomen, President of Rancher's Legacy Meat Co., declare under penalty of

perjury that the facts set forth in the preceding Motion are true and correct to the best of my

knowledge, information, and belief.


Dated: January 10, 2020

Arlyn J. Lomen

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |

### UNSWORN DECLARATION OF ROD PETERSON IN SUPPORT
### OF THE DEBTOR'S MOTION TO CONTINUE USE OF CASH COLLATERAL

Rod Peterson, under penalty of perjury, states as follows:

1.      I am a Partner with Platinum Management, LLC, the Debtor's retained financial advisor in this case. I make this unsworn declaration in support of the Debtor's Motion to Continue Use of Cash Collateral.

2.      I am familiar with the Debtor's assets, debts and operations.

3.      Attached hereto as **Exhibit A** is the Debtor's proposed 26 week budget (through the week ending July 24, 2020) for which the Debtor seeks authority to use cash collateral.

4.      Attached hereto as **Exhibit B** is an analysis of the Debtor's financial operations beginning September 21, 2019 through January 3, 2020 and a summary of the projections forecast through July 24, 2020.

Dated:  January ___, 2020

_____
Rod Peterson, Financial Advisor

**Rancher's Legacy Meat Co.**
**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 1 1/31/20 | | Week 2 2/7/20 | | Week 3 2/14/20 | | Week 4 2/21/20 | | Week 5 2/28/20 |
|---|---|---|---|---|---|---|---|---|---|
| A/R receipts | $ | 650,000 | $ | 650,000 | $ | 655,444 | $ | 720,164 | $ | 720,164 |
| Cash Sales | | - | | - | | - | | - | | - |
| DIP LOC | | - | | - | | 20,050 | | 229,743 | | - |
| **Total cash receipts** | **$** | **650,000** | **$** | **650,000** | **$** | **675,494** | **$** | **949,907** | **$** | **720,164** |

| Operating Cash Disbursements | 1/31/20 | | 2/7/20 | | 2/14/20 | | 2/22/19 | | 2/28/20 |
|---|---|---|---|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | $ | 76,000 | $ | - | $ | 76,000 | $ | - | $ | 76,000 |
| Fee for Payroll Service | | 750 | | - | | 750 | | - | | 750 |
| Payment to Company 401(K) & Flex Spending | | 200 | | 7,000 | | 200 | | 7,000 | | 200 |
| Payments to Temporary Labor Agencies | | 37,221 | | 35,633 | | 39,114 | | 39,866 | | 40,386 |
| Workmen Compensation Premium | | - | | - | | 2,206 | | - | | - |
| Health/dental/life/disability for employees | | - | | 700 | | 28,500 | | - | | - |
| Raw Ingredients - domestic | | 442,189 | | 439,394 | | 475,228 | | 477,395 | | 479,949 |
| Raw Ingredients - import | | - | | 104,000 | | - | | 104,000 | | - |
| Premium Payments to Critical Vendors | | 3,500 | | 14,000 | | 3,500 | | 14,000 | | 3,500 |
| Packaging Supplies (boxes/film/etc) | | 19,994 | | 20,402 | | 20,162 | | 19,706 | | 19,678 |
| QA and production supplies | | 1,563 | | 1,591 | | 1,829 | | 1,937 | | 2,051 |
| Plant Cleaning Costs (outside service) | | 7,200 | | 7,200 | | 7,200 | | 7,200 | | 7,200 |
| Outside manufacturing services | | - | | - | | - | | - | | - |
| Shipping/Freight | | 20,118 | | 20,649 | | 22,837 | | 23,590 | | 24,374 |
| Building/equipment repair | | 1,826 | | 1,644 | | 1,775 | | 1,590 | | 1,734 |
| Equipment lease | | - | | - | | 2,075 | | - | | - |
| Building lease | | - | | - | | 12,716 | | - | | 700 |
| Real estate taxes | | - | | - | | - | | - | | - |
| Refrigerated van repair/gas | | - | | - | | - | | 500 | | - |
| Coats/gloves/hairnets for Production Workers | | 1,360 | | 1,351 | | 1,363 | | 1,376 | | 1,390 |
| Insurance | | - | | - | | - | | 10,532 | | - |
| Utilities, including internet services | | 1,500 | | - | | - | | 20,000 | | 1,500 |
| Garbage removal services | | - | | 2,283 | | - | | - | | - |
| Advertising | | - | | - | | - | | - | | - |
| Marketing Allowances | | 20,915 | | 22,173 | | 24,724 | | 26,023 | | 25,245 |
| Food Show Costs | | - | | - | | - | | - | | - |
| Professional fees - tax return prep | | - | | 2,000 | | - | | - | | - |
| Professional fees - Legal (internal) | | - | | - | | 250 | | - | | - |
| Professional fees - IT | | 3,991 | | - | | - | | - | | 3,991 |
| Sales Commissions | | - | | - | | - | | 18,000 | | - |
| Office expense | | 300 | | 300 | | 300 | | 300 | | 300 |
| Bank fees | | - | | - | | - | | - | | 1,533 |
| Office Cleaning Costs (outside service) | | 538 | | 538 | | 538 | | 538 | | 538 |
| Employee expense/reimbursement | | - | | 3,500 | | - | | 3,500 | | - |
| State Income Taxes/Fees | | - | | - | | - | | - | | - |
| Legal - Foley | | - | | - | | - | | 32,250 | | - |
| Legal - Creditor Committee | | - | | - | | - | | 50,000 | | - |
| Platinum Group | | - | | - | | - | | 87,268 | | - |
| Other production costs | | 250 | | - | | - | | 500 | | - |
| USDA Fees/SQF Annual Audit Fees | | - | | 3,528 | | - | | - | | - |
| Product samples | | 452 | | 462 | | 487 | | 515 | | 535 |
| Installation of upgraded IT Equipment | | - | | - | | 2,500 | | - | | - |
| Payment of US Trustee Fees | | 84,562 | | - | | - | | - | | - |
| Professional appraisal fees | | - | | - | | - | | - | | - |
| Debt service on Ochsner Equipment Note | | - | | - | | 18,825 | | - | | - |
| DIP LOC closing fees | | - | | 35,000 | | - | | - | | - |
| DIP LOC interest | | - | | - | | - | | 321 | | 3,676 |
| Misc. | | 2,000 | | 2,000 | | 2,000 | | 2,000 | | 2,000 |
| **Total operating disbursements** | **$** | **726,427** | **$** | **725,348** | **$** | **745,078** | **$** | **949,907** | **$** | **697,229** |
| **Cash available after operating activities** | **$** | **(76,427)** | **$** | **(75,348)** | **$** | **(69,584)** | **$** | **-** | **$** | **22,935** |

| Financing Cash flow - DIP LOC | 1/31/20 | | 2/7/20 | | 2/14/20 | | 2/21/20 | | 2/28/20 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning period balance | $ | - | $ | - | $ | - | $ | 20,050 | $ | 249,793 |
| Additions/Draws | | - | | - | | 20,050 | | 229,743 | | - |
| Principal reductions/Pay-down | | - | | - | | - | | - | | (22,935) |
| Other | | - | | - | | - | | - | | - |
| **Ending period balance** | **$** | **-** | **$** | **-** | **$** | **20,050** | **$** | **249,793** | **$** | **226,858** |
| **Change in financing cash flow** | **$** | **-** | **$** | **-** | **$** | **20,050** | **$** | **229,743** | **$** | **(22,935)** |
| **Cash available after operating, investing and fi** | **$** | **(76,427)** | **$** | **(75,348)** | **$** | **(49,534)** | **$** | **229,743** | **$** | **(22,935)** |

| Summary Cash Flow | 1/31/20 | | 2/7/20 | | 2/14/20 | | 2/21/20 | | 2/28/20 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning period cash | $ | 221,360 | $ | 144,932 | $ | 69,584 | $ | - | $ | - |
| Cash receipts | | 650,000 | | 650,000 | | 655,444 | | 720,164 | | 720,164 |
| Operating disbursements | | (726,427) | | (725,348) | | (745,078) | | (949,907) | | (697,229) |
| Investing cash flow activity | | - | | - | | - | | - | | - |
| Financing cash flow activity | | - | | - | | 20,050 | | 229,743 | | (22,935) |
| Other | | - | | - | | - | | - | | - |
| Ending period cash | $ | 144,932 | $ | 69,584 | $ | - | $ | - | $ | - |

| Rolling A/R | 1/31/20 | | 2/7/20 | | 2/14/20 | | 2/21/20 | | 2/28/20 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning A/R balance | $ | 1,759,297 | $ | 1,764,741 | $ | 1,834,905 | $ | 1,899,625 | $ | 1,899,625 |
| Sales for period | | 655,444 | | 720,164 | | 720,164 | | 720,164 | | 720,164 |
| A/R receipts | | (650,000) | | (650,000) | | (655,444) | | (720,164) | | (720,164) |
| Sales Not Previously Reported for W/E 09.21.19 ( | | - | | - | | - | | - | | - |
| Ending A/R balance | $ | 1,764,741 | $ | 1,834,905 | $ | 1,899,625 | $ | 1,899,625 | $ | 1,899,625 |

| Estate Value | 1/31/20 | | 2/7/20 | | 2/14/20 | | 2/21/20 | | 2/28/20 |
|---|---|---|---|---|---|---|---|---|---|
| Pre-petition cash balance | | 158,488 | | 158,488 | | 158,488 | | 158,488 | | 158,488 |
| Pre-petition cash balance | | 1,273,108 | | 1,273,108 | | 1,273,108 | | 1,273,108 | | 1,273,108 |
| Total pre-petition estate value | $ | 1,431,596 | $ | 1,431,596 | $ | 1,431,596 | $ | 1,431,596 | $ | 1,431,596 |
| | | | | | | | | | | |
| Post petition cash | | 144,932 | | 69,584 | | - | | - | | - |
| Post petition A/R | | 1,764,740.8 | | 1,834,905.0 | | 1,899,625.2 | | 1,899,625.2 | | 1,899,625.2 |
| Post petition debt | | - | | - | | (20,050.2) | | (249,792.8) | | (226,857.6) |
| Post petition Estate Value | $ | 1,909,673 | $ | 1,904,489 | $ | 1,879,575 | $ | 1,649,832 | $ | 1,672,768 |
| | | | | | | | | | | |
| Change in estate value from pre-petition value | $ | 478,077 | $ | 472,893 | $ | 447,979 | $ | 218,236 | $ | 241,172 |
| Period change | $ | (70,983) | $ | (5,184) | $ | (24,914) | $ | (229,743) | $ | 22,935 |

Exhibit A

**Rancher's Legacy Meat Co.**
**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 6 3/6/20 | Week 7 3/13/20 | Week 8 3/20/20 | Week 9 3/27/20 | Week 10 4/3/20 | Week 11 4/10/20 |
|---|---|---|---|---|---|---|
| A/R receipts | $ 720,164 | $ 720,164 | $ 843,113 | $ 843,113 | $ 843,113 | $ 843,113 |
| Cash Sales | - | - | - | - | - | - |
| DIP LOC | 15,663 | 106,057 | 6,549 | 62,532 | - | 112,731 |
| **Total cash receipts** | **$ 735,827** | **$ 826,221** | **$ 849,662** | **$ 905,644** | **$ 843,113** | **$ 955,844** |

| Operating Cash Disbursements | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | $ - | $ 76,000 | $ - | $ 76,000 | $ - | $ 76,000 |
| Fee for Payroll Service | - | 750 | - | 750 | - | 750 |
| Payment to Company 401(K) & Flex Spending | 7,000 | 200 | 7,000 | 200 | 7,000 | 200 |
| Payments to Temporary Labor Agencies | 41,096 | 46,461 | 47,819 | 47,796 | 48,496 | 48,209 |
| Workmen Compensation Premium | - | 2,206 | - | - | - | 2,206 |
| Health/dental-life/disability for employees | 700 | 28,500 | - | 700 | 700 | 28,500 |
| Raw Ingredients - domestic | 478,454 | 548,472 | 550,286 | 551,154 | 551,743 | 576,427 |
| Raw Ingredients - import | 104,000 | - | - | 104,000 | - | 104,000 |
| Premium Payments to Critical Vendors | 14,000 | 3,500 | 3,500 | 14,000 | 3,500 | 14,000 |
| Packaging Supplies (boxes/film/etc) | 19,053 | 21,544 | 22,072 | 22,961 | 23,674 | 25,201 |
| QA and production supplies | 1,909 | 2,306 | 2,412 | 2,369 | 2,314 | 2,556 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Outside manufacturing services | - | - | - | - | - | - |
| Shipping/Freight | 24,335 | 28,858 | 28,878 | 28,572 | 28,916 | 30,001 |
| Building/equipment repair | 1,584 | 1,605 | 1,751 | 1,910 | 1,856 | 1,798 |
| Equipment lease | - | 2,075 | - | 700 | - | 2,075 |
| Building lease | - | 12,716 | - | - | - | - |
| Real estate taxes | - | - | - | - | - | - |
| Refrigerated van repair/gas | - | - | 500 | - | - | - |
| Coats/gloves/hairnets for Production Workers | 1,413 | 1,417 | 1,408 | 1,398 | 1,386 | 1,389 |
| Insurance | - | - | - | 10,532 | - | - |
| Utilities, including internet services | - | - | 20,000 | 1,500 | - | - |
| Garbage removal services | 2,283 | - | - | - | 2,283 | - |
| Advertising | - | - | - | - | - | - |
| Marketing Allowances | 25,628 | 29,760 | 29,059 | 28,992 | 28,841 | 31,687 |
| Food Show Costs | - | - | 2,500 | - | - | - |
| Professional fees - tax return prep | - | - | - | - | - | - |
| Professional fees - Legal (internal) | - | - | 250 | - | - | - |
| Professional fees - IT | - | - | - | - | 3,991 | - |
| Sales Commissions | - | - | 18,000 | - | - | - |
| Office expense | 300 | 300 | 300 | 300 | 300 | 300 |
| Bank fees | - | - | - | 1,533 | - | - |
| Office Cleaning Costs (outside service) | 538 | 539 | 539 | 539 | 538 | 538 |
| Employee expense/reimbursement | 3,500 | - | 3,500 | - | 3,500 | - |
| State Income Taxes/Fees | - | - | - | - | - | - |
| Legal - Foley | - | - | 32,250 | - | - | - |
| Legal - Creditor Committee | - | - | 15,000 | - | - | - |
| Platinum Group | - | - | 32,250 | - | - | - |
| Other production costs | 250 | - | - | 500 | - | 250 |
| USDA Fees/SQF Annual Audit Fees | - | 3,528 | - | - | - | - |
| Product samples | 584 | 634 | 667 | 634 | 597 | 557 |
| Installation of upgraded IT Equipment | - | 5,400 | - | - | - | - |
| Payment of US Trustee Fees | - | - | - | - | - | - |
| Professional appraisal fees | - | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | - | - | 18,825 | - | - | - |
| DIP LOC closing fees | - | - | - | - | - | - |
| DIP LOC interest | - | 251 | 1,697 | 105 | 1,001 | - |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total operating disbursements** | **$ 735,827** | **$ 826,221** | **$ 849,662** | **$ 905,644** | **$ 719,835** | **$ 955,844** |
| **Cash available after operating activities** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 123,277** | **$ -** |

