UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

----------------------------------------------------------------------------------------------------------

In re:                                                    Chapter 11

Rancher's Legacy Meat Co.,                    Case No.: 19-32928 MER

Debtor.

----------------------------------------------------------------------------------------------------------

NOTICE OF MOTION AND MOTION
FOR ADEQUATE PROTECTION, OR IN THE ALTERNATIVE,
RELIEF FROM THE AUTOMATIC STAY

TO:    Rancher's Legacy Meat Co. ("Debtor") and other entities specified in the Local

Rule 9013-3.

James L. Ratcliff ("Ratcliff") moves the Court for the relief requested below and gives

notice of hearing with this Motion for Adequate Protection, or in the alternative, Relief from the

Automatic Stay. ("Motion").

1.    NOTICE OF HEARING

The Court will hold a hearing on this Motion on Wednesday, February 5, 2020 at 10 a.m.

before The Honorable Michael E. Ridgway, Chief Judge of the United States Bankruptcy Court,

in Courtroom 7 West, Diana E. Murphy Federal Courthouse, 300 S. 4th St., Minneapolis MN

55415.

Any response to this Motion must be filed and served by delivery not later than January

31, 2020, which is five (5) days before the time set for the hearing.

1

UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED THE COURT

MAY GRANT THE MOTION WITHOUT A HEARING.

2.    MOTION

This Court has jurisdiction over this Motion pursuant to 28 U.S.C, §§ 157 and 1334, Fed.

R. Bankr. P. 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.

On September 20, 2019, the Debtor commenced this bankruptcy case by filing a

voluntary petition in chapter 11 with the United States Bankruptcy Court, District of Minnesota

("Petition Date").  The Debtor's case is pending in this Court.

This Motion arises under 11 U.S.C. §§ 362(d)(2) and 363, Fed. R. Bankr. P. 4001 and

Local Rules 9013-1 through 9013-3.  This Motion is filed under Fed. R. Bankr. P. 9014 and

Local Rules 9006-1, 9013-1 through 9013-3, and 9017-1.

The Debtor's principal business is grinding ground beef, cutting steaks and the selling of

product to distributors and end-user customers.  Ratcliff was an original owner of the Debtor.

Ratcliff later sold his shares in the Debtor's business to a holding company. Part of the

transaction involved the new buyer assuming the obligations owed to Ratcliff.  Among those

obligations were two secured notes of $11,885,000 and $2,250,000 that are first secured debts of

the Debtor.  Debtor defaulted on the notes and Ratcliff sought collection starting in early 2019.

On the Petition Date, Ratcliff was in the process of obtaining summary judgment on the two

notes for judgment on the amounts due and for replevin of the assets. Debtor currently owes

Ratcliff nearly $18,000,000.00.

The Debtor is operating as a debtor in possession and continues to use, possess, and

dispose of the collateral of those notes without making payments to Ratcliff.  The value of the

collateral diminishes with each day.  Evidence provided by the Report of Robert Strachota of the

2

Shenehon Company affirms that the collateral secured by the original security agreement dated December 3, 2010 decreases at a rate of $14,300 per month.

Ratcliff seeks monthly protection payments pursuant to 11 U.S.C. §363 to protect Ratcliff from the depreciation of the collateral while in the Debtor's possession.

In the alternative, Ratcliff seeks an order from this Court allowing the lifting of the automatic stay in order to allow Ratcliff to pursue his state court remedies as to the collateral.

Ratcliff also requests that this Court enter an order prohibiting the Debtor's use and disposal of the collateral unless and until the Debtor provides Ratcliff with adequate protection pursuant to 11 U.S.C. § 363.

This Motion is based on all of the records, files, pleadings, and proceedings in this case, and upon all evidence received at the hearing in support of this Motion.  Pursuant to Local Rules 9013-2(c), Ratcliff hereby gives notice that it may call Neil Rustin, a former shareholder of Rancher's Legacy to provide testimony regarding the loan transactions between Debtor and Ratcliff and the current total outstanding indebtedness owed by the Debtor to Ratcliff and how those totals are calculated. Further, Ratcliff may call Robert Strachota to testify as to the identity and value of the collateral and the monthly depreciation of the collateral. Further, Ratcliff may call such other witnesses as are necessary to provide the Court with the evidence necessary to render a decision on his motion.

WHEREFORE, Ratcliff moves the Court for an order as follows:

1.      Granting Ratcliff monthly adequate protection payments in the amount of $14,300 for the collateral starting at the Petition Date and every month thereafter;

2.      In the alternative, granting Ratcliff relief from the automatic stay to allow Ratcliff to recover and sell the collateral as it sees fit;

3

3.   Waiving the ten-day stay of order pursuant to Rule 4001(a)(3); and

4.   Awarding such other relief as may be just and equitable.

Respectfully Submitted,

| Dated: January 16, 2020 | SAPIENTIA LAW GROUP PLLC |
|---|---|
| | /e/ Kenneth C. Edstrom<br>Kenneth C. Edstrom (#148696)<br>120 South 6th Street, Suite 100<br>Minneapolis, MN  55402<br>Telephone: (612) 756-7108<br>Fax: (612) 756-7101<br>kene@sapientialaw.com<br><br>Attorneys for James L. Ratcliff |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

-------------------------------------------------------------------------------------------------------

In re:                                              Chapter 11

Rancher's Legacy Meat Co.,                          Case No.: 19-32928 MER

Debtor.

-------------------------------------------------------------------------------------------------------

**JAMES L. RATCLIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR ADEQUATE PROTECTION, OR IN THE ALTERNATIVE RELIEF FROM THE
AUTOMATIC STAY**

James L. Ratcliff ("Ratcliff") submits this Memorandum of Fact and Law in support of

its Motion for Adequate Protection, or in the alternative, Relief from the Automatic Stay.

("Motion").

## I.     FACTUAL BACKGROUND

In 2010, Ratcliff and Joseph Unger started a company known as Unger Meat Company

("UMC"), the predecessor in interest to Debtor.

Ratcliff provided funds to the Debtor for purchase of equipment and for startup of

operations of UMC as evidenced by two promissory notes between Ratcliff and UMC, each

dated on December 3, 2010 ("The Startup Notes"). (Ex. A & B). The first of the two notes had

a principal amount of $11,885,000 at a 5% indexed interest rate and the second has a principal

amount of $2,250,000 at 5.5% indexed interest rate. (Id.).

1

A.      Startup Notes Security Agreement

Pursuant to a security agreement signed by UMC also on December 3, 2010, Ratcliff

obtained an attached security interest in virtually all of the Debtor's assets, including

> "…all of Debtor's equipment, including but not limited to the equipment described
> on Exhibit "1" hereto, inventory, lease agreement, accounts receivable, furniture
> and fixtures, whether now owned or hereafter acquired, together with all proceeds
> and products thereof and replacements thereof."  ("collateral").

