# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co., | |
| Plaintiffs, | |
| v. | |
| Great Western Bank, | |
| Defendant, Counter-Claim-Claimant, Cross-Claimant, and Third-Party Plaintiff, | |
| v. | Adversary No.:  19-3095-MER |
| James L. Ratcliff, | |
| Defendant and Cross-Defendant, | |
| v. | |
| James N. Ratcliff, Jeffrey K. Fredin, and Curtis D. Fredin, | |
| Third-Party Defendants. | |

## NOTICE OF HEARING AND MOTION FOR ORDER APPROVING MEDIATED SETTLEMENT IN ADVERSARY PROCEEDING NO. 19-AP-3095-MER

TO:     The parties-in-interest as specified in Local Rule 9013-3(a)(2)

1721405 v1

1.      Rancher's Legacy Meat Co., as Debtor in Possession ("Rancher's" or the "Debtor") moves the Court for the relief requested below and give notice of hearing herewith.

2.      A hearing on this motion will be held on **Thursday, October 22, 2020 at 9:30 a.m.,** before the Honorable Michael E. Ridgway in Courtroom 7W, U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

3.      Any response to this motion must be filed and served no later than **Friday, October 16, 2020**, which is five days before the time set for the hearing (including Saturdays, Sundays and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY APPROVE THE MOTION WITHOUT A HEARING**.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1. This is a core proceeding.

5.      The petition commencing this Chapter 11 case was filed on September 20, 2019 (the "Petition Date"). The case is now pending before this Court.

6.      The relief sought in this Motion is based upon 11 U.S.C. § 105(a), § 544, § 547, § 550, § 551, Fed. R. Bankr. P. 9019 and Local Rule 9019-1. The Debtor requests Court approval of a mediated settlement reached by and between the parties in the above-captioned adversary proceeding during a mediation with Judge Fisher, conducted on August 28, 2020 and September 1, 2020.

### BACKGROUND

7.      In December 2011, Great Western Bank ("Great Western") entered into a loan agreement (as amended from time to time, the "Loan Agreement") with James N. and James L. Ratcliff (together, the "Ratcliffs"), and Jeffrey K. and Curtis D. Fredin (together, the "Fredins") (the Ratcliffs and the Fredins are collectively referred to herein as, the "Borrowers") for a $1

2

million loan (the "Loan") and a promissory note (the "Promissory Note") (the Loan Agreement and all amendments to the Loan Agreement and the Promissory Note, collectively, the "Loan Documents").

8.      Pursuant to the Loan Documents, Great Western loaned $979,419.79 pursuant to the Loan Documents, and the Borrowers agreed to make payments to Great Western when due until the Loan had been paid in full.

9.      Between May 2012 until April 2018, the Borrowers executed several amendments to the Loan Documents.

10.     Starting in December 2012 and continuing regularly until August 2019, the Debtor made monthly payments of $6,013 to Great Western and Debtor also made a payment of $6,614.30 in October 2015 and a payment of $6,156.19 in January 2018.

11.     On September 20, 2019, a petition was filed commencing this as a Chapter 11 case. The case is pending in the Bankruptcy Court for the District of Minnesota.

12.     Rancher's is a Debtor-in-Possession pursuant to 11 U.S.C. § 1107 and has all the rights and powers granted to a Debtor-in Possession under the Bankruptcy Code.

13.     Rancher's commenced the above-captioned adversary proceeding by filing a complaint (the "Complaint") on October 15, 2019, asserting pursuant to sections 544, 547, 550 and 551 of the Bankruptcy Code, the following counts: (1) Preferential Transfers ("Count I"); (2) Constructive Fraudulent Transfers under 11 U.S.C. § 548 ("Count II"); (3) Constructive Fraudulent Transfers under Minnesota Law ("Count III"); (4) Avoiding Security Interest of Defendant Ratcliff ("Count IV"); and (5) Disallowance of Claim of Defendant Ratcliff ("Count V").

3

14.     Counts I, II, and III effectively seek to avoid all payments Rancher's made to Great Western on account of the Loan from September 20, 2013 through September 20, 2019, and to recover those amounts (the "Challenged Payments")

15.     On or about December 17, 2019, Great Western filed a counterclaim against the Debtor for unjust enrichment/quantum meruit (the "Counterclaim").