| Financing Cash flow - DIP LOC | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Beginning period balance | $ 226,858 | $ 242,520 | $ 348,577 | $ 355,126 | $ 417,658 | $ 294,380 |
| Additions/Draws | 15,663 | 106,057 | 6,549 | 62,532 | - | 112,731 |
| Principal reductions/Pay-down | - | - | - | - | (123,277) | - |
| Other | - | - | - | - | - | - |
| **Ending period balance** | **$ 242,520** | **$ 348,577** | **$ 355,126** | **$ 417,658** | **$ 294,380** | **$ 407,111** |
| **Change in financing cash flow** | **$ 15,663** | **$ 106,057** | **$ 6,549** | **$ 62,532** | **$ (123,277)** | **$ 112,731** |
| **Cash available after operating, investing and fi** | **$ 15,663** | **$ 106,057** | **$ 6,549** | **$ 62,532** | **$ -** | **$ 112,731** |

| Summary Cash Flow | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Beginning period cash | $ - | $ - | $ - | $ - | $ - | $ - |
| Cash receipts | 720,164 | 720,164 | 843,113 | 843,113 | 843,113 | 843,113 |
| Operating disbursements | (735,827) | (826,221) | (849,662) | (905,644) | (719,835) | (955,844) |
| Investing cash flow activity | - | - | - | - | - | - |
| Financing cash flow activity | 15,663 | 106,057 | 6,549 | 62,532 | (123,277) | 112,731 |
| Other | - | - | - | - | - | - |
| **Ending period cash** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |

| Rolling A/R | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Beginning A/R balance | $ 1,899,625 | $ 2,022,574 | $ 2,145,522 | $ 2,145,522 | $ 2,145,522 | $ 2,176,499 |
| Sales for period | 843,113 | 843,113 | 843,113 | 843,113 | 874,090 | 874,090 |
| A/R receipts | (720,164) | (720,164) | (843,113) | (843,113) | (843,113) | (843,113) |
| Sales Not Previously Reported for W/E 09.21.19 ( | - | - | - | - | - | - |
| **Ending A/R balance** | **$ 2,022,574** | **$ 2,145,522** | **$ 2,145,522** | **$ 2,145,522** | **$ 2,176,499** | **$ 2,207,476** |

| Estate Value | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Pre-petition cash balance | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| **Total pre-petition estate value** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** |
| Post petition cash balance | - | - | - | - | - | - |
| Post petition A/R | 2,022,573.6 | 2,145,521.9 | 2,145,521.9 | 2,145,521.9 | 2,176,499.1 | 2,207,476.3 |
| Post petition debt | (242,520.2) | (348,577.0) | (355,126.2) | (417,657.7) | (294,380.4) | (407,111.5) |
| **Post petition Estate Value** | **$ 1,780,053** | **$ 1,796,945** | **$ 1,790,396** | **$ 1,727,864** | **$ 1,882,119** | **$ 1,800,365** |
| Change in estate value from pre-petition value | 348,457 | 365,349 | 358,800 | 296,268 | 450,523 | 368,769 |
| **Period change** | **$ 107,286** | **$ 16,892** | **$ (6,549)** | **$ (62,532)** | **$ 154,255** | **$ (81,754)** |

Exhibit A

**Rancher's Legacy Meat Co.**
**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 12 4/17/20 | Week 13 4/24/20 | Week 14 5/1/20 | Week 15 5/8/20 | Week 16 5/15/20 | Week 17 5/22/20 |
|---|---|---|---|---|---|---|
| A/R receipts | $ 874,090 | $ 874,090 | $ 874,090 | $ 874,090 | $ 874,090 | $ 988,990 |
| Cash Sales | - | - | - | - | - | - |
| DIP LOC | - | 95,294 | - | - | 271,081 | 3,229 |
| **Total cash receipts** | **$ 874,090** | **$ 969,383** | **$ 874,090** | **$ 874,090** | **$ 1,145,171** | **$ 992,219** |

| Operating Cash Disbursements | 4/17/20 | 4/24/20 | 5/1/20 | 5/8/20 | 5/15/20 | 5/22/20 |
|---|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | $ - | $ 76,000 | $ - | $ - | $ 76,000 | $ - |
| Fee for Payroll Service | - | 750 | - | 750 | - | 750 |
| Payment to Company 401(K) & Flex Spending | 7,000 | 200 | 7,000 | 200 | 7,000 | 200 |
| Payments to Temporary Labor Agencies | 48,321 | 48,331 | 48,260 | 48,508 | 57,195 | 57,356 |
| Workmen Compensation Premium | - | - | - | - | 2,206 | - |
| Health/dental/life/disability for employees | - | - | - | 700 | 28,500 | - |
| Raw Ingredients - domestic | 578,003 | 582,934 | 570,494 | 573,932 | 674,600 | 674,510 |
| Raw Ingredients - import | - | 104,000 | - | - | 104,000 | - |
| Premium Payments to Critical Vendors | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Packaging Supplies (boxes/film/etc) | 25,441 | 25,539 | 25,968 | 25,229 | 29,535 | 29,346 |
| QA and production supplies | 2,532 | 2,551 | 2,699 | 2,542 | 2,940 | 2,888 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Outside manufacturing services | - | - | - | - | - | - |
| Shipping/Freight | 30,001 | 29,341 | 30,233 | 29,457 | 34,485 | 34,334 |
| Building/equipment repair | 1,734 | 1,725 | 1,733 | 1,729 | 1,742 | 1,742 |
| Equipment lease | - | 700 | - | - | 2,075 | - |
| Building lease | 12,716 | - | - | - | 12,716 | - |
| Real estate taxes | - | - | - | - | 49,000 | - |
| Refrigerated van repair/gas | 500 | - | - | - | 500 | - |
| Coats/gloves/hairnets for Production Workers | 1,393 | 1,397 | 1,399 | 1,400 | 1,399 | 1,396 |
| Insurance | - | 10,532 | - | - | - | 10,532 |
| Utilities, including internet services | - | 20,000 | 1,500 | - | - | 20,000 |
| Garbage removal services | - | - | 2,283 | - | - | - |
| Advertising | - | - | - | - | - | - |
| Marketing Allowances | 32,770 | 31,734 | 32,080 | 31,641 | 37,139 | 36,626 |
| Food Show Costs | 2,500 | - | - | - | 2,500 | - |
| Professional fees - tax return prep | - | - | - | - | - | - |
| Professional fees - Legal (internal) | 250 | - | - | - | 250 | - |
| Professional fees - IT | - | - | 3,991 | - | - | - |
| Sales Commissions | - | 18,000 | - | - | - | 18,000 |
| Office expense | 300 | 300 | 300 | 300 | 300 | 300 |
| Bank fees | - | 1,533 | - | - | - | 1,533 |
| Office Cleaning Costs (outside service) | 538 | 538 | 538 | 538 | 538 | 538 |
| Employee expense/reimbursement | 3,500 | - | 3,500 | - | 3,500 | - |
| State Income Taxes/Fees | 2,450 | - | - | - | - | - |
| Legal - Foley | 32,250 | - | - | - | 32,250 | - |
| Legal - Creditor Committee | 15,000 | - | - | - | 15,000 | - |
| Platinum Group | 32,250 | - | - | - | 32,250 | - |
| Other production costs | - | - | 500 | - | 250 | - |
| USDA Fees/SQF Annual Audit Fees | 3,528 | - | - | - | - | 3,528 |
| Product samples | 567 | 578 | 587 | 594 | 600 | 601 |
| Installation of upgraded IT Equipment | - | - | - | - | - | 5,000 |
| Payment of US Trustee Fees | - | - | 97,280 | - | - | - |
| Professional appraisal fees | - | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | 18,825 | - | - | - | - | - |
| DIP LOC closing fees | - | - | - | - | - | - |
| DIP LOC interest | 1,804 | - | 1,525 | - | - | 4,337 |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total operating disbursements** | **$ 866,873** | **$ 969,383** | **$ 844,569** | **$ 806,220** | **$ 1,145,171** | **$ 992,219** |
| **Cash available after operating activities** | **$ 7,216** | **$ -** | **$ 29,520** | **$ 67,869** | **$ -** | **$ -** |

| Financing Cash flow - DIP LOC | 4/17/20 | 4/24/20 | 5/1/20 | 5/8/20 | 5/15/20 | 5/22/20 |
|---|---|---|---|---|---|---|
| Beginning period balance | $ 407,111 | $ 399,895 | $ 495,189 | $ 465,669 | $ 397,799 | $ 668,880 |
| Additions/Draws | - | 95,294 | - | - | 271,081 | 3,229 |
| Principal reductions/Pay-down | (7,216) | - | (29,520) | (67,869) | - | - |
| Other | - | - | - | - | - | - |
| **Ending period balance** | **$ 399,895** | **$ 495,189** | **$ 465,669** | **$ 397,799** | **$ 668,880** | **$ 672,110** |
| **Change in financing cash flow** | **$ (7,216)** | **$ 95,294** | **$ (29,520)** | **$ (67,869)** | **$ 271,081** | **$ 3,229** |
| **Cash available after operating, investing and fi** | **$ -** | **$ 95,294** | **$ -** | **$ -** | **$ 271,081** | **$ 3,229** |

| Summary Cash Flow | 4/17/20 | 4/24/20 | 5/1/20 | 5/8/20 | 5/15/20 | 5/22/20 |
|---|---|---|---|---|---|---|
| Beginning period cash | $ - | $ - | $ - | $ - | $ - | $ - |
| Cash receipts | 874,090 | 874,090 | 874,090 | 874,090 | 874,090 | 988,990 |
| Operating disbursements | (866,873) | (969,383) | (844,569) | (806,220) | (1,145,171) | (992,219) |
| Investing cash flow activity | - | - | - | - | - | - |
| Financing cash flow activity | (7,216) | 95,294 | (29,520) | (67,869) | 271,081 | 3,229 |
| Other | - | - | - | - | - | - |
| **Ending period cash** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |

| Rolling A/R | 4/17/20 | 4/24/20 | 5/1/20 | 5/8/20 | 5/15/20 | 5/22/20 |
|---|---|---|---|---|---|---|
| Beginning A/R balance | $ 2,207,476 | $ 2,207,476 | $ 2,207,476 | $ 2,207,476 | $ 2,322,376 | $ 2,437,277 |
| Sales for period | 874,090 | 874,090 | 874,090 | 988,990 | 988,990 | 988,990 |
| A/R receipts | (874,090) | (874,090) | (874,090) | (874,090) | (874,090) | (988,990) |
| Sales Not Previously Reported for W/E 09.21.19 ( | - | - | - | - | - | - |
| **Ending A/R balance** | **$ 2,207,476** | **$ 2,207,476** | **$ 2,207,476** | **$ 2,322,376** | **$ 2,437,277** | **$ 2,437,277** |

| Estate Value | 4/17/20 | 4/24/20 | 5/1/20 | 5/8/20 | 5/15/20 | 5/22/20 |
|---|---|---|---|---|---|---|
| Pre-petition cash balance | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| **Total pre-petition estate value** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** |
| Post petition cash | $ - | $ - | $ - | $ - | $ - | $ - |
| Post petition A/R | 2,207,476.3 | 2,207,476.3 | 2,207,476.3 | 2,322,376.5 | 2,437,276.7 | 2,437,276.7 |
| Post petition debt | (399,895.2) | (495,189.0) | (465,668.7) | (397,799.3) | (668,880.4) | (672,109.8) |
| **Post petition Estate Value** | **$ 1,807,581** | **$ 1,712,287** | **$ 1,741,808** | **$ 1,924,577** | **$ 1,768,396** | **$ 1,765,167** |
| Change in estate value from pre-petition value | 375,985 | 280,691 | 310,212 | 492,981 | 336,800 | 333,571 |
| **Period change** | **$ 7,216** | **$ (95,294)** | **$ 29,520** | **$ 182,770** | **$ (156,181)** | **$ (3,229)** |