In paragraph 3b, the security agreement provided as follows:

> "Debtor will execute and deliver to Secured Party such certificates and other
> documents or instruments as may be necessary to enable Secured Party to perfect
> the security interest created hereby including, *without limitation, such financing
> statements, certificates and other documents as may be necessary to perfect the
> security interest created hereby* in any collateral hereafter acquired by Debtor or in
> any replacement or proceeds of the collateral."

(Ex. C), emphasis added.

On December 29, 2010, Ratcliff perfected his interest in the equipment and filed a UCC-

1 financing statement with the State of Minnesota Secretary of State as a purchase money

security interest in all of the equipment purchased by the Debtor with the use of the funds

provided by Ratcliff in the December 3 Startup Notes (Minnesota Secretary of State Document

Number 201022606390-Ex. D).

On January 24, 2011, Ratcliff filed an amendment to the original UCC Filing Statement

further protecting his rights in all other assets of UMC (Minnesota Secretary of State Document

Number 20112290995-Ex. E).

2

B.       Sale of Debtor to SSJR, Name Change of Debtor

On June 22, 2012, Ratcliff and the other shareholder of UMC, Neil Rustin, entered into a

Stock Purchase Agreement ("Purchase Agreement") with SSJR, LLC ("SSJR"), Alyieo Hodings

of Minnesota, LLC ("Alyieo") and F.B. LLC ("FB").  Pursuant to the Purchase Agreement,

SSJR, Alyieo and FB purchased the stock and assumed the debt of UMC.  (Exhibit F).  The

purchasers had an option for 18 months to put the sale back to the sellers under certain

conditions. The purchasers did not exercise their option and the sale was finalized on January 22,

2014

On January 22, 2014, the parties to the original Purchase Agreement executed a Second

Amended Stock Purchase Agreement replacing the previous buying group with SSJR as the sole

purchaser of the shares of Ratcliff and Rustin (Exhibit G) and slightly modified the rates for the

Startup Notes.  In connection with the finalization of the sale to SSJR, SSJR renamed the Debtor

"Rancher's Legacy Meat Co." by amending its Articles of Incorporation and filing them with the

State of Minnesota Secretary of State on May 6, 2014.  (Secretary of State Filing No.

75959890002 Ex. H).

C.       Ratcliff's Continued UCC Filings

On November 12, 2015, Ratcliff filed a continuation statement with the debtor's name

listed as "Unger Meat Company".  (Secretary of State Document No. 854026600022 Ex. I).

On January 10, 2019, Ratcliff filed a UCC-3 amendment with the State of Minnesota

Secretary of State with the debtor listed as "Ranchers Legacy Meat Co."  (Minnesota Secretary

of State Document Number 106188100028 Ex. J).

D.      Intervening UCC Financing Statements and Terminations of Financing Statements

The following is a history of the financing statements, amendments and related documents filed with the Minnesota Secretary of State from December of 2019 until the Petition Date of September 21, 2019 related to either Unger Meat Co. or Rancher's Legacy Meat Co.

(The rest of this page is left intentionally blank)

| Name of Creditor/Entity | Document | Date | Recording No.* |
|---|---|---|---|
| Ratcliff | Financing Statement | December 29, 2010 | 201022606390 |
| Ratcliff | Amendment to Add collateral | January 24, 2011 | 20112290995 |
| UMC Equipment | Financing Statement | May 29, 2013 | 201332531117 |
| Unger Meats Co. | Name Change | May , 2014 | 7595980002* |
| UMC Equipment | Financing Statement | July 28, 2015 | 834683600053 |
| Ratcliff | Continuation Filing in name of Unger Meats | November 12, 2015 | 854026600022 |
| Upper Lakes Foods | Financing Statement | April 18, 2017 | 946517500058 |
| Nissan Motor Acceptance | Financing Statement - Purchase Money Security Interest | August 30, 2017 | 962989700323 |
| Upper Lakes Foods | Financing Statement | October 8, 2018 | 974464700113 |
| UMC Equipment | Financing Statement | June 12, 2018 | 1020425900075 |
| Ochsner Partnership | Financing Statement | September 14, 2018 | 10320941000165 |
| Ochsner Partnership | Financing Statement | October 9, 2018 | 1035403200039 |
| UMC Equipment | Financing Statement | October 11, 2018 | 1036292600043 |
| UMC Equipment | Restatement of collateral re Financing Statement 1036292600043 | October 11, 2018 | 1036538000061 |
| Ratcliff | Amendment to Financing Statement noting Name Change from Unger Meat Co. to Rancher's Legacy Meat Co. | January 10, 2019 | 1061988100028 |
| Upper Lakes Foods | Termination of Financing Statement 946517500058 | February 26, 2019 | 1071087300026 |
| Upper Lakes Foods | Termination of Financing Statement 974464700113 | February 26, 2019 | 1071081700028 |
| UMC Equipment | Termination of Financing Statement 201332531117 | March 25, 2019 | 1076697800071 |
| UMC Equipment | Termination of Financing Statement 1020425900075 | March 25, 2019 | 1076697800084 |
| UMC Equipment | Termination of Financing Statement 1036292600043 | March 25, 2019 | 1076697800097 |
| UMC Equipment | Termination of Financing Statement 834683600053 | March 25, 2019 | 1076697800071 |
| Upper Lakes Foods | Financing Statement | September 11, 2019 | 1100795500025 |

*All recording numbers are from the Secretary of State's UCC Division except the name change where the number is from the Secretary of State's Business Service Division.

The filings show that, following the service of the Complaint in the collection action brought against the Debtor by Ratcliff in January of 2019, for reasons unknown, UMC Equipment (which is owned by the Debtor's President, Arlyn Lomen) and Upper Lakes Foods (which is an insider of the Debtor) released all of their security interests in the Debtor's collateral. As to Nissan Motor Acceptance and Ochsner Partnership, Ratcliff agrees that the security interests maintained in the Debtor's assets by these creditors are senior and superior to that possessed by Ratcliff as both constituted purchase money security interests in the collateral secured thereby. As such, Ratcliff makes no claim to the following collateral:

> <u>Ochsner Partnership</u>
> Vemag FM250 Patty Former – Serial No. XXX-0574
> Repak RE 20-16- Serial No. XXX0525
> Vemag Robot HP-30E - Serial No. XXX-0582
> Vemag Paper Inter leaver Serial No. XXX7957
> Vemag Smart Loader 280 – Serial No. XXX0105
> Vemag Process Check – Serial No. XXX7555
>
> <u>NissanMotor Acceptance</u>
>
> Unicarriers Fork Lift TX35 3W Cushion AC- Serial No. XXX601

It is clear that Ratcliff has a first secured position in all other assets owned by the Debtor with the possible exception of intangible assets which have not been included in the depreciation and liquidation analysis done by the Shenehon Group, which has been hired by Ratcliff to assist the Court in making the determination of the proper allowance of adequate protection in this case, see Shenehon Company Appraisal – Ex. M.