16.     On July 9, 2020, Great Western filed a crossclaim against James L. Ratcliff and third party claims against James N. Ratcliff, Jeffrey K. Fredin, and Curtis D. Fredin seeking from the Borrowers the approximately $335,000 outstanding under the Loan Documents plus interest of 18% per annum as well as judgment for any losses Great Western suffered in connection with the Adversary Proceeding and Great Western's attorneys' fees in connection with this matter (the "Great Western Crossclaims" and the "Great Western Third Party Claims")

17.     On August 10, 2020, James L. Ratcliff and James N. Ratcliff filed an Answer to the Great Western Crossclaims and Great Western Third Party Claims and their own crossclaim against Jeffrey K. Fredin and Curtis D. Fredin seeking contribution and indemnity for any amounts which might be awarded to Great Western (the "Ratcliff Crossclaim").

18.     The parties to the above-captioned adversary proceeding participated in a mediation before the Honorable William J. Fisher on August 28, 2020 and September 1, 2020, at which point the parties agreed, subject to definitive documentation and approval by the Bankruptcy Court, to a global resolution of Counts I, II, III, and V, the Counterclaim, the Great Western Crossclaims, the Great Western Third Party Claims, and the Ratcliff Crossclaim (collectively, the "Resolved Claims").

19.     Count IV has not been resolved by the Debtor, the Committee, and James L. Ratcliff. Therefore, no party of Count IV is being resolved by  this Settlement Agreement (the

4

"Unresolved Claim"). However, the Debtor, the Committee, and James L. Ratcliff have agreed to return to mediation with Judge Fisher in an attempt to settle the Unresolved Claim.

20.     After considering the complexity of the issues, the scope of litigation necessary to resolve the disputes between the parties, and the potential likelihood of success, all parties have mutually agreed to enter into that certain Settlement Agreement, dated September 17, 2020 (the "Settlement Agreement"), a copy of which is attached hereto as **Exhibit A**.

21.     Specific reference should be made to the Settlement Agreement for all of the terms of the parties' settlement. However, the general terms are as follows:

   a.   Within ten days of cout approval of the Settlement Agreement, the Fredins and the Ratcliffs shall pay the Debtor $40,000, with $20,000 being paid by the Fredins and $20,000 being paid by the Ratcliffs;

   b.   On or before September 18, 2020, the Fredins and the Ratcliffs shall pay Great Western $336,724.77, with $159,362.39 being paid by the Ratcliffs and $177,362.39 being paid by the Fredins. These payments will fully satisfy the indebtedness owing by the Borrowers to Great Western;

   c.   James L. Ratcliff shall have an allowable claim in the amount set out in the proof of claim filed in the Bankruptcy Case of $17,986,449.95. All claims and defenses as to the Unresolved Claim, James L. Ratcliff's status as a secured creditor, and what rights James L. Ratcliff has as a result and any amount of his secured claim are reserved. Further, the claim of James L. Ratcliff allowed by the Settlement Agreement shall not attach to, nor participate in, any distribution made to creditors of the estate on account of the settlement payments made by the Fredins and the Ratcliffs pursuant to the Settlement Agreement.

22.     The Fredins and the Ratcliffs timely made the required payments described in subparagraph 21(b) and will make the required payments described in subparagraph 21(a) upon court approval of the Settlement Agreement.

23.     Following court approval of the Settlement Agreement, the following claims will be dismissed in the above-captioned adversary proceeding:

(a)     The Debtor and the Committee shall dismiss *with prejudice* the Resolved Claims against both Great Western and James L. Ratcliff;

(b)     Great Western shall dismiss *with prejudice* the Counterclaim;

(c)     Great Western shall dismiss *with prejudice* the Great Western Crossclaims and the Great Western Third Party Claims.

(d)     James L. Ratcliff and James N. Ratcliff shall dismiss *with prejudice* the Ratcliff Crossclaim.

24.     The Debtor believes the proposed settlement is in the best interests of creditors and the estate.

25.     Pursuant to Local Rule 9013-2(a), this motion is verified and is accompanied by a memorandum of law, a proposed order and proof of service.

26.     Pursuant to Local Rule 9013-2(c), the Debtor gives notice that it may, if necessary, call the following individuals to testify regarding the facts set out in this motion: Arlyn J. Lomen – Rancher's Legacy Meat Co. and/or Rod Peterson – Platinum Management LLC.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

a.   Approving the mediated settlement between the parties in Adversary Proceeding No. 19-ap-3095-MER, as detailed in the Settlement Agreement; and

b.   Granting such other and further relief as the Court deems just and equitable.