Exhibit A

**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 18 5/29/20 | Week 19 6/5/20 | Week 20 6/12/20 | Week 21 6/19/20 | Week 22 6/26/20 |
|---|---|---|---|---|---|
| A/R receipts | $ 988,990 | $ 988,990 | $ 988,990 | $ 1,004,164 | $ 1,004,164 |
| Cash Sales | - | - | - | - | - |
| DIP LOC | - | - | 34,581 | 38,048 | 8,974 |
| **Total cash receipts** | **$ 988,990** | **$ 988,990** | **$ 1,023,570** | **$ 1,042,212** | **$ 1,013,137** |

| Operating Cash Disbursements | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | $ - | $ 76,000 | $ - | $ 76,000 | $ - |
| Fee for Payroll Service | - | 750 | - | 750 | - |
| Payment to Company 401(K) & Flex Spending | 7,000 | 200 | 7,000 | 200 | 7,000 |
| Payments to Temporary Labor Agencies | 57,448 | 57,491 | 58,231 | 58,271 | 58,185 |
| Workmen Compensation Premium | - | - | 2,206 | - | - |
| Health/dental/life/disability for employees | - | 700 | 28,500 | - | - |
| Raw Ingredients - domestic | 674,268 | 674,823 | 684,041 | 684,372 | 684,540 |
| Raw Ingredients - import | 104,000 | - | 104,000 | - | 104,000 |
| Premium Payments to Critical Vendors | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Packaging Supplies (boxes/film/etc) | 28,924 | 28,825 | 29,069 | 29,086 | 29,142 |
| QA and production supplies | 2,835 | 2,861 | 2,925 | 2,943 | 2,954 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Outside manufacturing services | - | - | - | - | - |
| Shipping/Freight | 34,209 | 34,410 | 35,040 | 35,183 | 35,272 |
| Building/equipment repair | 1,757 | 1,770 | 1,772 | 1,760 | 1,751 |
| Equipment lease | 700 | - | 2,075 | - | - |
| Building lease | - | - | 12,716 | - | - |
| Real estate taxes | - | - | - | - | - |
| Refrigerated van repair/gas | - | - | - | 500 | - |
| Coats/gloves/hairnets for Production Workers | 1,395 | 1,395 | 1,396 | 1,397 | 1,397 |
| Insurance | - | - | - | - | 10,532 |
| Utilities, including internet services | 1,500 | - | - | 20,000 | - |
| Garbage removal services | - | 2,283 | - | - | - |
| Advertising | - | - | - | - | - |
| Marketing Allowances | 36,101 | 36,341 | 36,973 | 37,072 | 37,068 |
| Food Show Costs | - | - | - | - | - |
| Professional fees - tax return prep | - | - | - | - | - |
| Professional fees - Legal (internal) | - | - | - | 250 | - |
| Professional fees - IT | - | 3,991 | - | - | - |
| Sales Commissions | - | - | - | - | 18,000 |
| Office expense | 300 | 300 | 300 | 300 | 300 |
| Bank fees | - | - | - | - | 1,533 |
| Office Cleaning Costs (outside service) | 538 | 538 | 538 | 538 | 538 |
| Employee expense/reimbursement | 3,500 | - | 3,500 | - | 3,500 |
| State Income Taxes/Fees | - | - | - | - | - |
| Legal - Foley | - | - | - | 32,250 | - |
| Legal - Creditor Committee | - | - | - | 15,000 | - |
| Platinum Group | - | - | - | 32,250 | - |
| Other production costs | - | 500 | - | 250 | - |
| USDA Fees/SQF Annual Audit Fees | - | - | - | - | 3,528 |
| Product samples | 598 | 591 | 587 | 586 | 589 |
| Installation of upgraded IT Equipment | - | - | - | - | - |
| Payment of US Trustee Fees | - | - | - | - | - |
| Professional appraisal fees | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | - | - | - | - | - |
| DIP LOC closing fees | - | - | - | - | - |
| DIP LOC interest | 52 | - | - | 553 | 609 |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total operating disbursements** | **$ 967,825** | **$ 936,469** | **$ 1,023,570** | **$ 1,042,212** | **$ 1,013,137** |
| **Cash available after operating activities** | **$ 21,165** | **$ 52,521** | **$ -** | **$ -** | **$ -** |

| Financing Cash flow - DIP LOC | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Beginning period balance | $ 672,110 | $ 650,945 | $ 598,425 | $ 633,005 | $ 671,053 |
| Additions/Draws | - | - | 34,581 | 38,048 | 8,974 |
| Principal reductions/Pay-down | (21,165) | (52,521) | - | - | - |
| Other | - | - | - | - | - |
| **Ending period balance** | **$ 650,945** | **$ 598,425** | **$ 633,005** | **$ 671,053** | **$ 680,027** |
| **Change in financing cash flow** | **$ (21,165)** | **$ (52,521)** | **$ 34,581** | **$ 38,048** | **$ 8,974** |
| **Cash available after operating, investing and fi** | **$ -** | **$ -** | **$ 34,581** | **$ 38,048** | **$ 8,974** |

| Summary Cash Flow | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Beginning period cash | $ - | $ - | $ - | $ - | $ - |
| Cash receipts | 988,990 | 988,990 | 988,990 | 1,004,164 | 1,004,164 |
| Operating disbursements | (967,825) | (936,469) | (1,023,570) | (1,042,212) | (1,013,137) |
| Investing cash flow activity | - | - | - | - | - |
| Financing cash flow activity | (21,165) | (52,521) | 34,581 | 38,048 | 8,974 |
| Other | - | - | - | - | - |
| **Ending period cash** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |

| Rolling A/R | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Beginning A/R balance | $ 2,437,277 | $ 2,437,277 | $ 2,452,451 | $ 2,467,624 | $ 2,467,624 |
| Sales for period | 988,990 | 1,004,164 | 1,004,164 | 1,004,164 | 1,004,164 |
| A/R receipts | (988,990) | (988,990) | (988,990) | (1,004,164) | (1,004,164) |
| Sales Not Previously Reported for W/E 09.21.19 ( | - | - | - | - | - |
| **Ending A/R balance** | **$ 2,437,277** | **$ 2,452,451** | **$ 2,467,624** | **$ 2,467,624** | **$ 2,467,624** |

| Estate Value | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Pre-petition cash balance | $ 158,488 | $ 158,488 | $ 158,488 | $ 158,488 | $ 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| **Total pre-petition estate value** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** | **$ 1,431,596** |
| Post petition cash | $ - | $ - | $ - | $ - | $ - |
| Post petition A/R | 2,437,276.7 | 2,452,450.5 | 2,467,624.4 | 2,467,624.4 | 2,467,624.4 |
| Post petition debt | (650,945.2) | (598,424.7) | (633,005.3) | (671,053.3) | (680,026.8) |
| **Post petition Estate Value** | **$ 1,786,331** | **$ 1,854,026** | **$ 1,834,619** | **$ 1,796,571** | **$ 1,787,598** |
| Change in estate value from pre-petition value | $ 354,735 | $ 422,430 | $ 403,023 | $ 364,975 | $ 356,002 |
| **Period change** | **$ 21,165** | **$ 67,694** | **$ (19,407)** | **$ (38,048)** | **$ (8,974)** |

**Exhibit A**

**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 23 7/3/20 | Week 24 7/10/20 | Week 25 7/17/20 | Week 26 7/24/20 | Totals 1/31 - 7/24 |
|---|---|---|---|---|---|
| A/R receipts | $ 1,004,164 | $ 1,004,164 | $ 1,011,315 | $ 1,011,315 | $ 22,574,244 |
| Cash Sales | - | - | - | - | - |
| DIP LOC | - | - | 122,579 | - | 1,127,109 |
| **Total cash receipts** | $ 1,004,164 | $ 1,004,164 | $ 1,133,894 | $ 1,011,315 | 23,701,353 |

| Operating Cash Disbursements | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | $ 76,000 | $ - | $ 76,000 | $ - | $ 988,000 |
| Fee for Payroll Service | - | 750 | - | - | 9,750 |
| Payment to Company 401(K) & Flex Spending | 200 | 7,000 | 200 | 7,000 | 93,600 |
| Payments to Temporary Labor Agencies | 58,095 | 58,291 | 58,332 | 58,365 | 1,302,778 |
| Workmen Compensation Premium | - | 2,206 | - | - | 13,236 |
| Health/dental/life/disability for employees | 700 | 28,500 | - | - | 175,200 |
| Raw Ingredients - domestic | 684,503 | 688,857 | 689,058 | 689,138 | 15,378,762 |
| Raw Ingredients - import | - | - | 104,000 | - | 1,144,000 |
| Premium Payments to Critical Vendors | 3,500 | 3,500 | 3,500 | 3,500 | 143,500 |
| Packaging Supplies (boxes/film/etc) | 29,204 | 29,505 | 29,657 | 29,779 | 658,699 |
| QA and production supplies | 2,955 | 2,987 | 2,994 | 2,992 | 65,434 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 187,200 |
| Outside manufacturing services | - | - | - | - | - |
| Shipping/Freight | 35,300 | 35,553 | 35,523 | 35,490 | 784,958 |
| Building/equipment repair | 1,747 | 1,748 | 1,750 | 1,752 | 45,281 |
| Equipment lease | 700 | 2,075 | - | - | 15,950 |
| Building lease | - | 12,716 | - | - | 76,298 |
| Real estate taxes | - | - | - | - | 49,000 |
| Refrigerated van repair/gas | - | - | 500 | - | 3,000 |
| Coats/gloves/hairnets for Production Workers | 1,397 | 1,397 | 1,397 | 1,396 | 36,201 |
| Insurance | - | - | - | 10,532 | 63,192 |
| Utilities, including internet services | 1,500 | - | - | 20,000 | 129,000 |
| Garbage removal services | 2,283 | - | - | - | 13,695 |
| Advertising | - | - | - | - | - |
| Marketing Allowances | 37,128 | 37,392 | 37,403 | 37,467 | 827,982 |
| Food Show Costs | - | - | - | - | 7,500 |
| Professional fees - tax return prep | - | - | - | - | 2,000 |
| Professional fees - Legal (internal) | - | - | 250 | - | 1,500 |
| Professional fees - IT | 3,991 | - | - | - | 23,946 |
| Sales Commissions | - | - | - | 18,000 | 108,000 |
| Office expense | 300 | 300 | 300 | 300 | 7,800 |
| Bank fees | - | - | - | 1,533 | 9,201 |
| Office Cleaning Costs (outside service) | 538 | 538 | 538 | 538 | 13,997 |
| Employee expense/reimbursement | - | 3,500 | - | 3,500 | 45,500 |
| State Income Taxes/Fees | - | - | 2,450 | - | 4,900 |
| Legal - Foley | - | - | 32,250 | - | 193,500 |
| Legal - Creditor Committee | - | - | 15,000 | - | 125,000 |
| Platinum Group | - | - | 32,250 | - | 248,518 |
| Other production costs | - | 500 | - | 250 | 4,000 |
| USDA Fees/SQF Annual Audit Fees | - | - | - | - | 17,638 |
| Product samples | 591 | 592 | 593 | 593 | 14,968 |
| Installation of upgraded IT Equipment | - | - | - | - | 12,900 |
| Payment of US Trustee Fees | - | - | - | - | 181,842 |
| Professional appraisal fees | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | - | - | - | - | 56,475 |
| DIP LOC closing fees | - | - | - | - | 35,000 |
| DIP LOC interest | 144 | - | - | 1,961 | 18,034 |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 52,000 |
| **Total operating disbursements** | $ 950,725 | $ 926,358 | $ 1,133,894 | $ 933,286 | $ 23,388,935 |
| **Cash available after operating activities** | $ 53,439 | $ 77,806 | $ - | $ 78,029 | $ 312,418 |

| Financing cash flow - DIP LOC | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Beginning period balance | $ 680,027 | $ 626,588 | $ 548,782 | $ 671,361 | $ - |
| Additions/Draws | - | - | 122,579 | - | 1,127,109 |
| Principal reductions/Pay-down | (53,439) | (77,806) | - | (78,029) | (533,777) |
| Other | - | - | - | - | - |
| **Ending period balance** | $ 626,588 | $ 548,782 | $ 671,361 | $ 593,332 | $ 593,332 |
| **Change in financing cash flow** | $ (53,439) | $ (77,806) | $ 122,579 | $ (78,029) | $ 593,332 |

| | | | | | |
|---|---|---|---|---|---|
| **Cash available after operating, investing and fi** | $ - | $ - | $ 122,579 | $ - | $ 905,749 |

| Summary Cash Flow | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Beginning period cash | $ - | $ - | $ - | $ - | $ 221,360 |
| Cash receipts | 1,004,164 | 1,004,164 | 1,011,315 | 1,011,315 | 22,574,244 |
| Operating disbursements | (950,725) | (926,358) | (1,133,894) | (933,286) | (23,388,935) |
| Investing cash flow activity | - | - | - | - | - |
| Financing cash flow activity | (53,439) | (77,806) | 122,579 | (78,029) | 593,332 |
| Other | - | - | - | - | - |
| **Ending period cash** | $ - | $ - | $ - | $ - | $ 0 |

| Rolling A/R | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Beginning A/R balance | $ 2,467,624 | $ 2,474,776 | $ 2,481,927 | $ 2,481,927 | $ 1,759,297 |
| Sales for period | 1,011,315 | 1,011,315 | 1,011,315 | 1,011,315 | 23,296,874 |
| A/R receipts | (1,004,164) | (1,004,164) | (1,011,315) | (1,011,315) | (22,574,244) |
| Sales Not Previously Reported for W/E 09.21.19 ( | - | - | - | - | - |
| **Ending A/R balance** | $ 2,474,776 | $ 2,481,927 | $ 2,481,927 | $ 2,481,927 | $ 2,481,927 |

| Estate Value | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Pre-petition cash balance | $ 158,488 | $ 158,488 | $ 158,488 | $ 158,488 | $ 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| **Total pre-petition estate value** | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 |
| Post petition cash | $ - | $ - | $ - | $ - | $ 0 |
| Post petition A/R | 2,474,775.7 | 2,481,927.1 | 2,481,927.1 | 2,481,927.1 | 2,481,927.1 |
| Post petition debt | (626,588.3) | (548,782.1) | (671,360.9) | (593,331.7) | (593,331.7) |
| **Post petition Estate Value** | $ 1,848,187 | $ 1,933,145 | $ 1,810,566 | $ 1,888,595 | $ 1,888,595 |
| **Change in estate value from pre-petition value** | $ 416,591 | $ 501,549 | $ 378,970 | $ 456,999 | $ 456,999 |
| **Period change** | $ 60,590 | $ 84,958 | $ (122,579) | $ 78,029 | $ 456,999 |