Upper Lakes, an insider of the Debtor, terminated its security interest in Rancher's collateral in March of 2019, shortly after Ratcliff began a federal collection action against the Debtor. Thereafter, in a move coordinated with the filing of the Chapter 11 bankruptcy, Upper

6

Lakes Foods refiled that same security interest approximately nine days before the Debtor

commenced this reorganization proceeding.

     E.     Debtor's Default

Pursuant to Section 8 of the Startup Notes Security Agreement, "Debtor shall be in

default hereunder in the event Debtor fails to punctually and completely satisfy all of Debtor's

obligations to Secured Party embodied in any promissory note or otherwise or in the event of a

failure by Debtor to comply with any term, covenant or condition of this agreement." (Ex. C).

Debtor is in default for failure to make any payments under the terms of the Startup Notes since

October 11, 2016.

Ratcliff has filed a proof of claim in the amount of $17,896,449.95 for the principal,

interest, costs and attorney's fees owed under the Startup Notes as of the Petition Date. See

Proof of Claim No. 10, on file with the Clerk of Court.

Ratcliff requested payment of Adequate Protection Payments from Debtor's Counsel on

September 24, 2019 (Ex. L).

## II.     ARGUMENT

     A.     Ratcliff is Entitled to Adequate Protection of His Interests

An entity is entitled to adequate protection when it is stayed from enforcing its interest in

its property. As provided in 11 U.S.C. § 361, adequate protection may be provided by periodic

payments, additional or replacement liens, or the indubitable equivalent of the creditor's interest

in the property. The standards for adequate protection in the Eighth Circuit are set forth in *In re*

*Martin*, 761 F.2d 472 (8th Cir. 1985). Failure to adequately protect a lender's interest in the

property constitutes cause justifying relief from the automatic stay. *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988).

A creditor must seek adequate protection by filing a motion, often accompanied by a motion for relief from stay in the alternative. *See In re Smith*, 355 B.R. 519, 524 (Bankr. D. Md. 2006) ("Section 362(d)(1) provides that when requested by a party-in-interest and after notice and a hearing, the court shall grant relief from stay for cause including lack of adequate protection of an interest in property. But, this provision requires the creditor to file a *motion* for relief from stay.").

Even if a separate adversary proceeding is pending a court may still decide an adequate protection motion. *Cf., In re Pansier*, No. 18-22297-BEH, 2019 WL 949898, at *5 (Bankr. E.D. Wis. Feb. 25, 2019), amended on reconsideration in part, No. 18-22297-BEH, 2019 WL 1495100 (Bankr. E.D. Wis. Apr. 3, 2019), aff'd sub nom. *Pansier v. United States*, No. 19-C-537, 2019 WL 7288952 (E.D. Wis. Dec. 30, 2019) (Held: The United States' interest was not adequately protected although there were additional related adversary proceedings pending). *See also, In re Perasall* 441 B.R. 267 (Bankr. N.D. Ohio 2010). There the Court continued the Debtor's motion to redeem her car from the creditors lien until the adversary proceedings were determined. The court stated in the interim it would, "separately entertain a motion in [the] case for adequate protection" should the creditor choose to file one. *Id.* at 273.

In an adequate protection motion a court may determine various issues including whether a creditor has a valid security interest or properly perfected its security interest. *See In re S. Illinois Railcar Co.*, 301 B.R. 305 (Bankr. S.D. Ill. 2002).

8

Pursuant to Section 362(g), in a Section 362(d)(2) hearing: (1) the party requesting relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g).

Once the movant establishes that it is an undersecured creditor, the burden shifts to the debtor to prove that the property is necessary to an effective reorganization. *In re Embassy Enterprises of St. Cloud*, 125 B.R. 552, 554 (Bankr. D. Minn. 1991); *In re Lumber Exchange Limited Partnership,* 125 B.R. 1000, 1009 (Bankr. D. Minn. 1991*); In re Standard Mill Limited Partnership*, 1996 W.L. 521190, 3 (Bankr. D. Minn. 1996).  "The term 'effective reorganization' means one that is both legally possible and likely to be achieved within a reasonable time." *Embassy,* 125 B.R. 552 at 554.  Furthermore, once a secured party has requested adequate protection, the Debtor is obligated to provide such protection.  "Section 363(e) is not permissive or discretionary—it states that the court 'shall' grant the relief specified, at any time, on the request of a secured entity." *In re Metromedia Fiber Network, Inc*., 290 B.R. 487, 491(Bankr. S.D.N.Y. 2003).  Further, the debtor bears the burden of proving that the secured party is adequately protected. *See In re Colonial Ctr., Inc*., 156 B.R. 452, 463 (Bankr. E.D. Penn. 1993). Specifically, section 363(o)(1) provides:  "In any hearing under this section [363]--the trustee has the burden of proof on the issue of adequate protection." 11 U.S.C. § 363(o)(1).

> **B.**      Ratcliff has a Perfected First Secured Interest in The Debtor's Assets Subject To The Startup Notes Security Agreement

> 1      Temporary lapse of perfection has no effect on Ratcliff's position as a secured lender to the Debtor

In the collection action, the Debtor argued that somehow Ratcliff is no longer a secured creditor based on the fact that he failed to file his continuation statement within four months of the name change filed by Unger in 2014 as is required by the Uniform Commercial Code.

However, the argument is specious.  Ratcliff's security interest attached at the time of the signing of the security agreement on December 3, 2010 and therefore remains enforceable against the Debtor. The Debtor confuses perfection with validity.  Ratcliff's security interest remained valid as to he and the Debtor, but he may have lost his priority as to other *secured* parties. Regardless, up until one week before the Petition was filed, Ratcliff was the only secured creditor of the Debtor, except for the interests maintained by Ochsner Partnership and Nissan Motor Acceptance, which claims Ratcliff does not dispute or otherwise challenge.

Minn. Stat. §336.9-203 provides that a security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral. Minn. Stat §336.9-203 (a). Subsection (b) of that same statute states that a security interest is enforceable against the debtor if (a) value has been given, (b) the debtor has rights in the collateral; and (c) the debtor has authenticated a security agreement that provides a description of the collateral… Minn. Stat. §336.9-203(b). *See also, FBS Business Finance Corp. v. Edison Financial Group, Inc.*, 464 N.W.2d 304, 305 (Minn. Ct. App. 1990).  With respect to the statutory requirements, there can be no dispute that these requirements were met. Ratcliff gave significant value ($14,135,000.00) upon the execution of the Startup Notes. The Debtor had rights in the collateral which it pledged to Ratcliff in return for the loan. Debtor authenticated the security agreement which provided a description of the collateral. Therefore, the security agreement is valid and enforceable as to Debtor as it meets the statutory requirements set forth in Minnesota's version of the Uniform Commercial Code.