6

1721405 v1

Dated: September 30, 2020                **FOLEY & MANSFIELD, PLLP**


BY: /s/ Cameron A. Lallier
_____
Thomas J. Lallier (#163041)
Cameron A. Lallier (#393213)
250 Marquette Avenue, Suite 1200
Minneapolis, MN  55401
Telephone:  (612) 338-8788

**ATTORNEYS FOR DEBTOR**

7

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Settlement Agreement**") is entered into this 17th day of September, 2020 (the "**Effective Date**"), by and between Rancher's Legacy Meat Co. (the "**Debtor**"), the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co. (the "**Committee**" and, together with the Debtor, the "**Plaintiffs**"), Great Western Bank ("**Great Western**"), James N. and James L. Ratcliff (together, the "**Ratcliffs**"), and Jeffrey K. and Curtis D. Fredin (together, the "**Fredins**"), for mutual consideration and the purposes expressed herein. Each of the Debtor, the Committee, Great Western, the Ratcliffs, and the Fredins are referred to, from time to time, as a "**Party**" and, collectively, as the "**Parties**".

## RECITALS

WHEREAS, in December 2011, Great Western entered into a loan agreement (as amended from time to time, the "**Loan Agreement**") with the Ratcliffs and the Fredins (together, the "**Borrowers**") for a $1 million loan (the "**Loan**") and a promissory note (the "**Promissory Note**," together with the Loan Agreement and all amendments to the Loan Agreement and the Promissory Note, collectively, the "**Loan Documents**");

WHEREAS, pursuant to the Loan Documents, Great Western loaned $979,419.79 pursuant to the Loan Documents, and the Borrowers agreed to make payments to Great Western when due until the Loan had been paid in full;

WHEREAS, in total, between December 2011 and February 2012, Great Western was instructed to advance the $979,419.79 of the Loan proceeds to Debtor's direct deposit account at Great Western in the name of Unger Meat Company;

WHEREAS, between May 2012 until April 2018, the Borrowers executed several amendments to the Loan Documents;

WHEREAS, as required under the Loan Documents, starting in December 2012 and continuing regularly until August 2019, the Debtor made a payment of $6,013 to Great Western and Debtor also made a payment of $6,614.30 in October 2015 and a payment of $6,156.19 in January 2018;

WHEREAS, all indebtedness owing under the Loan Documents to Great Western, including, without limitation, indebtedness evidenced by the Loan Agreement, the Promissory Note, and the Loan Documents, and any extensions, renewals, restatements and modifications thereof and all principal, interest, fees and expenses relating thereto; and all of the Borrowers' debts, liability, obligations, covenants, warranties and duties to Great Western, however arising, whether liquidated or unliquidated, whether absolute or contingent, and of whatever nature and principal, interest, fees, expenses and charges relating to any of the foregoing, including without limitation, costs and expenses of collection and enforcement of the Loan Documents, including without limitation attorneys' fees of both inside and outside counsel, are referred to in this Agreement as the "**Obligations**";

**Exhibit A**

WHEREAS, the Obligations were secured by the property (together with all substitutions and replacements for and products and proceeds of any of the foregoing, the "**Collateral**") set forth in the following documents:

(i)     Assignment of Deposit Account with an approximate balance of $101,958.75 from James L. Ratcliff to Great Western dated December 2, 2011 and Assignment of Deposit Account with an approximate balance of $50,936.52 from James L. Ratcliff to Great Western dated December 20, 2011 (collectively, the "**Ratcliff Collateral**"); and

(ii)    Assignment of Deposit Account with an approximate balance of $101,958.75 from Fredin Brothers, Inc. to Great Western dated December 2, 2011 and assignment of Deposit Account with an approximate balance of $50,936.52 from Fredin Brothers, Inc. to Great Western dated December 20, 2011 (collectively, the "**Fredin Collateral**");

WHEREAS, Rancher's Legacy Meat Company ("**Rancher's Legacy**" and previously known as Unger Meat Company) filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 20, 2019 (the "**Bankruptcy Case**") in the Bankruptcy Court for the District of Minnesota (the "**Bankruptcy Court**");