Exhibit A

## **EXHIBIT B**

Since filing bankruptcy, through 1/3/2020,  Value to the estate (defined as cash plus accounts receivable minus DIP LOC) increased $550K.

Sales for the 13 weeks ending 1/3/2020 were $8,865K. Disbursements for this same time period were $8,495K.  The accounts receivable balance ending 1/3/2020 was $1,408K.  The cash balance as of 1/3/2020 was $573K.

The 26 week projections, starting with the week ending 1/31/2020 and going through the week ending 7/24/2020 anticipate the Value to the Estate being $457K higher than the pre-petition value.  This includes $749K of professional and Trustee fees.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| In Re: | Case No.:  19-32928-MER |
|---|---|
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |

## MEMORANDUM OF LAW

This memorandum of law is submitted in support of the Motion for Order Authorizing Continued Use of Cash Collateral and Granting Adequate Protection filed by Rancher's Legacy Meat Co. ("Debtor"). A hearing has been scheduled for **9:00 a.m. on January 16, 2020**.

## FACTS

The factual basis for this memorandum are set forth in the verified Motion and the Peterson Declaration and incorporated herein. All capitalized terms not defined herein have the meaning ascribed in the Motion.

## LEGAL ARGUMENT

Under the terms of Section 363(c) of Title 11 of the United States Code (the "Bankruptcy Code"), cash collateral use is authorized if certain conditions are met:

> (2)  The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless –
>
> (A)  each entity that has an interest in such cash collateral consents; or
>
> (B)  the court, after notice and a hearing, authorized such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Subsection (e) of Section 363 provides that, at any time, on request of an entity that has an interest in property proposed to be used by the debtor, "the court, with or without a hearing,

*shall* prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e)(emphasis added).

Under the terms of Section 361 of the Bankruptcy Code, when adequate protection is required under section 363 of the Bankruptcy Code, such adequate protection may be provided by, *inter alia*, "providing to such entity an additional or replacement lien to the extent that . . . use, sale [or] lease [under Section 363] . . . results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361.

Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requires that a motion conditioning the use, sale or lease of property shall be made in accordance with Bankruptcy Rule 9014 and shall be served on any committee appointed pursuant to Section 1102 of the Bankruptcy Code or its authorized agent, or, if no committee of unsecured creditors has been appointed, upon the holders of the 20 largest unsecured claims.  In accordance with Bankruptcy Rule 4001(b)(1), a motion for use of cash collateral shall be made in accordance with Bankruptcy Rule 9014 and shall be served on any entity which has an interest in the cash collateral and on any committee appointed pursuant to Section 1102 of the Bankruptcy Code or its authorized agent.  If no committee of unsecured creditors has been appointed, a motion for use of cash collateral shall be served on the holders of the 20 largest unsecured claims.

Finally, Local Rule 4001-2 requires that, in connection with a motion for use of cash collateral, the debtor shall attach: 1) the debtor's calculation of the amount of debt secured by the collateral; 2) the debtor's description of the collateral and estimate of the collateral's value on the date of the filing of the petition and at the beginning of the period of time for which the debtors seek authorization to use cash collateral; 3) the debtor's description of the collateral and estimate

2

of the collateral's value at the end of the period of time for which the debtor seeks authorization

to use cash collateral; and 4) the debtor's cash flow projections.

11 U.S.C. §363(c)(2) provides that a debtor may use cash collateral only with the consent

of each entity that has an interest in such cash collateral, or if the court, after notice and a

hearing, authorizes such use. Use of cash collateral must be restricted or conditioned as is

necessary to provide adequate protection to any entity that has an interest in the property which

the Debtor proposes to use. 11 U.S.C. §363(e). In this Motion, Debtor seeks an order authorizing

the continued use of cash collateral through July 24, 2020 on the same terms as provided in the

Final Cash Collateral Order to operate its business in the ordinary course according to the Budget

attached to the Peterson Declaration as Exhibit A. As adequate protection, the Debtor proposes to

provide replacement liens and a reporting of information to the its lenders.  The Eighth Circuit

Court of Appeals has stated:

> "In any given case, the bankruptcy court must necessarily (i) establish the value of the secured creditor's interest, (ii) identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (iii) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence."

*In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985).

The adequate protection offered by the Debtor satisfies the Bankruptcy Code

requirements for adequate protection.   In the present case, the Debtor has satisfied all of the

requirements under the Bankruptcy Code and the applicable rules.  The purported secured

lenders, Ratcliff and ULF,  have been afforded adequate protection from the use of cash

collateral pursuant to the terms of the Proposed Order.   In accordance with the terms of the

Proposed Order, the secured lenders will receive replacement liens in an amount equal to the

Debtor's actual use of cash collateral and any diminution in the value of the their interest in the

3

prepetition collateral occurring on or subsequent to the Petition Date.  Consequently, the terms of

Sections 361 and 363(c)(2) and (e) of the Bankruptcy Code have been satisfied.

## THE ASSERTED SECURITY INTERESTS OF RATCLIFF AND ULF ARE AVOIDABLE

The following facts are undisputed as it relates to Ratcliff's asserted security interest in

Rancher's assets: (i) Unger Meat Company executed and delivered to Ratcliff a Security

Agreement dated December 3, 2010, by which Unger Meat Company pledged and granted

Ratcliff a security interest in its ownership interest in all of Unger's equipment, inventory, lease

agreements, accounts receivable, furniture and fixtures, whether then owned or thereafter

acquired, together with all proceeds and products thereof and replacements therefor; (ii) Unger

Meat Company changed its name to Rancher's Legacy Meat Co. by amendment to its Articles of

Incorporation on May 6, 2014; (iii) Ratcliff filed a UCC continuation statement on November 12,

2015 with the debtor listed as "Unger Meat Company"; and (iv) Ratcliff did not file a debtor

name change to reflect the change in his debtor's name to Rancher's Legacy Meat Co. until

January 10, 2019.

The provisions of the Uniform Commercial Code governing this particular issue were

changed significantly in 2010. Previously the Uniform Commercial Code, in section 9-402

required the financing statement to contain the name, address, and signature of the debtor.  It did

not define what constituted the name.  Since the 2010 revisions, the definition of what constitutes

a sufficient name on the financing statement is specified and 9-506 specifies that an erroneous

name is seriously misleading unless the financing statement is saved by the safe harbor

provision.  The revised provisions of the Uniform Commercial Code, as adopted in Minnesota,

provide as follows:

336.9-503 NAME OF DEBTOR AND SECURED PARTY.

4

(a) Sufficiency of debtor's name. A financing statement sufficiently provides the name of the debtor:

> (1) except as otherwise provided in paragraph (3), if the debtor is a registered organization or the collateral is held in a trust that is a registered organization, only if the financing statement provides *the name that is stated to be the registered organization's name* on the public organic record most recently filed with or issued or enacted by the registered organization's jurisdiction of organization which purports to state, amend, or restate the registered organization's name;

 (b) Additional debtor-related information. A financing statement that provides the name of the debtor in accordance with subsection (a) is not rendered ineffective by the absence of:

> (1) a trade name or other name of the debtor; or

> (2) unless required under subsection (a)(6)(B), names of partners, members, associates, or other persons comprising the debtor.

(c) Debtor's trade name insufficient. A financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor.

336.9-506 EFFECT OF ERRORS OR OMISSIONS.

(a) Minor errors and omissions. A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

(b) Financing statement seriously misleading. Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 336.9-503(a) is seriously misleading.

(c) Financing statement not seriously misleading. *If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement* that fails sufficiently to provide the name of the debtor in accordance with section 336.9-503(a), the name provided does not make the financing statement seriously misleading.

(d) Debtor's correct name. For purposes of section 336.9-508(b), the "debtor's correct name" in subsection (c) means the correct name of the new debtor.

336.9-507 EFFECT OF CERTAIN EVENTS ON EFFECTIVENESS OF FINANCING STATEMENT.

(a) Disposition. A filed financing statement remains effective with respect to collateral that is sold, exchanged, leased, licensed, or otherwise disposed of and in

5

which a security interest or agricultural lien continues, even if the secured party knows of or consents to the disposition.

(b) Information becoming seriously misleading. Except as otherwise provided in subsection (c) and section 336.9-508, a financing statement is not rendered ineffective if, after the financing statement is filed, the information provided in the financing statement becomes seriously misleading under section 336.9-506.

(c) ***Change in debtor's name***. If the name that a filed financing statement provides for a debtor becomes insufficient as the name of the debtor under section 336.9-503 (a) so that the financing statement becomes seriously misleading under section 336.9-506:

> (1) the financing statement is effective to perfect a security interest in collateral acquired by the debtor before, or ***within four months after***, the filed financing statement becomes seriously misleading; and
>
> (2) the financing statement is ***not effective*** to perfect a security interest in collateral acquired by the debtor more than four months after the filed financing statement becomes seriously misleading, unless an amendment to the financing statement which renders the financing statement not seriously misleading is filed within four months after the financing statement became seriously misleading.

Minn. Stat. §§ 336.9-503, 506 and 507 (***emphasis added***).

Case law analyzing the 2010 revisions to the Uniform Commercial Code remains in its infancy. However, at least one appellate court within the 8th Circuit has addressed the issue. *See*, *In re EDM Corp.*, 431 B.R. 459 (B.A.P. 8th Cir. 2010). After conducting a thorough analysis of the applicable provisions of the Uniform Commercial Code and prior 8th Circuit decisions, the *EDM Corp.* court concluded,

> In sum, we interpret § 9–503 to mean exactly what it says: if the debtor is a registered organization, then a financing statement "provides the name of the debtor" only if it "provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization"—***nothing more and nothing less.***

*Id*. at 466. (***emphasis added***)

It is worth noting that the *EDM Corp.* court found the secured lender was not validly perfected even though its UCC financing statement included the debtor's organizational name.

6

The mere inclusion of a d/b/a name in addition to the debtor's organizational name was enough to negate perfection of the secured lender's asserted security interest. By comparison, here, Ratcliff filed his continuation statement in November 2015 under the completely wrong debtor's name. No UCC search for Rancher's Legacy Meat Co. would have revealed the financing statement that Ratcliff now seeks to have declared a valid, perfected, first priority lien on Rancher's assets.

On May 6, 2014 2014 Unger Meat Company became Rancher's Legacy Meat Co. Ratcliff was aware of the change of name.  When the name of the debtor on his security interest changed, Ratcliff was required to file an amendment within four months reflecting the name change to maintain perfection.  Ratcliff did not file a change of name amendment until January 10, 2019.

After September 6, 2014, the Ratcliff security interest remained perfected in the assets which existed on that date: all the equipment which was owned by Rancher's and fixed assets then possessed by Rancher's.  However, after September 6, 2014 Plaintiff's security interest lapsed and was unperfected.

As to ULF, it filed a termination in February 2019. ULF then re-filed its UCC-1 in September 2019. As such, ULF's UCC-1 is avoidable as a preferential transfer. Accordingly, it is the Debtor's position that all asserted security interests[2] will be avoided for the benefit of the estate.

### CONCLUSION

The Debtor respectfully requests that an order be entered granting this Motion and authorizing the continued use of cash collateral through July 24, 2020 in accordance with the

---

[2] Excluding purchase money security interests in certain equipment.

7

terms of the Final Cash Collateral Order and  the budget attached to the  declaration of Rod

Peterson and authorizing the Debtor to grant replacement liens as adequate protection as set forth

in the Motion.