Ratcliff agrees that under Minn. Stat. §336.9-506, in order to maintain a *perfected* lien he was obligated to record a corrected continuation statement or a name change amendment within four months of the effective date of the name change. However, perfection relates to the interest

10

of third parties in the collateral; it does not affect the validity of the security agreement between the debtor and the secured party. "Perfection does not affect the rights and obligations between a debtor and his secured creditor, but relates to rights among competing creditors or others with interests in the collateral." *In re L.M.S. Assocs., Inc.*, 18 B.R. 425, 429 (Bankr S.D. Fla. 1982). The validity of a security interest is an inquiry independent of whether a security interest has priority over another security interest. *Fin. Ag. Inc. v. Hufnagle, Inc.*, 700 N.W.2d 50, 516-57 (Minn. Ct. App. 2005).

In *Boe v. Christlieb*, 399 N.W.2d 131 (Minn. Ct. App. 1987) the Minnesota Court of Appeals held that despite a creditor's failure to record their interest to protect against third parties, the UCC does not preclude the existence of the security interest. *Boe* involved the sale of a motel and furnishings under a contract for deed. Under the terms of the contract for deed the buyer granted seller a security interest in the motel furnishings as security for payment under the contract. The court found that value was given by the seller, that debtor had rights in the property, and the contract for deed (executed by the debtor) contained a detailed description of the property, thus meeting the statutory requirements of Minn. Stat. 336.9-203. The security interest between the debtor and creditor in *Boe* remained valid and enforceable as between the original parties to the contract for deed despite the fact that the lien was not perfected. Likewise, lapse of perfection, "relates to third parties and does not impact the validity and effectiveness of a security agreement." *Frank v. James Talcott, Inc.,* 692 F.2d 734, 734 (11th Cir. 1982). "The purpose of filing a financing statement is to perfect a security interest, and, thus, attain additional protection against conflicting claims in the same collateral." *Id.* at 737. In *Frank*, the secured creditor failed to timely record a continuation statement relative to its previously recorded financing statement, thereby losing its perfected status. Nevertheless, the court further reasoned

11

that allowing a financing statement to lapse does not invalidate the security interest. Instead,

under the Uniform Commercial Code, upon such lapse, the security interest becomes

unperfected. Id. at 737.

In the case at hand, except for the items of collateral secured by Ochsner Partnership and

Nissan Motor Acceptance Corporation, no other creditor filing financing statements between the

lapse of perfection of Ratcliff's security interest in 2014 and the re-perfection of Ratcliff's

security interest on January 10, 2019 continued to maintain a recorded interest in Debtor assets.

In fact, the two creditors that loaned additional funds to the Debtor in 2015, 2017 and 2018,

UMC Equipment and Upper Lakes Foods, specifically terminated their security agreements in

March and June of 2019. That being the case, because Ratcliff is competing with no other

secured creditors for the assets/collateral he seeks adequate protection for in this matter, he is the

first secured creditor in all of the assets of the Debtor except, as noted, the assets secured by

Oschner Partnership and Nissan Motor Acceptance.

    2       Ratcliff had the right under the Security Agreement and the UCC to Re-Perfect
          his security agreement at any time.

On January 10, 2019, Ratcliff filed a UCC-3 amendment with the State of Minnesota

Secretary of State with the debtor listed as "Ranchers Legacy Meat Co." (*see supra*). There can

be no doubt that, even after the lapse of perfection in the assets of the Debtor, Ratcliff

maintained his right to re-perfect his interest at any time.

The parties' executed Startup Notes Security Agreement grants Ratcliff a contractual

right to re-perfect his security interest by filing a second financing statement.  Courts have found

that a secured party has a contractual right to file a second financing statement after the lapse of

the initial statement based on the language used in the parties' security agreement. *See In re*

*Aliquippa Mach. Co., Inc.,* 343 B.R. 145, 149 (Bankr. W.D. Pa. 2006) ("[T]he language in the

12

Security Agreements… expressly granted to Bank One the necessary authority to file a second

financing statement and thereby reperfect Bank One's Security Interest."); *Hancock Bank of*

*Louisiana v. Advocate Fin., LLC,* No. CIV.A. 10-132-FJP, 2011 WL 94425, at *1 (M.D. La. Jan.

11, 2011) (court stated the Loan Agreement and Commercial Security Agreement explicitly

authorized creditor to file multiple financing statements to perfect its security interest).  Even

though Debtor changed its name, Ratcliff re-perfected his interest when he filed the second

amended filing statement.

     The Startup Notes Security Agreement states that the Debtor will provide the Secured

Party with any necessary documents to perfect its security interest, including any financing

statements:

> Debtor will execute and deliver to Secured Party such certificates and other
> documents or instruments as may be necessary to enable Secured Party to perfect
> the security interest created hereby including, **without limitation, such financing**
> **statements, certificates and other documents as may be necessary to perfect**
> **the security interest** created hereby in any collateral hereafter acquired by Debtor
> or in any replacement or proceeds of the collateral.

     (Ex. C, emphasis added).  In using the plural version of each listed document ("financing

statements," "certificates," and "other documents"), the parties specifically gave Ratcliff's

unlimited ability to file multiple financing statements.  Furthermore, nothing in the Startup Notes

Security Agreement prohibits Ratcliff from filing a second financing statement after the lapse of

the first financing statement. *See generally* Ex. C.   In fact, the Startup Notes Security Agreement

states in paragraph 12: "[t]his Agreement embodies all representations, warranties, and

agreements of the parties hereto and may not be altered or modified except by agreement in

writing signed by the parties."  (Ex. C).  There is no doubt that the Security Agreement executed

by the parties does not forbid filing multiple perfections of the security interest agreed to by the

Debtor in favor of Ratcliff.

In addition, as a matter of law, Ratcliff can file a second financing statement to re-perfect

his security interest. Minn. Stat. § 336.9-509 provides:

> By authenticating or becoming bound as debtor by a security agreement, a debtor
> or new debtor authorizes the filing of an initial financing statement, and an
> amendment, covering: (1) the collateral described in the security agreement; and
> (2) property that becomes collateral under section 336.9-315(a)(2), whether or not
> the security agreement expressly covers proceeds.

Minn. Stat. § 336.9-509.

Minn. Stat. § 336.9-509 is identical to Section 9-509 of the Uniform Commercial Code,

which gives secured parties the right to file financing statements without separate authorization

from the debtor. *See* Minn. Stat. § 336.9-509, Comment 4 (stating by authenticating a security

agreement, the debtor *ipso facto* authorizes the filing of a financing statement covering the

collateral described in the security agreement. The secured party does not need to obtain separate

authorization from the debtor).