WHEREAS, as part of the Bankruptcy Case, on October 15, 2019, an adversary proceeding (the "**Adversary Proceeding**") was filed against Great Western and James L. Ratcliff asserting the following counts: (1) Preferential Transfers ("**Count I**"); (2) Constructive Fraudulent Transfers under 11 U.S.C. § 548 ("**Count II**"); (3) Constructive Fraudulent Transfers under Minnesota Law ("**Count III**"); (4) Avoiding Security Interest of Defendant Ratcliff ("**Count IV**"); and (5) Disallowance of Claim of Defendant Ratcliff ("**Count V**");

WHEREAS, Counts I, II, and III effectively seek to avoid all payments Rancher's Legacy made to Great Western on account of the Loan from September 20, 2013 through September 20, 2019, and to recover those amounts (the "**Challenged Payments**");

WHEREAS, on or about December 17, 2019, Great Western filed a counterclaim against the Debtor for unjust enrichment/quantum meruit (the "**Counterclaim**");

WHEREAS, on or about July 9, 2020, Great Western filed a crossclaim against James L. Ratcliff and third party claims against James N. Ratcliff, Jeffrey K. Fredin, and Curtis D. Fredin seeking from the Borrowers the approximately $335,000 outstanding under the Loan Documents plus interest of 18% per annum as well as judgment for any losses Great Western suffered in connection with the Adversary Proceeding and Great Western's attorneys' fees in connection with this matter (the "**Great Western Crossclaims**" and the "**Great Western Third Party Claims**");

WHEREAS, on or about August 10, 2020, James L. Ratcliff and James N. Ratcliff filed an Answer to the Great Western Crossclaims and Great Western Third Party Claims and their own crossclaim against Jeffrey K. Fredin and Curtis D. Fredin seeking contribution and indemnity for any amounts which might be awarded to Great Western (the "**Ratcliff Crossclaim**");

2

**Exhibit A**

WHEREAS, on or about May 2020, Great Western liquidated the Ratcliff Collateral and the Fredin Collateral;

WHEREAS, as of August 28, 2020, the outstanding amounts (excluding the Challenged Payments, Default Interest, and attorneys' fees incurred by Great Western in connection with this matter) due and owing under the Loan Documents are $318,934.17 in principal and $17,790.60 in interest, totaling $336,724.77;

WHEREAS, the Parties participated in a mediation before the Honorable William J. Fisher in August 2020, at which point the Parties agreed, subject to definitive documentation and approval by the Bankruptcy Court, to a global resolution of Counts I, II, III, and V, the Counterclaim, the Great Western Crossclaims, the Great Western Third Party Claims, and the Ratcliff Crossclaim (collectively, the "**Resolved Claims**");

WHEREAS, Count IV has not been resolved by the Debtor, the Committee, and James L. Ratcliff and is not part of this Settlement Agreement (the "**Unresolved Claim**"); and

WHEREAS, in order to avoid the costs and risks of further litigation, the Parties have determined to resolve the Resolved Claims on the terms and subject to the conditions set forth in this Settlement Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.    **Recitals; Capitalized Terms.** The Parties acknowledge that the recitals set forth above are true and correct, and are made a part of this Settlement Agreement.  Capitalized terms used and not defined in this Settlement Agreement have the meanings assigned to such terms in the Loan Documents.

2.    **Payments.** In full and final settlement and satisfaction of the Resolved Claims, the Parties agree as follows:

(a)    Within ten days of the Final Approval Date (as defined below), the Fredins and the Ratcliffs shall pay the Debtor $40,000, with $20,000 being paid by the Fredins and $20,000 being paid by the Ratcliffs. For the avoidance of any doubt, Great Western will not make any payment to any other Party in connection with the resolution of the Resolved Claims.

(b)    On or before September 18, 2020, the Fredins and the Ratcliffs shall pay Great Western $336,724.77, with $159,362.39 being paid by the Ratcliffs and $177,362.39 being paid by the Fredins. The payment of these amounts by the Fredins and the Ratcliffs will occur on or before September 18, 2020

**Exhibit A**

regardless of whether the Final Approval Date (as defined below) has occurred as of that date.