Dated: January 10, 2020                                    **FOLEY & MANSFIELD, PLLP**


                                          BY: /s/ Cameron A. Lallier
                                             _____
                                             Thomas J. Lallier (#163041)
                                             Cameron A. Lallier (#393213)
                                             250 Marquette Avenue,Suite 1200
                                             Minneapolis, MN  55401
                                             Telephone:  (612) 338-8788

                                             **ATTORNEYS FOR DEBTOR**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |

## ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL
## AND GRANTING ADEQUATE PROTECTION

This case came on for hearing on the Debtor's Motion for an Order Authorizing Continued Use of Cash Collateral and Granting Adequate Protection (the "Motion"). Based on the Motion and the file and having determined that the Debtor's offer of adequate protection constitutes adequate protection of the secured parties' interests under 11 U.S.C. §§ 361 and 363,

**IT IS ORDERED:**

1.      The Debtor's motion is **GRANTED**, including Debtor's request for expedited relief.

2.      The Debtor is authorized to use cash collateral in accordance with the terms of the budget attached hereto as **Exhibit A** through July 24, 2020.

3.      The Debtor is authorized and directed to grant adequate protection to Ratcliff and ULF on the terms as set forth in the motion. The replacement liens granted by the Debtor to Ratcliff and ULF shall have the same dignity, priority and effect as their respective prepetition interests, if any. The replacement liens shall not attach to any claims arising pursuant to Chapter 5 of the Bankruptcy Code or any asset acquired by the Debtor post-petition.

4.      The Debtor shall provide weekly reports to counsel for the Unsecured Creditors Committee (the "Committee"). The weekly reports shall be provided no later than the close of business on Wednesday of each week and cover the proceeding week's operations.

5.      The weekly reports shall also be provided to counsel for James L. Ratcliff ("Ratcliff") pending final determination of the validity of his purported security interest in the adversary proceeding (the "Adversary Proceeding") brought by the Debtor and the Committee against Ratcliff in case no. 19-ap-3095.

6.      If any interested party wishes to review confidential information of the Debtor, including but not limited to, the Debtor's two new customer contracts, such interested party must execute a non-disclosure agreement in substantially the same form as attached hereto as **<u>Exhibit B</u>**.

7.      Ratcliff shall be entitled to inspect the premises and audit the books and records of the Debtor upon reasonable request.

8.      Except to the extent specifically set forth herein, all objections to the entry of this Order are hereby overruled.


Dated: January __, 2020

_____
Honorable Michael E. Ridgway
UNITED STATES BANKRUPTCY JUDGE

2

1312261 v1

**Rancher's Legacy Meat Co.**
**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 1 1/31/20 | Week 2 2/7/20 | Week 3 2/14/20 | Week 4 2/21/20 | Week 5 2/28/20 |
|---|---|---|---|---|---|
| A/R receipts | $ 650,000 | $ 650,000 | $ 655,444 | $ 720,164 | $ 720,164 |
| Cash Sales | - | - | - | - | - |
| DIP LOC | - | - | 20,050 | 229,743 | - |
| **Total cash receipts** | **$ 650,000** | **$ 650,000** | **$ 675,494** | **$ 949,907** | **$ 720,164** |

| Operating Cash Disbursements | 1/31/20 | 2/7/20 | 2/14/20 | 2/22/19 | 2/28/20 |
|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | $ 76,000 | $ - | $ 76,000 | $ - | $ 76,000 |
| Fee for Payroll Service | 750 | | 750 | | 750 |
| Payment to Company 401(K) & Flex Spending | 200 | 7,000 | 200 | 7,000 | 200 |
| Payments to Temporary Labor Agencies | 37,221 | 35,633 | 39,114 | 39,866 | 40,386 |
| Workmen Compensation Premium | - | - | 2,206 | - | - |
| Health/dental/life/disability for employees | - | 700 | 28,500 | - | - |
| Raw Ingredients - domestic | 442,189 | 439,394 | 475,228 | 477,395 | 479,949 |
| Raw Ingredients - import | - | 104,000 | - | 104,000 | - |
| Premium Payments to Critical Vendors | 3,500 | 14,000 | 3,500 | 14,000 | 3,500 |
| Packaging Supplies (boxes/film/etc) | 19,994 | 20,402 | 20,162 | 19,706 | 19,678 |
| QA and production supplies | 1,563 | 1,591 | 1,829 | 1,937 | 2,051 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Outside manufacturing services | - | - | - | - | - |
| Shipping/Freight | 20,118 | 20,649 | 22,837 | 23,590 | 24,374 |
| Building/equipment repair | 1,826 | 1,644 | 1,775 | 1,590 | 1,734 |
| Equipment lease | - | - | 2,075 | - | - |
| Building lease | - | - | 12,716 | - | 700 |
| Real estate taxes | - | - | - | - | - |
| Refrigerated van repair/gas | - | - | - | 500 | - |
| Coats/gloves/hairnets for Production Workers | 1,360 | 1,351 | 1,363 | 1,376 | 1,390 |
| Insurance | - | - | - | 10,532 | - |
| Utilities, including internet services | 1,500 | - | - | 20,000 | 1,500 |
| Garbage removal services | - | 2,283 | - | - | - |
| Advertising | - | - | - | - | - |
| Marketing Allowances | 20,915 | 22,173 | 24,724 | 26,023 | 25,245 |
| Food Show Costs | - | - | - | - | - |
| Professional fees - tax return prep | - | 2,000 | - | - | - |
| Professional fees - Legal (internal) | - | - | 250 | - | - |
| Professional fees - IT | 3,991 | - | - | - | 3,991 |
| Sales Commissions | - | - | - | 18,000 | - |
| Office expense | 300 | 300 | 300 | 300 | 300 |
| Bank fees | - | - | - | - | 1,533 |
| Office Cleaning Costs (outside service) | 538 | 538 | 538 | 538 | 538 |
| Employee expense/reimbursement | - | 3,500 | - | 3,500 | - |
| State Income Taxes/Fees | - | - | - | - | - |
| Legal - Foley | - | - | - | 32,250 | - |
| Legal - Creditor Committee | - | - | - | 50,000 | - |
| Platinum Group | - | - | - | 87,268 | - |
| Other production costs | 250 | - | - | 500 | - |
| USDA Fees/SQF Annual Audit Fees | - | 3,528 | - | - | - |
| Product samples | 452 | 462 | 487 | 515 | 535 |
| Installation of upgraded IT Equipment | - | - | 2,500 | - | - |
| Payment of US Trustee Fees | 84,562 | - | - | - | - |
| Professional appraisal fees | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | - | - | 18,825 | - | - |
| DIP LOC closing fees | - | 35,000 | - | - | - |
| DIP LOC interest | - | - | - | 321 | 3,676 |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total operating disbursements** | **$ 726,427** | **$ 725,348** | **$ 745,078** | **$ 949,907** | **$ 697,229** |
| **Cash available after operating activities** | **$ (76,427)** | **$ (75,348)** | **$ (69,584)** | **$ -** | **$ 22,935** |

| Financing Cash flow - DIP LOC | 1/31/20 | 2/7/20 | 2/14/20 | 2/21/20 | 2/28/20 |
|---|---|---|---|---|---|
| Beginning period balance | $ - | $ - | $ - | $ 20,050 | 249,793 |
| Additions/Draws | - | - | 20,050 | 229,743 | - |
| Principal reductions/Pay-down | - | - | - | - | (22,935) |
| Other | - | - | - | - | - |
| **Ending period balance** | **$ -** | **$ -** | **$ 20,050** | **$ 249,793** | **$ 226,858** |
| **Change in financing cash flow** | **$ -** | **$ -** | **$ 20,050** | **$ 229,743** | **$ (22,935)** |
| **Cash available after operating, investing and fi** | **$ (76,427)** | **$ (75,348)** | **$ (49,534)** | **$ 229,743** | **$ -** |

| Summary Cash Flow | 1/31/20 | 2/7/20 | 2/14/20 | 2/21/20 | 2/28/20 |
|---|---|---|---|---|---|
| Beginning period cash | $ 221,360 | $ 144,932 | $ 69,584 | $ - | $ - |
| Cash receipts | 650,000 | 650,000 | 655,444 | 720,164 | 720,164 |
| Operating disbursements | (726,427) | (725,348) | (745,078) | (949,907) | (697,229) |
| Investing cash flow activity | - | - | - | - | - |
| Financing cash flow activity | - | - | 20,050 | 229,743 | (22,935) |
| Other | - | - | - | - | - |
| Ending period cash | $ 144,932 | $ 69,584 | $ - | $ - | $ - |

| Rolling A/R | 1/31/20 | 2/7/20 | 2/14/20 | 2/21/20 | 2/28/20 |
|---|---|---|---|---|---|
| Beginning A/R balance | $ 1,759,297 | $ 1,764,741 | $ 1,834,905 | $ 1,899,625 | $ 1,899,625 |
| Sales for period | 655,444 | 720,164 | 720,164 | 720,164 | 720,164 |
| A/R receipts | (650,000) | (650,000) | (655,444) | (720,164) | (720,164) |
| Sales Not Previously Reported for W/E 09.21.19 ( | | | | | |
| Ending A/R balance | $ 1,764,741 | $ 1,834,905 | $ 1,899,625 | $ 1,899,625 | $ 1,899,625 |

| Estate Value | 1/31/20 | 2/7/20 | 2/14/20 | 2/21/20 | 2/28/20 |
|---|---|---|---|---|---|
| Pre-petition cash balance | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 |
| Pre-petition cash balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| Total pre-petition estate value | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 |
| Post petition cash | 144,932 | 69,584 | - | - | - |
| Post petition A/R | 1,764,740.8 | 1,834,905.0 | 1,899,625.2 | 1,899,625.2 | 1,899,625.2 |
| Post petition debt | - | - | (20,050.2) | (249,792.8) | (226,857.6) |
| Post petition Estate Value | $ 1,909,673 | $ 1,904,489 | $ 1,879,575 | $ 1,649,832 | $ 1,672,768 |
| Change in estate value from pre-petition value | $ 478,077 | $ 472,893 | $ 447,979 | $ 218,236 | $ 241,172 |
| Period change | $ (70,983) | $ (5,184) | $ (24,914) | $ (229,743) | $ 22,935 |

**Exhibit A**

**Rancher's Legacy Meat Co.**
**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 6 3/6/20 | Week 7 3/13/20 | Week 8 3/20/20 | Week 9 3/27/20 | Week 10 4/3/20 | Week 11 4/10/20 |
|---|---|---|---|---|---|---|
| A/R receipts | 720,164 | 720,164 | 843,113 | 843,113 | 843,113 | 843,113 |
| Cash Sales | - | - | - | - | - | - |
| DIP LOC | 15,663 | 106,057 | 6,549 | 62,532 | - | 112,731 |
| **Total cash receipts** | **735,827** | **826,221** | **849,662** | **905,644** | **843,113** | **955,844** |

| Operating Cash Disbursements | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | - | 76,000 | - | 76,000 | - | 76,000 |
| Fee for Payroll Service | - | 750 | - | 750 | - | 750 |
| Payment to Company 401(K) & Flex Spending | 7,000 | 200 | 7,000 | 200 | 7,000 | 200 |
| Payments to Temporary Labor Agencies | 41,096 | 46,461 | 47,819 | 47,796 | 48,496 | 48,209 |
| Workmen Compensation Premium | - | 2,206 | - | - | - | 2,206 |
| Health/dental/life/disability for employees | 700 | 28,500 | - | 700 | 700 | 28,500 |
| Raw Ingredients - domestic | 478,454 | 548,472 | 550,286 | 551,154 | 551,743 | 576,427 |
| Raw Ingredients - import | 104,000 | - | - | 104,000 | - | 104,000 |
| Premium Payments to Critical Vendors | 14,000 | 3,500 | 3,500 | 14,000 | 3,500 | 14,000 |
| Packaging Supplies (boxes/film/etc) | 19,053 | 21,544 | 22,072 | 22,961 | 23,674 | 25,201 |
| QA and production supplies | 1,909 | 2,306 | 2,412 | 2,369 | 2,314 | 2,556 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Outside manufacturing services | - | - | - | - | - | - |
| Shipping/Freight | 24,335 | 28,858 | 28,878 | 28,572 | 28,916 | 30,001 |
| Building/equipment repair | 1,584 | 1,605 | 1,751 | 1,910 | 1,856 | 1,798 |
| Equipment lease | - | 2,075 | - | 700 | - | 2,075 |
| Building lease | - | 12,716 | - | - | - | - |
| Real estate taxes | - | - | - | - | - | - |
| Refrigerated van repair/gas | - | - | 500 | - | - | - |
| Coats/gloves/hairnets for Production Workers | 1,413 | 1,417 | 1,408 | 1,398 | 1,386 | 1,389 |
| Insurance | - | - | - | 10,532 | - | - |
| Utilities, including internet services | - | - | 20,000 | 1,500 | - | - |
| Garbage removal services | 2,283 | - | - | - | 2,283 | - |
| Advertising | - | - | - | - | - | - |
| Marketing Allowances | 25,628 | 29,760 | 29,059 | 28,992 | 28,841 | 31,687 |
| Food Show Costs | - | - | 2,500 | - | - | - |
| Professional fees - tax return prep | - | - | - | - | - | - |
| Professional fees - Legal (internal) | - | - | 250 | - | - | - |
| Professional fees - IT | - | - | - | - | 3,991 | - |
| Sales Commissions | - | - | 18,000 | - | - | - |
| Office expense | 300 | 300 | 300 | 300 | 300 | 300 |
| Bank fees | - | - | - | 1,533 | - | - |
| Office Cleaning Costs (outside service) | 538 | 539 | 539 | 539 | 538 | 538 |
| Employee expense/reimbursement | 3,500 | - | 3,500 | - | 3,500 | - |
| State Income Taxes/Fees | - | - | - | - | - | - |
| Legal - Foley | - | - | 32,250 | - | - | - |
| Legal - Creditor Committee | - | - | 15,000 | - | - | - |
| Platinum Group | - | - | 32,250 | - | - | - |
| Other production costs | 250 | - | - | 500 | - | 250 |
| USDA Fees/SQF Annual Audit Fees | - | 3,528 | - | - | - | - |
| Product samples | 584 | 634 | 667 | 634 | 597 | 557 |
| Installation of upgraded IT Equipment | - | 5,400 | - | - | - | - |
| Payment of US Trustee Fees | - | - | - | - | - | - |
| Professional appraisal fees | - | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | - | - | 18,825 | - | - | - |
| DIP LOC closing fees | - | - | - | - | - | - |
| DIP LOC interest | - | 251 | 1,697 | 105 | 1,001 | - |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total operating disbursements** | **735,827** | **826,221** | **849,662** | **905,644** | **719,835** | **955,844** |
| **Cash available after operating activities** | **-** | **-** | **-** | **-** | **123,277** | **-** |