Minn. Stat. § 336.9-509 also gives secured parties the right to file as many financing

statements as desired. *In Hancock Bank of Louisiana*, Hancock Bank filed a second financing

statement after the initial financing statement lapsed. *Hancock Bank of Louisiana v. Advocate

Fin., LLC,* No. CIV.A. 10-132-FJP, 2011 WL 94425, at *1 (M.D. La. Jan. 11, 2011).  After the

debtors (Advocate and La Chenaie) defaulted on their loan, Hancock filed suit seeking several

forms of relief. *Id.* at 2.  Advocate filed for Chapter 11, staying Hankcock's suit against

Advocate, but having no impact on Hancock's suit against La Chenaie. *Id.* La Chenaie (and

Advocate in the bankruptcy proceedings) argued Hancock was only authorized to file a single

financing statement.  Both courts rejected this argument. *Id.*  The court held Hancock was

entitled to file a second financing statement under law and contract and specifically stated that

Louisiana Revised Statute 10-9-509(b) (Section 9-509 of the Uniform Commercial Code)

provides that once a debtor executes a security agreement the creditor is *ipso facto* authorized to

file as many UCC-1 financing statements as it deems necessary to perfect its security interest. *Id.*

Similarly, in *In re Aliquippa Machine Co., Inc.,* Bank One filed a second financing

statement after the first financing statement expired. *In re Aliquippa Mach. Co., Inc.,* 343 B.R.

147, 149–50 (Bankr. W.D. Pa. 2006).  The court rejected the debtor's argument that Bank One

could not re-perfect because it lacked authority from the debtor. *Id.* at 149. The court rejected

this argument for two reasons: (1) the language in the security agreement expressly granted Bank

One the authority to do so and (2) the debtor by entering into security agreements, *ipso facto*

authorized Bank One to file as many financing statements as it needed in order to perfect its

security interest. *Id.* at 149-50.  The *Aliquippa* court also rejected the debtor's argument that

Bank One could not re-perfect its security interest as a matter of law because Section 9509 only

provides for the filing of an initial financing statement and amendments thereto. *Id.* at 148.  The

court rejected this argument because: "Financing Statement" is defined in Pennsylvania's Article

9 to mean "[a] record or records composed of an initial financing statement and any filed record

relating to the initial financing statement,"… and neither § 9509 nor any other provision in

Pennsylvania's Article 9 limits the number of financing statements that may be filed by a secured

party. *Id.* at 149. The debtors in *Hancock*, tried to make a similar argument and it was rejected

for the same reasoning used in *Aliquippa. See Hancock Bank of Louisiana,* 2011 WL 94425, at

\*3.  The fact that Ratcliff filed an amendment to the original financing statement in January of

2019 demands that the Court find, similar to *Hancock* and *Aliquippa*, that Ratcliff had the

absolute right to re-perfect his security interest..

15

Similar to the secured parties in *Hancock* and *Aliquippa*, Ratcliff filed an amended financing statement after the perfection in the Debtor's assets lapsed due to the workings of Minn. Stat. 336.9--506 in 2014.  Accordingly, Ratcliff has a legal right to file as many financing statements or amendments as he deems necessary pursuant to Minnesota Statute § 366.9-509.[1] Therefore, Ratcliff re-perfected his security interest in the Debtor's assets under the terms of the Uniform Commercial Code on January 10, 2019.

3      Ratcliff is Not an Insider of the Debtor

Ratcliff filed his amended financing statement re-perfecting his security interest in the Debtor's assets more than nine months prior to the Petition date.  However, Debtor has asserted that Ratcliff is an insider under 11 USC § 101(31) and that therefore he is not a perfected secured creditor because his filing of his corrective amendment is within the one-year preference period under 11 USC § 547(b)(4)(B).  Mr. Ratcliff was and still is the Debtor's landlord and a major creditor, nothing more.  He has not been a member of the board of directors since 2012 when he sold his interest in the company to SSJR.  The Second June 22, 2012 Purchase Agreement is quite clear on this point:

> 7. *Unrestricted Operation of Unger **by** Purchasers.* Neither Rustin, Ratcliff, Landlord nor their respective representatives will impose any restrictions upon Unger, other than those agreed upon in writing by Purchasers, in the conduct of the Unger's business. The foregoing notwithstanding, the Purchasers will provide reasonable communications to Ratcliff pertaining to the operations and profitability of Unger for eighteen **(18)** months subsequent to Closing Date. Thereafter, communications and reporting of information to Ratcliff will be confined to that customary in normal debtor/creditor relationships.

> Purchase Agreement, Ex. F, at 6.

---

[1] Minnesota Statute § 366.9-509. is identical to Pennsylvania's, Louisiana's, and the Uniform Commercial Code's Section 9-509

Because Ratcliff and the Debtor were clearly in the position of a debtor and a creditor and because there was no control allowed by the Debtor or even attempted by Ratcliff after the sale of his interest in the Debtor, the Court should overrule any claim to adequate protection based upon the allegation that Ratcliff is an insider of the Debtor. To the contrary, Upper Lakes Foods, a company intimately related to the Debtor by officers and directors holding positions in both companies, is clearly an insider.  Upper Lakes Foods terminated its security interest in the Debtor's collateral at or around the time in which Ratcliff commenced suit seeking in excess of $14,000,000.00, but then, in an effort to maximize a recovery in the bankruptcy, refiled its security interest nine days before Rancher's filed its Petition.

B.      Ratcliff's Interests Are Not Being Adequately Protected.

Adequate protection is required to guard against any diminution in value related to the collateral occurring during the pendency of the bankruptcy case.  "The purpose or intent of granting adequate protection payments are [*sic*] to maintain the status quo for that creditor and to protect the creditor from diminution or loss of the value of its collateral during the ongoing Chapter 11 case." *In re 354 E. 66 th St. Realty Corp.,* 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995).

The total current indebtedness owed by the Debtor under the Startup Notes is $17,896,449.95.  The value of the collateral secured by Ratcliff is approximately $1,400,000 at liquidation which is significantly less than the amount of the outstanding indebtedness owed by the Debtor. See Report of Robert Strachota dated January _, 2020, attached to Exhibit M. Therefore, Ratcliff's interest in the collateral secured by the Startup Notes is undersecured.