3.    **The Unresolved Claim. As and for further consideration of the Resolved Claims, Plaintiffs hereby agree that Count V shall be settled by withdrawal of all objections to the amount of the claim of** James L. Ratcliff; that James L. Ratcliff has an allowable unsecured claim in the amount set out in the proof of claim filed in the Bankruptcy Case of $17,986,449.95; and that all claims and defenses as to the Unresolved Claim, James L. Ratcliff's status as a secured creditor, and what rights James L. Ratcliff has as a result and any amount of his secured claim are reserved. Nothing in this Settlement Agreement shall be construed as an admission by either the Debtor, the Committee, or James L. Ratcliff that the cause of action set forth in Count IV of the Complaint is settled pursuant to this Settlement Agreement. For the avoidance of doubt, the claim of James L. Ratcliff allowed in this Paragraph 3 shall not attach to, nor participate in, any distribution made to creditors of the estate on account of the settlement payments made by the Fredins and the Ratcliffs pursuant to Paragraph 2(a) of this Settlement Agreement.

4.    **Releases.** Upon the Final Dismissal Date (as defined below) and the payment of the amounts described in paragraph 2, above, each of the Parties to this Settlement Agreement release, acquit and discharge each of the other Parties and their respective affiliates, subsidiaries, successors and assigns, and the officers, directors, partners, shareholders, members, managers, employees, attorneys, agents and representatives of the foregoing, of and from the claims asserted in, arising under or relating to the claims and issues asserted in the Adversary Proceeding or with respect to the Loan Agreement, the Note, the Loan Documents, the administration of the Loan Agreement, the Note, or the Loan Documents, the negotiations relating to this Settlement Agreement and any other instruments and agreements executed by the Borrowers in connection therewith or herewith, arising on or before the Effective Date. Each Party agrees not to sue any other Party or in any way assist any other person or entity in suing a Party with respect to any claim released herein. Notwithstanding the foregoing nothing herein shall be interpreted as a release of or by the Debtor, the Committee or James L. Ratcliff related to the Unresolved Claim.

5.    **9019 Motion.** Within five (5) business days of the execution of this Settlement Agreement by all Parties, the Debtor shall file a Bankruptcy Rule 9019 motion (in form and substance reasonably satisfactory to all Parties) seeking approval of this Settlement Agreement as being fair and reasonable to the Debtor, which shall, among other things, resolve the Resolved Claims (the "**Rule 9019 Motion**"). The date of the entry of the Approval Order by the Bankruptcy Court will be the "**Final Approval Date.**"

6.    **Dismissal.** Within ten business days of the Final Approval Date, the following Parties shall take the following actions:

(a)    The Debtor and the Committee shall dismiss *with prejudice* the Resolved Claims against both Great Western and James L. Ratcliff;

(b)    Great Western shall dismiss *with prejudice* the Counterclaim;

(c)    Great Western shall dismiss *with prejudice* the Great Western Crossclaims and the Great Western Third Party Claims.

4

**Exhibit A**

(d)    James L. Ratcliff and James N. Ratcliff shall dismiss *with prejudice* the Ratcliff Crossclaim.

To effectuate the dismissals described in this paragraph 6 the Parties shall enter into a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41, as incorporated by Federal Rule of Bankruptcy Procedure 7041. It is the intent of the Parties to dismiss the Resolved Claims in their entirety with prejudice. The Parties agree to make, amend, or correct any necessary filing to that end, and generally to take all steps necessary to dismiss with prejudice the Resolved Claims. Upon the dismissals with prejudice described in this paragraph 6, Great Western, James N. Ratcliff, and the Fredins will no longer be parties to the Adversary Proceeding. The date on which the last dismissal described in this paragraph 6 is effectuated will be referred to as the "**Final Dismissal Date**."

7.    **Compromise of Disputed Claims.** The Parties acknowledge and agree that this Settlement Agreement is a compromise of disputed claims and that none of the Parties admits, and each expressly denies, any liability on its part. Nothing in this Settlement Agreement shall be offered or received in evidence in any action or proceeding of any kind other than such proceeding as may be necessary to consummate, defend, enforce or give effect to this Settlement Agreement.

8.    **Proper Authority.** Each person signing this Settlement Agreement represents and warrants that such person has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such party, to bind such Party to the terms and conditions of this Settlement Agreement and to act with respect to the rights and claims that are being altered or otherwise affected by this Settlement Agreement.

9.    **No Reliance.** The Parties represent and acknowledge that, in executing this Settlement Agreement, they do not rely and have not relied upon any representation or statement made by any other Party or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Settlement Agreement or otherwise, other than specifically stated in this Settlement Agreement. The Parties further declare that, in making this Settlement Agreement, they rely upon their own respective judgment, beliefs and interest and the advice of their respective counsel (for whose expense each shall be solely responsible) and that they have had a reasonable period of time to consider this Settlement Agreement.