| Financing Cash flow - DIP LOC | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Beginning period balance | 226,858 | 242,520 | 348,577 | 355,126 | 417,658 | 294,380 |
| Additions/Draws | 15,663 | 106,057 | 6,549 | 62,532 | - | 112,731 |
| Principal reductions/Pay-down | - | - | - | - | (123,277) | - |
| Other | - | - | - | - | - | - |
| **Ending period balance** | **242,520** | **348,577** | **355,126** | **417,658** | **294,380** | **407,111** |
| **Change in financing cash flow** | **15,663** | **106,057** | **6,549** | **62,532** | **-** | **112,731** |
| **Cash available after operating, investing and fi** | **15,663** | **106,057** | **6,549** | **62,532** | **-** | **112,731** |

| Summary Cash Flow | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Beginning period cash | - | - | - | - | - | - |
| Cash receipts | 720,164 | 720,164 | 843,113 | 843,113 | 843,113 | 843,113 |
| Operating disbursements | (735,827) | (826,221) | (849,662) | (905,644) | (719,835) | (955,844) |
| Investing cash flow activity | - | - | - | - | - | - |
| Financing cash flow activity | 15,663 | 106,057 | 6,549 | 62,532 | (123,277) | 112,731 |
| Other | - | - | - | - | - | - |
| **Ending period cash** | **-** | **-** | **-** | **-** | **-** | **-** |

| Rolling A/R | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Beginning A/R balance | 1,899,625 | 2,022,574 | 2,145,522 | 2,145,522 | 2,145,522 | 2,176,499 |
| Sales for period | 843,113 | 843,113 | 843,113 | 843,113 | 874,090 | 874,090 |
| A/R receipts | (720,164) | (720,164) | (843,113) | (843,113) | (843,113) | (843,113) |
| Sales Not Previously Reported for W/E 09.21.19 ( | | | | | | |
| **Ending A/R balance** | **2,022,574** | **2,145,522** | **2,145,522** | **2,145,522** | **2,176,499** | **2,207,476** |

| Estate Value | 3/6/20 | 3/13/20 | 3/20/20 | 3/27/20 | 4/3/20 | 4/10/20 |
|---|---|---|---|---|---|---|
| Pre-petition cash balance | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| Total pre-petition estate value | 1,431,596 | 1,431,596 | 1,431,596 | 1,431,596 | 1,431,596 | 1,431,596 |
| Post petition cash balance | - | - | - | - | - | - |
| Post petition A/R | 2,022,573.6 | 2,145,521.9 | 2,145,521.9 | 2,145,521.9 | 2,176,499.1 | 2,207,476.3 |
| Post petition debt | (242,520.2) | (348,577.0) | (355,126.2) | (417,657.7) | (294,380.4) | (407,111.5) |
| Post petition Estate Value | 1,780,053 | 1,796,945 | 1,790,396 | 1,727,864 | 1,882,119 | 1,800,365 |
| Change in estate value from pre-petition value | 348,457 | 365,349 | 358,800 | 296,268 | 450,523 | 368,769 |
| Period change | 107,286 | 16,892 | (6,549) | (62,532) | 154,255 | (81,754) |

Exhibit A

**Rancher's Legacy Meat Co.**
**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 12 4/17/20 | Week 13 4/24/20 | Week 14 5/1/20 | Week 15 5/8/20 | Week 16 5/15/20 | Week 17 5/22/20 |
|---|---|---|---|---|---|---|
| A/R receipts | $ 874,090 | $ 874,090 | $ 874,090 | $ 874,090 | $ 874,090 | $ 988,990 |
| Cash Sales | - | - | - | - | - | - |
| DIP LOC | - | 95,294 | - | - | 271,081 | 3,229 |
| **Total cash receipts** | **$ 874,090** | **$ 969,383** | **$ 874,090** | **$ 874,090** | **$ 1,145,171** | **$ 992,219** |
| | | | | | | |
| **Operating Cash Disbursements** | **4/17/20** | **4/24/20** | **5/1/20** | **5/8/20** | **5/15/20** | **5/22/20** |
| Payroll & Taxes (All employee categories) | $ - | $ 76,000 | $ - | $ - | $ 76,000 | $ 76,000 |
| Fee for Payroll Service | - | 750 | - | 750 | - | 750 |
| Payment to Company 401(K) & Flex Spending | 7,000 | 200 | 7,000 | 200 | 7,000 | 200 |
| Payments to Temporary Labor Agencies | 48,321 | 48,331 | 48,260 | 48,508 | 57,195 | 57,356 |
| Workmen Compensation Premium | - | - | - | - | 2,206 | - |
| Health/dental/life/disability for employees | - | - | - | 700 | 28,500 | - |
| Raw Ingredients - domestic | 578,003 | 582,934 | 570,494 | 573,932 | 674,600 | 674,510 |
| Raw Ingredients - import | - | 104,000 | - | - | 104,000 | - |
| Premium Payments to Critical Vendors | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Packaging Supplies (boxes/film/etc) | 25,441 | 25,539 | 25,968 | 25,229 | 29,535 | 29,346 |
| QA and production supplies | 2,532 | 2,551 | 2,699 | 2,542 | 2,940 | 2,888 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Outside manufacturing services | - | - | - | - | - | - |
| Shipping/Freight | 30,001 | 29,341 | 30,233 | 29,457 | 34,485 | 34,334 |
| Building/equipment repair | 1,734 | 1,725 | 1,733 | 1,729 | 1,742 | 1,742 |
| Equipment lease | - | 700 | - | - | 2,075 | - |
| Building lease | 12,716 | - | - | - | 12,716 | - |
| Real estate taxes | - | - | - | - | 49,000 | - |
| Refrigerated van repair/gas | 500 | - | - | - | 500 | - |
| Coats/gloves/hairnets for Production Workers | 1,393 | 1,397 | 1,399 | 1,400 | 1,399 | 1,396 |
| Insurance | - | 10,532 | - | - | - | 10,532 |
| Utilities, including internet services | - | 20,000 | 1,500 | - | - | 20,000 |
| Garbage removal services | - | - | 2,283 | - | - | - |
| Advertising | - | - | - | - | - | - |
| Marketing Allowances | 32,770 | 31,734 | 32,080 | 31,641 | 37,139 | 36,626 |
| Food Show Costs | 2,500 | - | - | - | 2,500 | - |
| Professional fees - tax return prep | - | - | - | - | - | - |
| Professional fees - Legal (internal) | 250 | - | - | - | 250 | - |
| Professional fees - IT | - | - | 3,991 | - | - | - |
| Sales Commissions | - | 18,000 | - | - | - | 18,000 |
| Office expense | 300 | 300 | 300 | 300 | 300 | 300 |
| Bank fees | - | 1,533 | - | - | - | 1,533 |
| Office Cleaning Costs (outside service) | 538 | 538 | 538 | 538 | 538 | 538 |
| Employee expense/reimbursement | 3,500 | - | 3,500 | - | 3,500 | - |
| State Income Taxes/Fees | 2,450 | - | - | - | - | - |
| Legal - Foley | 32,250 | - | - | - | 32,250 | - |
| Legal - Creditor Committee | 15,000 | - | - | - | 15,000 | - |
| Platinum Group | 32,250 | - | - | - | 32,250 | - |
| Other production costs | - | - | 500 | - | 250 | - |
| USDA Fees/SQF Annual Audit Fees | 3,528 | - | - | - | - | 3,528 |
| Product samples | 567 | 578 | 587 | 594 | 600 | 601 |
| Installation of upgraded IT Equipment | - | - | - | - | - | 5,000 |
| Payment of US Trustee Fees | - | - | 97,280 | - | - | - |
| Professional appraisal fees | - | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | 18,825 | - | - | - | - | - |
| DIP LOC closing fees | - | - | - | - | - | - |
| DIP LOC interest | 1,804 | - | 1,525 | - | - | 4,337 |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total operating disbursements** | **$ 866,873** | **$ 969,383** | **$ 844,569** | **$ 806,220** | **$ 1,145,171** | **$ 992,219** |
| **Cash available after operating activities** | **$ 7,216** | **$ -** | **$ 29,520** | **$ 67,869** | **$ -** | **$ -** |
| | | | | | | |
| **Financing Cash flow - DIP LOC** | **4/17/20** | **4/24/20** | **5/1/20** | **5/8/20** | **5/15/20** | **5/22/20** |
| Beginning period balance | $ 407,111 | $ 399,895 | $ 495,189 | $ 465,669 | $ 397,799 | $ 668,880 |
| Additions/Draws | - | 95,294 | - | - | 271,081 | 3,229 |
| Principal reductions/Pay-down | (7,216) | - | (29,520) | (67,869) | - | - |
| Other | - | - | - | - | - | - |
| **Ending period balance** | **$ 399,895** | **$ 495,189** | **$ 465,669** | **$ 397,799** | **$ 668,880** | **$ 672,110** |
| **Change in financing cash flow** | **$ (7,216)** | **$ 95,294** | **$ (29,520)** | **$ (67,869)** | **$ 271,081** | **$ 3,229** |
| | | | | | | |
| **Cash available after operating, investing and fi** | **$ -** | **$ 95,294** | **$ -** | **$ -** | **$ 271,081** | **$ 3,229** |
| | | | | | | |
| **Summary Cash Flow** | **4/17/20** | **4/24/20** | **5/1/20** | **5/8/20** | **5/15/20** | **5/22/20** |
| Beginning period cash | $ - | $ - | $ - | $ - | $ - | $ - |
| Cash receipts | 874,090 | 874,090 | 874,090 | 874,090 | 874,090 | 988,990 |
| Operating disbursements | (866,873) | (969,383) | (844,569) | (806,220) | (1,145,171) | (992,219) |
| Investing cash flow activity | - | - | - | - | - | - |
| Financing cash flow activity | (7,216) | 95,294 | (29,520) | (67,869) | 271,081 | 3,229 |
| Other | - | - | - | - | - | - |
| Ending period cash | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | |
| **Rolling A/R** | **4/17/20** | **4/24/20** | **5/1/20** | **5/8/20** | **5/15/20** | **5/22/20** |
| Beginning A/R balance | $ 2,207,476 | $ 2,207,476 | $ 2,207,476 | $ 2,207,476 | $ 2,322,376 | $ 2,437,277 |
| Sales for period | 874,090 | 874,090 | 874,090 | 988,990 | 988,990 | 988,990 |
| A/R receipts | (874,090) | (874,090) | (874,090) | (874,090) | (874,090) | (988,990) |
| Sales Not Previously Reported for W/E 09.21.19 ( | - | - | - | - | - | - |
| | | | | | | |
| Ending A/R balance | $ 2,207,476 | $ 2,207,476 | $ 2,207,476 | $ 2,322,376 | $ 2,437,277 | $ 2,437,277 |
| | | | | | | |
| **Estate Value** | **4/17/20** | **4/24/20** | **5/1/20** | **5/8/20** | **5/15/20** | **5/22/20** |
| Pre-petition cash balance | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| Total pre-petition estate value | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 |
| | | | | | | |
| Post petition cash | $ - | $ - | $ - | $ - | $ - | $ - |
| Post petition A/R | 2,207,476.3 | 2,207,476.3 | 2,207,476.3 | 2,322,376.5 | 2,437,276.7 | 2,437,276.7 |
| Post petition debt | (399,895.2) | (495,189.0) | (465,668.7) | (397,799.3) | (668,880.4) | (672,109.8) |
| Post petition Estate Value | $ 1,807,581 | $ 1,712,287 | $ 1,741,808 | $ 1,924,577 | $ 1,768,396 | $ 1,765,167 |
| | | | | | | |
| Change in estate value from pre-petition value | 375,985 | 280,691 | 310,212 | 492,981 | 336,800 | 333,571 |
| Period change | $ 7,216 | $ (95,294) | $ 29,520 | 182,770 | $ (156,181) | $ (3,229) |