Ratcliff is undersecured in the collateral in the approximate amount of $16,500,000, plus costs and attorneys' fees that continue to accrue. *Id.*  Ratcliff's undersecured position in this amount assumes that the Debtor complies with all of the provisions of the Startup Notes, including the payment obligations.  If the Debtor fails to do so, Ratcliff's secured position will

17

continue to diminish.  The value of the collateral has decreased during the period of time the

Debtor has been under the protection of the Bankruptcy Court and will continue to decrease each

day the collateral is not returned to Ratcliff. *See* Ex. M.  There is a significant risk of the

diminution in value of the collateral during the Debtors' bankruptcy cases if the Debtor continues

using, possessing, and disposing of the collateral.

To date, Ratcliff has been granted adequate protection of its interests under the terms of

the Cash collateral Order entered by the Court on October 24, 2019 (Docket 81).  This consists

of the insuring of the Debtor's assets, a replacement lien, weekly financial reports and the right

to inspect the collateral and audit the books and records of the Debtor.  Although brief

discussions concerning providing monthly payments to Ratcliff have occurred, there has been no

agreement on the amount to be paid.  Meanwhile, the Debtor continues using and disposing of

the collateral, including, but not limited to, selling the proceeds of the collateral to generate

revenue for the Debtor.  The Debtor's use and possession of the collateral without making any

payments to Ratcliff to protect him from the diminution or loss of value of the collateral is

unacceptable

Furthermore, Ratcliff is prevented from pursuing his default remedies under the Startup

Notes, following the imposition of the automatic stay upon the Debtor's bankruptcy filings on

September 20, 2019.  At this point, the Debtor's use of the collateral must either be prohibited or

conditioned so as to adequately protect Ratcliff's interest. See 11 U.S.C. § 363(e).  Accordingly,

Ratcliff is entitled to adequate protection of its interest in the collateral pursuant to 11 U.S.C.

sections 361 and 363(e).

C.      Ratcliff Is Entitled to Monthly Payments or Relief From The Automatic Stay

18

Section 361 of the Bankruptcy Code provides a non-exclusive list of the ways in which the Debtor may provide adequate protection.  Specifically, Section 361 provides as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by— requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property; providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.  In order to protect Ratcliff's interest in the collateral, the Debtor must provide separate monthly adequate protection payments. *Id*.  Under 11 U.S.C. § 362(d), a bankruptcy court may terminate the automatic stay, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…" 11 U.S.C. § 362(d)(2).

The Debtor has defaulted on its Startup Notes with Ratcliff and has failed to make any payments to Ratcliff for the Startup Notes since October 11, 2016.  Ratcliff sent a Notice of Default and Demand for Payment to Debtor demanding Debtor cure the default, but Debtor failed to do so.  Since the Petition Date, Ratcliff has been stayed from enforcing his rights in the collateral.  Furthermore, the value of the collateral has decreased during the period of time the Debtor has been under the protection of the Bankruptcy Court.  Because the Debtor has failed to

19

provide Ratcliff with sufficient adequate protection for its interest in the Ratcliff collateral,

Ratcliff is entitled to relief from the automatic stay unless the Court orders the provision of

monthly payments as set forth in the report of Robert Strachota – Ex. M.

### III.   CONCLUSION

Ratcliff has demonstrated that he is entitled to monthly adequate protection payments

from the Debtors pursuant to 11 U.S.C. §363 because: (1) the Debtor has refused to return,

continues to dispose of, and continues to use collateral without making any payments to Ratcliff

and (2) the value of Ratcliff's collateral diminishes with each passing day.  In the alternative,

Ratcliff is entitled to relief from the automatic stay because: (i) Ratcliff is entitled to recover the

collateral upon the Debtor's defaults; and (ii) the Debtor has failed to adequately protect

Ratcliff's interest in the collateral.  Thus, Ratcliff should be granted his request for monthly

adequate protection payments pursuant to 11 U.S.C. §363, or this Court should enter an order

prohibiting the Debtor's use or disposal of the collateral unless and until the Debtor provides

Ratcliff with adequate protection, or grants Ratcliff relief from the automatic stay to pursue his

remedies against the collateral,

Respectfully Submitted,

| Dated: January 16, 2020 | SAPIENTIA LAW GROUP PLLC |
|---|---|
| | */e/ Kenneth C. Edstrom*<br>Kenneth C. Edstrom (#148696)<br>120 South 6th Street, Suite 100<br>Minneapolis, MN  55402<br>Telephone: (612) 756-7108<br>Fax: (612) 756-7101<br>kene@sapientialaw.com<br><br>Attorneys for James L. Ratcliff |

20

List of Exhibits*:

Exhibit A: December 3, 2010 Promissory Note between Ratcliff and UMC, in the principal amount of $11,885,000.

Exhibit B:  December 3, 2010 Promissory Note between Ratcliff and UMC, in the principal amount of $2,250,000.

Exhibit C: December 3, 2010 UMC Security Agreement in favor of James Ratcliff.

Exhibit D:  December 29, 2010 Financing statement with the State of Minnesota Secretary of State as a purchase money security interest in all of the equipment purchased by the Debtor with the use of the funds provided by Ratcliff in the December 3 Startup Notes (Minnesota Secretary of State Document Number 201022606390).

Exhibit E: January 24, 2011 amendment to original Ratcliff UCC Filing Statement perfecting his rights in all other assets of UMC, Minnesota Secretary of State Document Number 20112290995.

Exhibit F: June 22, 2012, Stock Purchase Agreement.

Exhibit G: January 22, 2014, Second Amended Stock Purchase Agreement.

Exhibit H:  May 6, 2014 Rancher's Legacy Meat Co. name change filed with the State of Minnesota Secretary of State - Filing No. 75959890002.

Exhibit I: November 12, 2015, Ratcliff continuation statement with the debtor's name listed as "Unger Meat Company".  (Secretary of State Document No. 854026600022).

Exhibit J: January 10, 2019, Ratcliff amended financing with the debtor listed as "Ranchers Legacy Meat Co." (Minnesota Secretary of State Document Number 106188100028).

Exhibit K: November 4, 2019 UCC Report for Rancher's Legacy Meat Co. from the Minnesota Secretary of State.

Exhibit L: Letter dated September 24, 2019 demanding adequate protection payments.

Exhibit M: Report of Robert Strachota/Shenehon Group January14, 2020.

* Per Local Rule 9013-2(e), this summary of the voluminous exhibits that accompany this motion is being provided to all parties The full exhibits and the summary were attached to the original motion filed with the clerk. Movant will upon request furnish a copy of the full exhibits to any entity.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------------------------------------------

In re:                                              Chapter 11

Rancher's Legacy Meat Co.,                          Case No.: 19-32928 MER

Debtor.

------------------------------------------------------------------------------------------------

### VERIFICATION OF JAMES L. RATCLIFF

James L. Ratcliff, under penalty of perjury, verifies that the statements of fact made in the accompanying motion and memorandum of law for awarding adequate protection or for relief of the automatic stay are true and correct of his own knowledge.