10.    **Enforcement of Settlement Agreement.** In the event that an action is commenced by any Party to enforce the provisions of this Settlement Agreement, the prevailing party shall be entitled to an award, in addition to any other claims or damages, of its costs and expenses including attorneys' fees in connection with said action.

11.    **No Presumption Against Drafter.** The Parties agree that each Party has reviewed this Settlement Agreement and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

**Exhibit A**

12. **Enforceability.** Should any immaterial provision of this Settlement Agreement be declared or be determined to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Settlement Agreement.

13. **Entire Agreement.** This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof. In the event of any conflict between the provisions of this Settlement Agreement and the provisions of any Loan Document, the provisions of this Settlement Agreement shall govern.

14. **No Modifications.** No modification, amendment or waiver of this Settlement Agreement shall be binding or enforceable unless in writing and signed by all Parties. No amendment, modification or waiver of the provisions of or any Loan Document shall be effective unless the same shall be in writing and signed by the party against whom it is to be enforced, and then such amendment, modification or waiver shall be effective only in the specific instance and for the specific purpose for which given.

15. **Benefit.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties, and their respective representatives, executors, successors, administrators and assigns.

16. **Counterparts.** This Settlement Agreement may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

17. **Attorneys' Fees and Costs.** The Parties shall bear their own attorneys' fees and costs incurred in connection with this matter.

18. **Waiver of Jury Trial.** EACH PARTY TO THIS SETTLEMENT AGREEMENT IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT, THE LOAN DOCUMENTS AND ANY OTHER INSTRUMENTS OR AGREEMENTS EXECUTED BY ANY PARTY IN CONNECTION HEREWITH OR THEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

19. **Borrowers' Understanding.** THE BORROWERS ACKNOWLEDGE THAT: (A) THIS SETTLEMENT AGREEMENT CONTAINS A COMPLETE RELEASE OF CLAIMS AND WAIVERS OF CERTAIN RIGHTS; (B) THE BORROWERS HAVE READ AND UNDERSTOOD THIS SETTLEMENT AGREEMENT IN ITS ENTIRETY PRIOR TO SIGNING AND FULLY AGREE TO EACH, ALL AND EVERY PROVISION HEREOF; AND (C) THE BORROWERS HAVE RECEIVED A COPY HEREOF.

20. **Additional Provisions.** TIME IS OF THE ESSENCE WITH RESPECT TO ALL PROVISIONS OF THIS SETTLEMENT AGREEMENT. THIS SETTLEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA. THE PARTIES HEREBY CONSENT TO THE

**Exhibit A**

EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITUATED IN THE COUNTY OR FEDERAL JURISDICTION OF GREAT WESTERN'S BRANCH WHERE THE LOAN FACILITY OR OTHER EXTENSION OF CREDIT WAS ORIGINATED, AND WAIVES ANY OBJECTION BASED ON <u>FORUM NON CONVENIENS</u>, WITH REGARD TO ANY ACTIONS, CLAIMS, DISPUTES OR PROCEEDINGS RELATING TO THIS SETTLEMENT AGREEMENT, THE COLLATERAL, ANY OTHER LOAN DOCUMENT, OR ANY TRANSACTIONS ARISING THEREFROM, OR ENFORCEMENT AND/OR INTERPRETATION OF ANY OF THE FOREGOING.

     21.   **Section Headings.** Section headings in this Settlement Agreement are included herein for convenience of reference only and shall not constitute a part of this Settlement Agreement for any other purpose.

[The next page is the signature page.]

**Exhibit A**

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed and delivered as of the date or dates set forth below and agree to be bound by the Settlement Agreement's terms and provisions.

Date: _9/18/2020_

**RANCHER'S LEGACY MEAT CO., as DEBTOR**

By:_____

Name:_ARLYN  J.  LOMEN_

Title:_PRESIDENT_

Date: _____

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF RANCHER'S LEGACY MEAT CO.**

By:_____

Name:_____

Title:_____

Date: _____

**GREAT WESTERN BANK**

By:_____

Name:_____

Title:_____

Date: _____

**JAMES N. RATCLIFF**

_____

8

**Exhibit A**

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed and delivered as of the date or dates set forth below and agree to be bound by the Settlement Agreement's terms and provisions.

Date: _____ 

**RANCHER'S LEGACY MEAT CO., as DEBTOR**

By:_____

Name:_____

Title:_____

Date: *09/21/2020*

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF RANCHER'S LEGACY MEAT CO.**

Upper Iowa Beef, LLC, solely in its capacity as Chair of the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co.