**Exhibit A**

**13 Week Cash Flow**
**last updated 1/10/2020**

| Receipts | Week 18 5/29/20 | Week 19 6/5/20 | Week 20 6/12/20 | Week 21 6/19/20 | Week 22 6/26/20 |
|---|---|---|---|---|---|
| A/R receipts | 988,990 | 988,990 | 988,990 | 1,004,164 | 1,004,164 |
| Cash Sales | - | - | - | - | - |
| DIP LOC | - | - | 34,581 | 38,048 | 8,974 |
| **Total cash receipts** | **988,990** | **988,990** | **1,023,570** | **1,042,212** | **1,013,137** |

| Operating Cash Disbursements | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | - | 76,000 | - | 76,000 | - |
| Fee for Payroll Service | - | 750 | - | 750 | - |
| Payment to Company 401(K) & Flex Spending | 7,000 | 200 | 7,000 | 200 | 7,000 |
| Payments to Temporary Labor Agencies | 57,448 | 57,491 | 58,231 | 58,271 | 58,185 |
| Workmen Compensation Premium | - | - | 2,206 | - | - |
| Health/dental/life/disability for employees | - | 700 | 28,500 | - | - |
| Raw Ingredients - domestic | 674,268 | 674,823 | 684,041 | 684,372 | 684,540 |
| Raw Ingredients - import | 104,000 | - | 104,000 | - | 104,000 |
| Premium Payments to Critical Vendors | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Packaging Supplies (boxes/film/etc) | 28,924 | 28,825 | 29,069 | 29,086 | 29,142 |
| QA and production supplies | 2,835 | 2,861 | 2,925 | 2,943 | 2,954 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| Outside manufacturing services | - | - | - | - | - |
| Shipping/Freight | 34,209 | 34,410 | 35,040 | 35,183 | 35,272 |
| Building/equipment repair | 1,757 | 1,770 | 1,772 | 1,760 | 1,751 |
| Equipment lease | 700 | - | 2,075 | - | - |
| Building lease | - | - | 12,716 | - | - |
| Real estate taxes | - | - | - | - | - |
| Refrigerated van repair/gas | - | - | - | 500 | - |
| Coats/gloves/hairnets for Production Workers | 1,395 | 1,395 | 1,396 | 1,397 | 1,397 |
| Insurance | - | - | - | - | 10,532 |
| Utilities, including internet services | 1,500 | - | - | 20,000 | - |
| Garbage removal services | - | 2,283 | - | - | - |
| Advertising | - | - | - | - | - |
| Marketing Allowances | 36,101 | 36,341 | 36,973 | 37,072 | 37,068 |
| Food Show Costs | - | - | - | - | - |
| Professional fees - tax return prep | - | - | - | - | - |
| Professional fees - Legal (internal) | - | - | - | 250 | - |
| Professional fees - IT | - | 3,991 | - | - | - |
| Sales Commissions | - | - | - | - | 18,000 |
| Office expense | 300 | 300 | 300 | 300 | 300 |
| Bank fees | - | - | - | - | 1,533 |
| Office Cleaning Costs (outside service) | 538 | 538 | 538 | 538 | 538 |
| Employee expense/reimbursement | 3,500 | - | 3,500 | - | 3,500 |
| State Income Taxes/Fees | - | - | - | - | - |
| Legal - Foley | - | - | - | 32,250 | - |
| Legal - Creditor Committee | - | - | - | 15,000 | - |
| Platinum Group | - | - | - | 32,250 | - |
| Other production costs | - | 500 | - | 250 | - |
| USDA Fees/SQF Annual Audit Fees | - | - | - | - | 3,528 |
| Product samples | 598 | 591 | 587 | 586 | 589 |
| Installation of upgraded IT Equipment | - | - | - | - | - |
| Payment of US Trustee Fees | - | - | - | - | - |
| Professional appraisal fees | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | - | - | - | - | - |
| DIP LOC closing fees | - | - | - | - | - |
| DIP LOC interest | 52 | - | - | 553 | 609 |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total operating disbursements** | **967,825** | **936,469** | **1,023,570** | **1,042,212** | **1,013,137** |
| **Cash available after operating activities** | **21,165** | **52,521** | **-** | **-** | **-** |

| Financing Cash flow - DIP LOC | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Beginning period balance | 672,110 | 650,945 | 598,425 | 633,005 | 671,053 |
| Additions/Draws | - | - | 34,581 | 38,048 | 8,974 |
| Principal reductions/Pay-down | (21,165) | (52,521) | - | - | - |
| Other | - | - | - | - | - |
| **Ending period balance** | **650,945** | **598,425** | **633,005** | **671,053** | **680,027** |
| **Change in financing cash flow** | **(21,165)** | **(52,521)** | **34,581** | **38,048** | **8,974** |
| **Cash available after operating, investing and fi** | **-** | **-** | **34,581** | **38,048** | **8,974** |

| Summary Cash Flow | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Beginning period cash | - | - | - | - | - |
| Cash receipts | 988,990 | 988,990 | 988,990 | 1,004,164 | 1,004,164 |
| Operating disbursements | (967,825) | (936,469) | (1,023,570) | (1,042,212) | (1,013,137) |
| Investing cash flow activity | | | | | |
| Financing cash flow activity | (21,165) | (52,521) | 34,581 | 38,048 | 8,974 |
| Other | - | - | - | - | - |
| Ending period cash | - | - | - | - | - |

| Rolling A/R | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Beginning A/R balance | 2,437,277 | 2,437,277 | 2,452,451 | 2,467,624 | 2,467,624 |
| Sales for period | 988,990 | 1,004,164 | 1,004,164 | 1,004,164 | 1,004,164 |
| A/R receipts | (988,990) | (988,990) | (988,990) | (1,004,164) | (1,004,164) |
| Sales Not Previously Reported for W/E 09.21.19 ( | - | - | - | - | - |
| **Ending A/R balance** | **2,437,277** | **2,452,451** | **2,467,624** | **2,467,624** | **2,467,624** |

| Estate Value | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/26/20 |
|---|---|---|---|---|---|
| Pre-petition cash balance | 158,488 | 158,488 | 158,488 | 158,488 | 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| **Total pre-petition estate value** | **1,431,596** | **1,431,596** | **1,431,596** | **1,431,596** | **1,431,596** |
| Post petition cash | - | - | - | - | - |
| Post petition A/R | 2,437,276.7 | 2,452,450.5 | 2,467,624.4 | 2,467,624.4 | 2,467,624.4 |
| Post petition debt | (650,945.2) | (598,424.7) | (633,005.3) | (671,053.3) | (680,026.8) |
| **Post petition Estate Value** | **1,786,331** | **1,854,026** | **1,834,619** | **1,796,571** | **1,787,598** |
| Change in estate value from pre-petition value | 354,735 | 422,430 | 403,023 | 364,975 | 356,002 |
| Period change | 21,165 | 67,694 | (19,407) | (38,048) | (8,974) |

Exhibit A

**13 Week Cash Flow**
last updated 1/10/2020

| Receipts | Week 23 7/3/20 | Week 24 7/10/20 | Week 25 7/17/20 | Week 26 7/24/20 | Totals 1/31 - 7/24 |
|---|---|---|---|---|---|
| A/R receipts | $ 1,004,164 | $ 1,004,164 | $ 1,011,315 | $ 1,011,315 | $ 22,574,244 |
| Cash Sales | - | - | - | - | - |
| DIP LOC | - | - | 122,579 | - | 1,127,109 |
| Total cash receipts | $ 1,004,164 | $ 1,004,164 | $ 1,133,894 | $ 1,011,315 | 23,701,353 |

| Operating Cash Disbursements | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Payroll & Taxes (All employee categories) | $ 76,000 | $ - | $ 76,000 | $ - | $ 988,000 |
| Fee for Payroll Service | 750 | - | 750 | - | 9,750 |
| Payment to Company 401(K) & Flex Spending | 200 | 7,000 | 200 | 7,000 | 93,600 |
| Payments to Temporary Labor Agencies | 58,095 | 58,291 | 58,332 | 58,365 | 1,302,778 |
| Workmen Compensation Premium | - | 2,206 | - | - | 13,236 |
| Health/dental/life/disability for employees | 700 | 28,500 | - | - | 175,200 |
| Raw Ingredients - domestic | 684,503 | 688,857 | 689,058 | 689,138 | 15,378,762 |
| Raw Ingredients - import | - | - | 104,000 | - | 1,144,000 |
| Premium Payments to Critical Vendors | 3,500 | 3,500 | 3,500 | 3,500 | 143,500 |
| Packaging Supplies (boxes/film/etc) | 29,204 | 29,505 | 29,657 | 29,779 | 658,699 |
| QA and production supplies | 2,955 | 2,987 | 2,994 | 2,992 | 65,434 |
| Plant Cleaning Costs (outside service) | 7,200 | 7,200 | 7,200 | 7,200 | 187,200 |
| Outside manufacturing services | - | - | - | - | - |
| Shipping/Freight | 35,300 | 35,553 | 35,523 | 35,490 | 784,958 |
| Building/equipment repair | 1,747 | 1,748 | 1,750 | 1,752 | 45,281 |
| Equipment lease | 700 | 2,075 | - | - | 15,950 |
| Building lease | - | 12,716 | - | - | 76,298 |
| Real estate taxes | - | - | - | - | 49,000 |
| Refrigerated van repair/gas | - | - | 500 | - | 3,000 |
| Coats/gloves/hairnets for Production Workers | 1,397 | 1,397 | 1,397 | 1,396 | 36,201 |
| Insurance | - | - | - | 10,532 | 63,192 |
| Utilities, including internet services | 1,500 | - | - | 20,000 | 129,000 |
| Garbage removal services | 2,283 | - | - | - | 13,695 |
| Advertising | - | - | - | - | - |
| Marketing Allowances | 37,128 | 37,392 | 37,403 | 37,467 | 827,982 |
| Food Show Costs | - | - | - | - | 7,500 |
| Professional fees - tax return prep | - | - | - | - | 2,000 |
| Professional fees - Legal (internal) | - | - | 250 | - | 1,500 |
| Professional fees - IT | 3,991 | - | - | - | 23,946 |
| Sales Commissions | - | - | - | 18,000 | 108,000 |
| Office expense | 300 | 300 | 300 | 300 | 7,800 |
| Bank fees | - | - | - | 1,533 | 9,201 |
| Office Cleaning Costs (outside service) | 538 | 538 | 538 | 538 | 13,997 |
| Employee expense/reimbursement | - | 3,500 | - | 3,500 | 45,500 |
| State Income Taxes/Fees | - | - | 2,450 | - | 4,900 |
| Legal - Foley | - | - | 32,250 | - | 193,500 |
| Legal - Creditor Committee | - | - | 15,000 | - | 125,000 |
| Platinum Group | - | - | 32,250 | - | 248,518 |
| Other production costs | - | 500 | - | 250 | 4,000 |
| USDA Fees/SQF Annual Audit Fees | - | - | - | - | 17,638 |
| Product samples | 591 | 592 | 593 | 593 | 14,968 |
| Installation of upgraded IT Equipment | - | - | - | - | 12,900 |
| Payment of US Trustee Fees | - | - | - | - | 181,842 |
| Professional appraisal fees | - | - | - | - | - |
| Debt service on Ochsner Equipment Note | - | - | - | - | 56,475 |
| DIP LOC closing fees | - | - | - | - | 35,000 |
| DIP LOC interest | 144 | - | - | 1,961 | 18,034 |
| Misc. | 2,000 | 2,000 | 2,000 | 2,000 | 52,000 |
| Total operating disbursements | $ 950,725 | $ 926,358 | $ 1,133,894 | $ 933,286 | $ 23,388,935 |
| Cash available after operating activities | $ 53,439 | $ 77,806 | $ - | $ 78,029 | $ 312,418 |

| Financing Cash flow - DIP LOC | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Beginning period balance | $ 680,027 | $ 626,588 | $ 548,782 | $ 671,361 | $ - |
| Additions/Draws | - | - | 122,579 | - | 1,127,109 |
| Principal reductions/Pay-down | (53,439) | (77,806) | - | (78,029) | (533,777) |
| Other | - | - | - | - | - |
| Ending period balance | $ 626,588 | $ 548,782 | $ 671,361 | $ 593,332 | $ 593,332 |
| Change in financing cash flow | $ (53,439) | $ (77,806) | $ 122,579 | $ (78,029) | $ 593,332 |

| Cash available after operating, investing and fi | $ - | $ - | $ 122,579 | $ - | $ 905,749 |

| Summary Cash Flow | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Beginning period cash | $ - | $ - | $ - | $ - | $ 221,360 |
| Cash receipts | 1,004,164 | 1,004,164 | 1,011,315 | 1,011,315 | 22,574,244 |
| Operating disbursements | (950,725) | (926,358) | (1,133,894) | (933,286) | (23,388,935) |
| Investing cash flow activity | - | - | - | - | - |
| Financing cash flow activity | (53,439) | (77,806) | 122,579 | (78,029) | 593,332 |
| Other | - | - | - | - | - |
| Ending period cash | $ - | $ - | $ - | $ - | $ 0 |

| Rolling A/R | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Beginning A/R balance | $ 2,467,624 | $ 2,474,776 | $ 2,481,927 | $ 2,481,927 | $ 1,759,297 |
| Sales for period | 1,011,315 | 1,011,315 | 1,011,315 | 1,011,315 | 23,296,874 |
| A/R receipts | (1,004,164) | (1,004,164) | (1,011,315) | (1,011,315) | (22,574,244) |
| Sales Not Previously Reported for W/E 09.21.19 ( | - | - | - | - | - |
| Ending A/R balance | $ 2,474,776 | $ 2,481,927 | $ 2,481,927 | $ 2,481,927 | $ 2,481,927 |

| Estate Value | 7/3/20 | 7/10/20 | 7/17/20 | 7/24/20 | 1/31 - 7/24 |
|---|---|---|---|---|---|
| Pre-petition cash balance | $ 158,488 | $ 158,488 | $ 158,488 | $ 158,488 | $ 158,488 |
| Pre-petition A/R balance | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 | 1,273,108 |
| Total pre-petition estate value | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 | $ 1,431,596 |
| Post petition cash | $ - | $ - | $ - | $ - | $ 0 |
| Post petition A/R | 2,474,775.7 | 2,481,927.1 | 2,481,927.1 | 2,481,927.1 | 2,481,927.1 |
| Post petition debt | (626,588.3) | (548,782.1) | (671,360.9) | (593,331.7) | (593,331.7) |
| Post petition Estate Value | $ 1,848,187 | $ 1,933,145 | $ 1,810,566 | $ 1,888,595 | $ 1,888,595 |
| Change in estate value from pre-petition value | $ 416,591 | $ 501,549 | $ 378,970 | $ 456,999 | $ 456,999 |
| Period change | $ 60,590 | $ 84,958 | $ (122,579) | $ 78,029 | $ 456,999 |