Date: _1—16-20_                    _James L. Ratcliff_
                                    James L. Ratcliff

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

-----------------------------------------------------------------------------------------------------------

In re:                                                    Chapter 11

Rancher's Legacy Meat Co.,                      Case No.: 19-32928 MER

Debtor.

-----------------------------------------------------------------------------------------------------------

**UNSWORN CERTIFICATE OF SERVICE**

I, Kenneth C. Edstrom, declare under penalty of perjury, that on January 16, 2020, I served the following documents:

1. Notice of Motion and Motion for Adequate Protection, or in the alternative, for Relief from the Automatic Stay;

2. Memorandum of Law In Support of Motion for Adequate Protection, or in the Alternative, Relief from the Automatic Stay;

3. Verification of James L. Ratcliff

4. (Proposed) Order for Relief from the Automatic Stay and for Adequate Protection Payments;

and this Unsworn Certificate of Service, to be filed electronically with the Clerk of Bankruptcy Court through ECF, and that the individuals or entities on the attached service list have been served with a copy of said documents, either through notification by ECF or by United States mail:

Date: _____                    _____

                                                                     Kenneth C. Edstrom

1

RANCHERS LEGACY MEAT CO.
Chapter 11 Bky. Case No. 19-32928-MER
<u>RULE 9013-3 SERVICE LIST</u>

<u>All Parties in interest served by ECF as noted or US Mail and via Fax and/or with
courtesy copies via email where noted</u>

| CREDITOR JAMES RATCLIFF'S COUNSEL | DISTRICT DIRECTOR OF THE INTERNAL REVENUE SERVICE | UNITED STATES ATTORNEY FOR THE DISTRICT OF MINNESOTA |
|---|---|---|
| **Kenneth C. Edstrom**<br>Sapientia Law Group PLLC<br>120 South Sixth Street, Suite 100<br>Minneapolis, MN  55402<br>Phone: 612-756-7108<br>kene@sapientialw.com<br>**VIA ECF** | Internal Revenue Service<br>Wells Fargo Place<br>30 E. 7th St., Mail Stop 5700<br>St. Paul, MN  55101<br>Fax: 651-312-7970<br>**VIA FACSIMILE** | US Attorney<br>600 US Courthouse<br>300 South Fourth Street<br>Minneapolis, MN  55415<br>Fax:  612-664-5788<br>**VIA FACSIMILE** |
| **Criag T. Dokken**<br>Henningson & Soxell, Ltd.<br>6900 Wedgwood Road, Suite 200<br>Maple Grove, MN 55311<br>Ph:  (763) 560-5700<br>C:   (612) 710-5199<br>cdokken@hennsnoxlaw.com<br>**VIA ECF** | | |
| **UNITED STATES TRUSTEE** | **INTERNAL REVENUE SERVICE CENTRALIZED INSOLVENCY OPERATION** | |
| **Michael R. Fadlovich**<br>U.S. Department of Justice<br>300 S 4th St, Ste 1015<br>Minneapolis, MN 55415<br>Phone :  (612) 334-1350<br>Email :  Michael.fadlovich@usdoj.gov<br>ustpregion12.mn.ecf@usdoj.gov<br>**VIA ECF** | IRS Centralized Insolvency Operation<br>P.O. Box 7346<br>Philadelphia, PA  19101-7346<br>Fax:  267-941-1015<br>**VIA FACSIMILE**<br><br>Gregory Cripps<br>Bankruptcy Specialist, Insolvency<br>105 S. Sixth Street<br>Mt. Vernon, IL 62864-4127<br>(618) 731-7365 | |
| **DISTRICT COUNSEL OF THE INTERNAL REVENUE SERVICE** | **COLLECTION DIVISION OF THE MINNESTOA DEPARTMENT OF REVENUE** | **SECURED CREDITOR** |
| IRS District Counsel<br>650 Galtier Plaza<br>380 Jackson Street<br>St. Paul, MN  55101<br>Fax:  651-726-7360<br>**VIA FACSIMILE** | Minnesota Department of Revenue<br>Collection Enforcement<br>551 Bankruptcy Section<br>600 North Robert Street<br>P.O. Box 64447<br>St. Paul, MN  55101<br>Fax:  651-282-2817<br>**VIA FACSIMILE** | **James Ratcliff**<br>c/o Jimmy Ratcliff<br>First National Bank of Vinita<br>102 W. Illinois Avenue<br>Vinita, OK 74201-3262 |
| | **DEBTOR** | **DEBTOR'S COUNSEL** |
| | RANCHER'S LEGACY MEAT CO.<br>4301 White Bear Parkway<br>Vadnais Heights, MN 55110-3677 | **Cameron A. Lallier**<br>**Thomas J. Lallier**<br>Foley & Mansfield<br>250 Marquette Avenue, Suite 1200<br>Minneapolis, MN 55401<br>(612) 216-0319<br>clallier@foleymansfield.com<br>tlallier@foleymansfield.com<br>Fax: (612) 338-1200<br>**VIA ECF** |