By :_____
        *Ed Greiman, Manager*

Date: _____ 

**GREAT WESTERN BANK**

By:_____

Name:_____

Title:_____

Date: _____ 

**JAMES N. RATCLIFF**

_____

8

**Exhibit A**

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed and delivered as of the date or dates set forth below and agree to be bound by the Settlement Agreement's terms and provisions.

Date: _____          **RANCHER'S LEGACY MEAT CO., as DEBTOR**

                         By:_____

                         Name:_____

                         Title:_____

Date: _____          **OFFICIAL COMMITTEE OF UNSECURED**
                         **CREDITORS OF RANCHER'S LEGACY MEAT CO.**

                         By:_____

                         Name:_____

                         Title:_____

Date: 9/17/20            **GREAT WESTERN BANK**

                         By:_____

                         Name: _James J Bero Jr_____

                         Title: _Asix. Genl Cmpl_____

Date: _____          **JAMES N. RATCLIFF**

                         _____

8

**Exhibit A**

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed and delivered as of the date or dates set forth below and agree to be bound by the Settlement Agreement's terms and provisions.

Date: _____          **RANCHER'S LEGACY MEAT CO., as DEBTOR**

By:_____

Name:_____

Title:_____


Date: _____          **OFFICIAL COMMITTEE OF UNSECURED
                          CREDITORS OF RANCHER'S LEGACY MEAT CO.**

By:_____

Name:_____

Title:_____


Date: _____          **GREAT WESTERN BANK**

By:_____

Name:_____

Title:_____


Date: 9/18/2020          **JAMES N. RATCLIFF**

8

**Exhibit A**

Date: _9-18-2020_

**JAMES L. RATCLIFF**

Date: _____

**JEFFREY K. FREDIN**

_____

Date: _____

**CURTIS D. FREDIN**

_____

Sapientia Number
4815-2226-5290, v. 1

9

**Exhibit A**

Date: _____          **JAMES L. RATCLIFF**

_____

Date: 9/18/2020          **JEFFREY K. FREDIN**

_____

Date: 9-21-2020          **CURTIS D. FREDIN**

_____

Sapientia Number
4815-2226-5290, v. 1

9

**Exhibit A**

## VERIFICATION

I, Arlyn J. Lomen, President of Rancher's Legacy Meat Co., declare under penalty of

perjury that the facts set forth in the preceding Motion are true and correct to the best of my

knowledge, information, and belief.


Dated: September  30 , 2020

_____
Arlyn J. Lomen

8

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co., | |
| Plaintiffs, | |
| v. | |
| Great Western Bank, | |
| Defendant, Counter-Claim-Claimant, Cross-Claimant, and Third-Party Plaintiff, | |
| v. | Adversary No.:  19-3095-MER |
| James L. Ratcliff, | |
| Defendant and Cross-Defendant, | |
| v. | |
| James N. Ratcliff, Jeffrey K. Fredin, and Curtis D. Fredin, | |
| Third-Party Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER APPROVING MEDIATED SETTLEMENT IN ADVERSARY PROCEEDING NO. 19-AP-3095-MER

Rancher's Legacy Meat Co., as Debtor in Possession (the "Debtor") moves the Court for

entry of an order approving a mediated settlement reached by and between the parties in the above-

captioned adversary proceeding during a mediation with Judge Fisher, conducted on August 28,

1721405 v1

2020 and September 1, 2020. The supporting facts are set forth in the verified motion. The Court

should grant the relief requested because the proposed settlement is in the best interest of all the

parties, including the creditors and the estate.

## **ARGUMENT**

Compromise is favored by the law as a normal part of the bankruptcy process. In re

Trism, Inc., 282 B.R. 662, 666 (B.A.P. 8th Cir. 2002). The Federal Rules of Bankruptcy

Procedure provide that, "[o]n motion by the trustee and after notice and a hearing, the court may

approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "A decision to approve or

disapprove a proposed settlement under Bankruptcy Rule 9019 is within the discretion of the

bankruptcy judge." In re Trism, Inc., 282 B.R. 662, 666 (B.A.P. 8th Cir. 2002) (citing In re

Flight Transportation Corporate Securities Litigation, 730 F.2d 1128, 1135-36 (8th Cir. 1984)).