**Exhibit A**

**DRAFT**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re | Case No. 19-32982 (MER)

Rancher's Legacy Meat Co.**,**

Debtors

---

## CONFIDENTIALITY STIPULATION

---

This confidentiality stipulation (the "**Stipulation**") is entered into by and among (a) the debtor and debtor in possession (the "Debtor") in the above-captioned bankruptcy case (the "Case"), (b) James Ratcliff ("Ratcliff"), (c) the undersigned professionals (the "Ratcliff Professionals"), and (d) such other entities that shall become signatories to the Stipulation by executing the Additional Party Addendum in the form attached as Exhibit A hereto (collectively, the "Parties," and, individually, each a "Party").

WHEREAS on September 20, 2019, the Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS Ratcliff has requested and may from time to time in the future request information from the Debtor and its professionals (collectively the "Producing Parties" and, individually, each a "Producing Party") to assist Ratcliff in connection with the Case; and

WHEREAS the Parties have entered into this Confidentiality Stipulation (the "Stipulation**"**) and have agreed to be bound by its terms.

IT IS HEREBY STIPULATED AND AGREED THAT:

1.      This Stipulation shall apply to all (a) communications, information, documents

**Exhibit B**

and matters of whatever nature and kind received from one or more of the Producing Parties or their respective representatives or advisors, whether in writing, or orally or in any other format, including, without limitation, information concerning the operations, financial conditions, plans, projections or results of operations of one or more of the Producing Parties or their affiliates (collectively, with all summaries thereof or information derived therefrom, "Material").

2.      A Party may designate Material as "Confidential Material" by applying the legend "Confidential" on each page of the Material and, in the case of an electronic document produced in native format (such as, for example, an Excel spreadsheet), by applying the appropriate legend to a slip sheet corresponding to the native document and/or by otherwise indicating at the time of production of the Material (whether in writing or orally) that such Material is Confidential Material. Failure to designate Material as Confidential Material at the time of production does not constitute a waiver of such designation. Such failure may be remedied by supplemental written notice and, upon receiving such written notice, the receiving Party shall thereafter treat the designated Material as Confidential Material in accordance with the terms of this Stipulation.

3.      The Material provided by the Producing Parties shall be used solely in connection with the prosecution of this Case To the extent that Confidential Material is discussed at the depositions of any Party to this Stipulation, including the depositions of those who become Parties by executing an Additional Party Addendum, the transcripts of such depositions shall be treated as Confidential Material. If any Party (other than the Producing Party with respect to the applicable Confidential Material) intends to submit any Confidential Material with any filings or other submissions to a court, such Party shall seek an order from such court providing that such Confidential Material shall be filed or maintained under seal and the Confidential Material may only be filed on the public docket or utilized in court proceedings to the extent that a court of

- 2 -

Exhibit B

competent jurisdiction determines by a final and nonappealable order that such Confidential

Material should not or need not be filed or utilized under seal.

4.      The Producing Parties shall have the right to designate Confidential Material as

"for professionals' eyes only", and any such Confidential Material may be inspected and

reviewed by the Ratcliff Professionals. Such designation shall be accomplished by clearly

labeling such documents with a watermark or other legend "Professionals' Eyes Only" and/or by

otherwise indicating at the time of production of the Material (whether in writing or orally) that

such Confidential Material is "Professionals' Eyes Only". With respect to any information

designated by a Producing Party as "Professionals' Eyes Only", in the event that the Ratcliff

Professionals believe that such designation is inappropriate, the Producing Party will work

promptly and in good faith with the Ratcliff Professionals to resolve such issue. The Committee

and the Ratcliff Professionals acknowledge that, notwithstanding anything to the contrary

contained herein, such information may only be disclosed to the Ratcliff Professionals and may

not be shared with any Committee Member or otherwise disclosed, unless the Producing Party

that designated the materials as "Professionals' Eyes Only" expressly consents to such disclosure

or a court of competent jurisdictions orders disclosure pursuant to a final and nonappealable

order.

5.      The Parties agree that production of Material that is an attorney-client privileged

communication, or work product as defined under Federal Rule of Bankruptcy Procedure

7026(b)(3)(B) or under applicable law, shall not be deemed to be a waiver of the attorney-client

privilege, work product doctrine or other applicable privilege or protection. In the event that a

Party inadvertently produces any Materials that it determines, in its sole discretion, are privileged

or otherwise immune from discovery, in whole or in part, in accordance with the attorney-client

Exhibit B

privilege, the work product doctrine, or any other applicable privilege or protection from disclosure, such Materials ("Protected Information") may be retrieved by the producing Party by giving written notice to the receiving Party. Upon receipt of notice that a Party intends to retrieve the Protected Information, the receiving Party and any other persons who have received a copy of the inadvertently produced Protected Information shall promptly return all copies of that Protected Information to the producing Party or destroy all copies thereof held by the receiving Party pursuant to the procedures in paragraph 9 of this Stipulation. Neither the receiving Party nor any other person or Party shall use any inadvertently produced Protected Information, or information gleaned from any inadvertently produced Protected Information.

6.    All Confidential Material shall be held in strict confidence by each Party, except as set forth in paragraph 8 of this Stipulation or as otherwise agreed in writing by the Producing Party, and shall not be given, shown, made available or communicated in any way to anyone except Ratcliff may share Confidential Material with his counsel of record, and attorneys, clerical, paralegal and other staff employed by such counsel, including any outside vendor providing litigation support or photocopying services, in each case, solely for the purpose of prosecuting this Case and Ratcliff and the Ratcliff Professional shall be responsible for holding executed Acknowledgements, and contemporaneously upon receipt, emailing a PDF copy of each Acknowledgement to counsel for the Producing Parties.

7.    If any Party objects to the designation or treatment of any Confidential Material, the Party shall so state in writing to counsel for the Producing Party. The Party and counsel for the Producing Party shall promptly confer, in good faith, to resolve any dispute concerning the designation and treatment of the Confidential Material. In the event that the Parties are unable to resolve any dispute concerning the designation or treatment of the Confidential Material, the

- 4 -

**Exhibit B**

Party shall file an application with the court having jurisdiction over the Cases (the "Bankruptcy Court"), in camera, challenging the designation or treatment of the Confidential Material. The Producing Party shall have five (5) business days either to remove the designation and/or agree to the Party's proposed treatment or to file an opposition to the Party's application. Pending determination of such application by the Bankruptcy Court pursuant to a final and nonappealable order, the challenged Confidential Material shall continue to be treated in accordance with its original designation by the Producing Party.

8.      In the event that a Party is requested or required by any person or entity (by law, court order, government action, judicial process, subpoena, or regulatory proceeding) to provide or produce Confidential Material received from a Producing Party, and such Party reasonably determines, in consultation with counsel, that the Confidential Material must be disclosed, the Party shall, unless prohibited from doing so by applicable law, give the Producing Party and their counsel prompt written notice before any Confidential Material is produced, and as soon as practicable under the circumstances, so that the Producing Party has an opportunity to object to production, and shall produce only that portion of the Confidential Material required to be provided or produced.

9.      Ratcliff and his representatives shall continue to be bound until termination of this Stipulation as set forth in paragraph 20 and all Confidential Material, including all copies, summaries and excerpts thereof, shall be returned to the applicable Producing Party or destroyed in a commercially reasonably manner. If the Confidential Material is destroyed, counsel for the Party who received such Confidential Material shall, upon request of a Producing Party, certify in writing to the Producing Party that all such Confidential Material within its possession or control has been destroyed. Confidential Material that has been received electronically and that

- 5 -

**Exhibit B**

cannot be returned or destroyed must be electronically deleted from "trash" files, and the receiving Party must take reasonable measures to ensure that unauthorized persons do not have access to Confidential Material present on the receiving Party's computer, server, or any backup media. Nothing in this paragraph shall be construed to require a Party to erase or return electronically stored Confidential Material to the extent they have been saved to a back-up file in accordance with the Party's ordinary electronic back-up practices, provided that any such Confidential Material shall remain designated as such and fully subject to the protections of this Stipulation. Counsel for a receiving Party is not required to return or destroy Confidential Material that is contained in or form an integral part of attorney work product, provided that such Confidential Material is treated confidentially in accordance with the terms of this Stipulation.

10.     This Stipulation shall not apply to any document, testimony or other information that (a) is already in the possession of a receiving Party at the time it is produced and is not subject to or governed by any other confidentiality agreement or restrictions, (b) becomes generally available to the public other than as a result of disclosure in violation of this Stipulation or in breach of other legal obligation, or (c) becomes available to a receiving Party by a means other than service on or in connection with the Case through voluntary or required production from a source that the Party reasonably believed was not prohibited from disclosing such information publicly.

11.     The Parties acknowledge that they are aware that the use of Confidential Material for any purpose inconsistent with the terms contained herein.

12.     Notwithstanding any provision contained herein, and provided that no other Party's Confidential Material is disclosed, nothing in this Stipulation shall restrict in any way the right of any Party to make use of its own Confidential Material in any way it deems fit, or affect

- 6 -

**Exhibit B**

the terms of any stipulations and order regarding confidentiality any Party has entered into with other parties.

13.     This Stipulation shall be deemed effective as to each Party, its attorneys, agents and representatives, upon execution by such Party and the Debtors. When effective, this Stipulation applies to any Confidential Material provided prior to its execution, including without limitation Confidential Material provided under the Prior Stipulation.

14.     The Parties agree money damages alone would not be sufficient for any breach or threatened breach of this Stipulation and the Producing Parties and the Committee shall be entitled to specific performance and injunctive or other equitable relief.

15.     This Stipulation shall remain binding until after all Confidential Material is returned to the Producing Parties or destroyed pursuant to the procedures set forth in paragraph.

16.     This Stipulation shall be without prejudice to and does not impair the ability or rights of any Party to seek further limits on disclosure or protections for the confidentiality of any Confidential Material in addition to the limits and protections provided herein.

17.     The terms and limitations of this Stipulation shall not be modified or deviated from except upon written stipulation by counsel for the Parties, or by order of the Bankruptcy Court after notice to the Parties and opportunity to be heard.

18.     This Stipulation shall be governed by and construed in accordance with the laws of the State of Minnesota.

19.     This Stipulation may be executed in any number of counterparts and shall constitute one agreement binding upon all Parties thereto as if all Parties signed the same document.  Facsimile signatures shall be treated as originals for all purposes.

20.     All obligations of the Parties shall terminate and be of no further force and effect

**Exhibit B**

on the date that is the earliest of one year following: (a) the effective date of a chapter 11 plan,

(b) the dismissal of the Cases and (c) the conversion of the Cases to cases under chapter 7 of the

Bankruptcy Code, provided that the provisions of Section 16 shall survive such termination.

**JAMES RATCLIFF**


By: _____
          Indvidually\

**SAPIENTIA LAW GROUP PLLC**


By _____

120 South 6th Street, Suite 100
Minneapolis, MN 55402

Attorneys for Ratcliff

**Exhibit B**

## ADDITIONAL PARTY ADDENDUM

The undersigned hereby executes and becomes an additional party to that certain confidentiality stipulation (the "Stipulation") by and among (a) the Debtor, (b) James Ratcliff, (c) the Ratcliff Professionals and (f) such other entities that have or shall become signatories to the Stipulation by executing an Additional Party Addendum, in the action entitled In re Rancher's Legacy Meat Co., Case No. 19-32982 (MER). Capitalized terms used and not otherwise defined herein shall have the meaning set forth in the Stipulation. The undersigned hereby agrees to be bound by all of the terms of the Stipulation and shall hereafter be deemed to be a Party for all purposes under the Stipulation.

STIPULATED AND AGREED:

Dated: _____, 2019

By:_____

**Exhibit B**