| REQUESTS FOR NOTICE/NOTICE OF APPEARANCE - ALL VIA ECF UNLESS OTHERWISE NOTED | | |
|---|---|---|
| **Jeffrey D. Klobucar**<br>BASSFORD REMELE<br>100 South Fifth Street, Suite 1500<br>Minneapolis, MN 55402<br>(612) 333-3000<br>jklobucar@bassford.com<br>Fax: (612) 333-8839<br>**VIA ECF**<br><br>Rep: Official Committee of Unsecured Creditors<br>of Rancher's Legacy | **Colin R. Robinson**<br>**Bradford J. Sandler**<br>PACHULSKI STANG ZIEHL &<br>JONES LLP<br>919 N. Market Street, 17th Floor<br>Wilmington, DE 19801<br>(302) 652-4100<br>crobinson@pszjlaw.com<br>bsandler@pszjlaw.com<br>Fax : (302) 652-4400<br>**VIA ECF**<br><br>Rep: Official Committee of<br>Unsecured Creditors of Rancher's<br>Legacy | **Steven W. Golden, Esq.**<br>**John A. Morris**<br>PACHULSKI STANG ZIEHL & JONES<br>LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>(212) 561-7700<br>sgolden@pszjlaw.com<br>jmorris@pszjlaw.com<br>Fax: (212) 561-7777<br>**VIA ECF**<br><br>Rep: Official Committee of Unsecured<br>Creditors of Rancher's Legacy |
| **Laurie M. Quinn**<br>SPENCER FANE LLP<br>150 South 5th Street, Suite 1900<br>Minneapolis, Minnesota 55402<br>(612) 268-7000<br>lquinn@spencerfane.com<br>Fax: (612) 268-7001<br>**VIA ECF**<br><br>**John O'Brien**<br>SPENCER FANE LLP<br>1700 Lincoln Street, Suite 2000<br>Denver, CO 80203<br>(303) 839-3800<br>jobrien@spenderfane.com<br>Fax : (303) 839-3838<br>**VIA ECF**<br><br>Rep: Jeff and Curt Fredin, Fredin Brothers, Inc. | **Roger W. Damgaard**<br>**(New Angus/Demkota Ranch Beef)**<br>300 South Phillips Avenue, Suite<br>300<br>Post Office Box 5027<br>Sioux Falls, South Dakota 57117-<br>5027<br>(605) 336-3890<br>Roger.Damgaard@woodsfuller.com<br>**VIA ECF**<br><br>Rep:  New Angus / DemKota | **Barton L. Seebach**<br>Story Schoeberl & Seebach LLP<br>126 North Elm Street<br>P.O. Box 89<br>Cresco, IA  52136<br>(563) 547-3329<br>seebachlaw@outlook.com<br>Fax: (563) 546-2578<br><br>MN office:<br>15534 403rd Avenue<br>Canton, MN 55922<br><br>Rep:  Upper Iowa Beef |
| **Patrick D. Newman**<br>BASSFORD REMELE, P.A.<br>100 South Fifth Street, Suite 1500<br>Minneapolis, MN 55402<br>(612) 333-3000<br>Email: pnewman@bassford.com<br>**VIA ECF**<br>Rep: Official Committee of Unsecured Creditors<br>of Rancher's Legacy | **Daniel M. Duffek**<br>**Kyle Moen**<br>Seilerschindel, PLLC<br>5901 Cedar Lake Road<br>Minneapolis, MN 55416<br>Telephone: (612) 253-6970<br>dduffek@seilerschindel.com<br>**VIA ECF**<br>Rep: Upper Lakes Foods, Inc. | **Glenn D. Moses, Esq.**<br>Genovese Joblove & Battista, P.A.<br>100 SE Second Street, 44th Floor<br>Miami, FL 33131<br>(305) 349-2300<br>gmoses@gjb-law.com<br>**VIA ECF**<br>Rep: Checkers Drive-In Restaurants, Inc. |
| **John T. Coghlan**<br>**Michael E. Brown**<br>Kutak Rock LLP<br>2300 Main Street, Ste. 800<br>Kansas City, MO 64108<br>john.coghlan@kutakrock.com<br>michael.brown@kutakrock.com<br>816-960-0090<br>**VIA ECF**<br><br>Rep. Paydayz Staffing Solutions, Inc. | **Julie R. Landy**<br>Faegre Baker Daniels LLP<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-3901<br>(612) 766-7000<br>Julie.landy@FaegreBD.com<br>**VIA ECF**<br><br>Rep. Great Western Bank | Matthew C. Berger #0387666<br>GISLASON & HUNTER LLP<br>2700 South Broadway<br>P. O. Box 458<br>New Ulm, MN 56073-0458<br>Phone: 507-354-3111<br>Fax: 507-354-8447<br>E-mail: mberger@gislason.com<br>**VIA ECF**<br><br>Rep. Compart Family Farms |

| TOP 20 UNSECURED CREDITORS | | |
|---|---|---|
| ASC Meyners Inc<br>5140 Palm Valley Road<br>Ponte Vedra Beach, FL 32082 | Ben E. Keith Company<br>Attn: Dan Harvick<br>7650 Will Rogers Blvd<br>Fort Worth, TX 76140<br>(817) 759-6337<br>dlharvick@benekeith.com | Compart Family Farms, Inc.<br>45198 400th Street<br>Nicollet, MN 56074 |
| Empirical Foods, Inc. dba NVM<br>Distribution LLC NV<br>891 Two Rivers Drive<br>Dakota Dunes, SD 57049<br><br>And<br><br>**Rich Jochum**<br>Empirical Foods, Inc.<br>d/b/a NVM Distribution, LLC<br>950 Willow Drive<br>Dakota Dunes, SD 57049<br>(605) 217-8032<br>rjochum@empiricalfoods.com | Great Plains Beef LLC<br>Attn : Don Straight<br>PO Box 82545<br>Lincoln, NE 68501<br>(402) 326-5914<br>Don-straight@piedmontese.com | Green Bay Packaging, Inc.<br>Bin No. 53139<br>Milwaukee, WI 53288 |
| J&B Partners, Inc.<br>Attn: Denise Boock<br>P.O. Box 212<br>13200 43rd St. NE<br>Saint Michael, MN 55376<br>(763) 497-3913<br>Denise.boock@jbgroup.com | James Ratcliff<br>Ratcliff Ranch<br>24631 South Highway 2<br>Vinita, OK 74301 | Lower Foods, Double L Meats<br>700 South 200 West<br>Richmond, Utah 84333 |
| New Angus, LLC – DemKota<br>P.O. Box 30260<br>Omaha, NE 68103-1360 | Paydayz Staffing Solutions, Inc.<br>10740 Lyndale Ave. S. #16E<br>Bloomington, MN 55420 | SSJR, LLC<br>1306 West Taylor<br>Cloquet, MN 55720 |
| Upper Iowa Beef, LLC<br>4614 Highway 63<br>Lime Springs, IA 52155 | UW Provision Co.<br>P.O. Box 620038<br>2315 Pleasant View Road<br>Middleton, WI 53562-0038 | Veritiv Corporation<br>Veritiv Operating Company<br>7472 Collection Center Drive<br>Chicago, IL 60693 |
|  |  |  |

3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

-----------------------------------------------------------------------------------------------------

In re:                                              Chapter 11

Rancher's Legacy Meat Co.,                          Case No.: 19-32928 MER

Debtor.

-----------------------------------------------------------------------------------------------------

ORDER FOR RELIEF FROM STAY

This matter came before the undersigned on January __, 2020, on a motion for adequate protection, or in the alternative, for relief from the automatic stay ("Motion") brought by James L. Ratcliff ("Ratcliff"). Kenneth C. Edstrom appeared on behalf of Ratcliff and other appearances are noted in the record.

Based upon the arguments of counsel, all the files, records and proceedings herein, the Court being advised in the premises, and the Court's findings of fact and conclusions of law, if any, having been stated orally and read in open court following the close of evidence, has determined that the Motion should be granted.

Accordingly, IT IS HEREBY ORDERED:

1.      The Motion is granted in part and denied in part;

2.      The Motion is granted and the automatic stay is terminated as to Ratcliff's Collateral as described by the Startup Notes as defined in the Motion, so that Ratcliff may recover and sell the assets of the Debtor under state law as he sees fit; and

3.      The ten-day stay of order pursuant to Rule 4001(a)(3), is hereby waived, so that this Order is effective immediately.

BY THE COURT

Dated: _____          _____
                                       The Honorable Michael E. Ridgway,
                                        Chief United States Bankruptcy Judge

1