Rule 9019 vests a bankruptcy court with "broad authority to approve or disapprove all

compromises and settlements affecting the bankruptcy estate." In re Bates, 211 B.R. 338, 343

(Bankr. D. Minn. 1997).

In exercising its discretion, a court should consider the following factors:

(1)     The probability of success in the litigation;
(2)     The difficulties, if any, to be encountered in the matter of
        collection;
(3)     The complexity of the litigation involved, and the expense,
        inconvenience, and delay necessarily attending to it; [and]
(4)     The paramount interests of the creditors and a proper deference to
        their reasonable views in the premises.

In re Flight Transportation Corporate Securities Litigation, 730 F.2d 1128, 1135-36 (8th Cir. 1984)

(citing Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929); Protective Committee for Independent

Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-425 (1968)). More

recently, a fifth factor has been added:

(5)     Whether the conclusion of the litigation promotes the integrity of
        the judicial system.

2

In re Bates, 211 B.R. 338, 343 (Bankr. D. Minn. 1997); see also In re Farmland Industries, Inc.,

289 B.R. 122 (B.A.P. 8th Cir. 2003) (suggesting that compromise should further the goals of

bankruptcy — fairness, finality, integrity, and maximization of assets).

　　　After consideration of these factors, a court can determine whether a settlement is "fair and

equitable," Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v.

Anderson, 390 U.S. 414, 424 (1968), and in the best interests of the estate. In re Trism, Inc., 282

B.R. 662, 668 (B.A.P. 8th Cir. 2002). The court's function is not to ensure that the proposed

settlement is the best possible settlement obtainable. Rather, the court must determine only whether

the settlement falls below the lowest point on the range of reasonableness. In re Hanson Industries,

Inc., 88 B.R. 942, 945 (Bankr. D. Minn. 1988).

　　　Here, the facts justify approval of the Settlement Agreement, as set forth in the Motion.

The Settlement Agreement preserves assets of the estate by reducing litigation costs and progresses

the case towards final resolution. Given the nature of litigation, no party was assured of "victory"

and each party faced the risk of loss. The nature of the asserted defenses to the preference litigation

would require the parties to conduct extensive, multi-party, fact discovery and likely could not be

resolved on a summary judgment motion. Accordingly, resolution of the matter would also likely

require preparation for and attendance at an evidentiary hearing. In the end, the costs of the

litigation borne by the estate would likely substantially reduce any potential recovery realized by

the estate.  The Settlement Agreement provides the estate with a favorable outcome – recovery of

$40,000 for unsecured creditors not subject to any claim of James L. Ratcliff and a streamlining

of issues which may provide for resolution of the Unresolved Claim – all while preserving estate

assets by avoiding future litigation costs. The Settlement Agreement is the hard-fought bargain

struck by the parties.

3

## CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court grant the motion and approve the parties' Settlement Agreement.

Dated: September 30, 2020           **FOLEY & MANSFIELD, PLLP**

BY: /s/ Cameron A. Lallier

       Thomas J. Lallier (#163041)
       Cameron A. Lallier (#393213)
       250 Marquette Avenue, Suite 1200
       Minneapolis, MN  55401
       Telephone:  (612) 338-8788

       **ATTORNEYS FOR DEBTOR**

4

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co., | |
| Plaintiffs, | |
| v. | |
| Great Western Bank, | |
| Defendant, Counter-Claim-Claimant, Cross-Claimant, and Third-Party Plaintiff, | |
| v. | Adversary No.:  19-3095-MER |
| James L. Ratcliff, | |
| Defendant and Cross-Defendant, | |
| v. | |
| James N. Ratcliff, Jeffrey K. Fredin, and Curtis D. Fredin, | |
| Third-Party Defendants. | |

### ORDER APPROVING MEDIATED SETTLEMENT IN ADVERSARY PROCEEDING NO. 19-AP-3095-MER

This matter came before the Court on the Debtor's Motion for Order Approving a

Mediated Settlement reached by and between the parties in the above-captioned adversary

1721405 v1

proceeding during a mediation with Judge Fisher, conducted on August 28, 2020 and September 1, 2020.

Based on the motion and all papers filed in support of the motion, the oral arguments and statements of counsel made at the hearing on the motion and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.  The motion is GRANTED;

2.  The parties' Settlement Agreement is approved;


Dated: October ___, 2020

_____
Hon. Michael E. Ridgway
Chief United States Bankruptcy Judge

2

1721405 v1